IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| ROBERT BERRY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. _3:17-304-_JFA |
| | § | |
| WELLS FARGO & COMPANY, | § | |
| WELLS FARGO CLEARING | § | **JURY TRIAL DEMANDED** |
| SERVICES, LLC, and WELLS FARGO | § | |
| ADVISORS FINANCIAL NETWORK, | § | |
| LLC, and DOES 1 thru 50, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S COMPLAINT

Plaintiff Robert Berry files this Complaint against Defendants Wells Fargo & Company, Wells Fargo Clearing Services, LLC f/k/a Wells Fargo Advisors, LLC, Wells Fargo Advisors Financial Network LLC, and Does 1 thru 50 (collectively, "Defendants" or "Wells Fargo") in order to recover compensation owed to him under Wells Fargo's deferred-compensation plan that was forfeited by Wells Fargo based on plan terms that violate ERISA or, alternatively, South Carolina law.

## I.     PRELIMINARY STATEMENT

1.     Plaintiff is a participant in Wells Fargo's deferred-compensation plan. This plan constitutes a "pension benefit plan" under ERISA, and is subject to ERISA's vesting, non-forfeitability, and other requirements. These requirements mandate that Plaintiff's unvested deferred compensation is non-forfeitable.

2.     The plan, however, violates ERISA's vesting, non-forfeitability, and other requirements. A forfeiture clause in the plan allows Wells Fargo to forfeit a participant's unvested deferred compensation if the participant "becomes associated with" any "financial

- 1 -

services business" anywhere in the world for a period of three (3) years after the participant retires. After Plaintiff retired from Wells Fargo and started his own business, Wells Fargo used the forfeiture clause to deny Plaintiff his deferred compensation. But because the forfeiture clause is unenforceable under ERISA, Plaintiff is entitled to his deferred compensation that was forfeited.

3.      Alternatively, to the extent ERISA law does not apply and South Carolina law applies instead, the forfeiture clause is invalid under South Carolina law because it (i) constitutes an unreasonable restraint of trade in that it purports to prevent employees from becoming "associated with" any "financial services business" anywhere in the world, and is thus is overbroad and not tailored to Plaintiff's work for Wells Fargo; (ii) constitutes an unlawful penalty that has no relation to any alleged damages suffered by Wells Fargo; and (iii) is ambiguous, was drafted by Wells Fargo, and should be enforced against Wells Fargo.

4.      Plaintiff seeks to recover the deferred compensation that Defendants have improperly forfeited and to have the forfeiture clause declared invalid and unenforceable.

## II.      **PARTIES**

5.      Plaintiff Robert Berry resides in the State of South Carolina and in this judicial district. He is 64-years old, and has over 25 years of experience as a financial professional. He began his career in 1984 at Dean Witter, where he worked as a financial advisor. He then worked at Prudential from 1985 to 1994. In 1994, he joined Wheat First Butcher Singer, which was acquired by First Union in 1997 and changed its name to Wheat First Union. Wheat First Union was acquired by Wachovia Corporation in 2001 and changed its name to Wachovia Securities, LLC. Wachovia Securities, LLC was acquired by Wells Fargo in 2008, and changed its name to Wells Fargo Advisors, LLC in 2009. In February 2014, Berry retired from Wells

Fargo and started his own business.  Since then, he has been employed at Berry Financial Group in Lexington, South Carolina.

6.     Defendant Wells Fargo & Company is a Delaware corporation, headquartered in San Francisco, California.  Its wholly owned subsidiaries include defendants Wells Fargo Advisors Financial Network LLC and Wells Fargo Advisors, LLC (collectively, "Wells Fargo," including their predecessors-in-interest as described below).  Because it is not authorized to do business in South Carolina, but does business in South Carolina, it may be served with process under 15 S.C. Code § 15-9-245 by serving the South Carolina Secretary of State, who will forward the service of process by certified mail to Wells Fargo & Company's registered agent in Delaware, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

7.     Defendant Wells Fargo Advisors Financial Network LLC is a Delaware limited liability company headquartered in St. Louis, Missouri.  It may be served with process by serving its registered agent, Corporation Service Company, 1703 Laurel Street, Columbia, SC  29201.

8.     Defendant Wells Fargo Clearing Services, LLC f/k/a Wells Fargo Advisors, LLC is a Delaware limited liability company headquartered in St. Louis, Missouri.  In November 2016, Wells Fargo Advisors, LLC merged into and became Wells Fargo Clearing Services, LLC. It may be served with process by serving its registered agent, Corporation Service Company, 1703 Laurel Street, Columbia, SC  29201.

9.     Defendants Wells Fargo Clearing Services, LLC and Wells Fargo Advisors Financial Network LLC do business under the trade name, "Wells Fargo Advisors," and administer a combined $1.5 trillion in client assets.

10.     Defendants conduct business in and employ individuals, including Plaintiff, in South Carolina.

11.     Plaintiff is currently unaware of the names and capacities of defendants sued as DOES 1 through 50 and will amend this complaint when that information becomes known to him.  On information and belief, at all relevant times all Defendants, including DOES 1 through 50, were employees, agents, or representatives of Defendants engaged in the acts alleged in this complaint, and were acting with authorization and in the scope, course, and furtherance of such relationship.

### III.     JURISDICTION AND VENUE

12.     This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because this is a civil action where the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different States.

13.     This Court also has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1) because this action arises under the federal Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461.

14.     Venue is proper in this district under 28 U.S.C. §§ 1391(b)-(c) because a substantial part of the events giving rise to Plaintiff's claims occurred in this district, Plaintiff suffered harm in this district, and Defendants, themselves or through one or more of their subsidiaries, affiliates, business divisions, or business units, regularly conduct and transact business in South Carolina.

15.     Venue is also proper in this district under 29 U.S.C. § 1132(e)(2) because Defendants, who own and operate offices in this district, may be found in this district.

## IV.    FACTUAL BACKGROUND

### A.    Defendants' Deferred Compensation Plan

16.    Defendant Wells Fargo & Company established and maintains a deferred-compensation plan called the "Wells Fargo Advisors, LLC Performance Award Contribution Plan," amended and restated as of January 1, 2012 (the "Plan").  A true and correct copy of the Plan is attached as Exhibit A**.**  Plaintiff participated in the Plan (and its predecessor plans[1]) for approximately 10-12 years.  When he left Wells Fargo, Defendants forfeited approximately $300,000 of his deferred compensation.  The parties did not negotiate the terms of the Plan or previous plans, including the forfeiture clause, and Plaintiff's participation in the Plan and previous plans was simply provided by Wells Fargo in a take-it-or-leave-it manner.

### 1.    The Plan Provides Deferred Compensation to Participants.

17.    The Plan purports to provide "a select group of individuals in the employ of one or more participating employers with an opportunity to earn additional incentive-based compensation contingent upon their attainment of pre-established performance objectives and their completion of designated service periods.  One or more such individuals may also be credited with special awards under the Plan designed to serve as a meaningful incentive for them to continue in the employ of their participating employers."  Exhibit A, p. 1.

18.    Participants may earn two types of deferred compensation: "Performance Awards" and "Special Awards."  A "Performance Award" is an "incentive bonus which is credited to a Participant's Performance Award Account for a particular Plan Year on the basis of the Participant's performance relative to the performance objectives established for that Plan

---

[1] Previous versions of this Plan may also apply to Plaintiff's claims; Plaintiff expects to learn this information in discovery.  The Plan states it was established effective January 1, 2005, as the "Wachovia Securities Financial Holdings, LLC Performance Award Contribution Plan," and was amended several times, including in 2009, 2010, and 2012.  These previous versions contain forfeiture provisions similar to those in the 2012 Plan.  All of these plans are collectively referred to as "the Plan."

Year and which shall vest and become payable to the Participant only upon the Participant's continuation in Employee status for a designated term measured from the date that Performance Award is credited to his or her Performance Award Account." *Id.* at p. 4, ¶ 3.19.

19.    A "Special Award" is "any award credited to the Participant's Special Award Account pursuant to Section 5.03 which is designed to serve as a meaningful incentive for the Participant to continue in the employ of his or her Participating Employer. A Special Award shall ***not*** be based on the Participant's performance relative to pre-established performance objectives but shall be earned solely on the basis of his or her continuation in Employee status for the designated service period applicable to that award. *Id.* at p. 6, ¶ 3.27 (bold and italicized emphasis in original).

20.    Performance and special awards are to be credited to a participant's individual account. "The Performance Award Account shall be divided into a series of subaccounts, and there shall accordingly be a separate Performance Award Subaccount for each year the Participant is credited with a Performance Award." *Id.* at p. 2, § 3.01. "A Special Award Subaccount shall be established for any Plan Year for which the Participant is credited with a Special Award." *Id.*

21.    Both types of awards are subject to a vesting schedule "tied to the Participant's continuation in Employee status" and governed by either a cliff-vesting formula or an installment schedule. *Id.* at pp. 10-11, §§ 5.01.C, 5.02, and 5.03. The Plan states that a vesting schedule shall be established by the Plan Administrator.[2] *Id.* at pp. 10-11, §§ 5.02 and 5.03. In practice, awards fully vest after 5 to 7 years (and are then taxable income reported on a Form W-2). Because both types of awards are paid in later years, they constitute deferred compensation.

---

[2] "Plan Administrator" means Defendant Wells Fargo & Company's "Director of Compensation and Benefits (or the functional equivalent of such position)." *Id.* at p. 5, § 3.21.

## 2.    The Plan Provides Retirement Income to Participants.

22.    The Plan, by its express terms and as a result of surrounding circumstances, provides retirement income to employees and results in a deferral of income by employees for periods extending to the termination of their employment with Defendants and beyond. Section 5.02 provides that a Performance Award may continue to vest after retirement, as long as the employee qualifies for "Retirement."

> If a Participant voluntarily terminates Employee status pursuant to a Retirement under Section 3.24, all balances in his or her Performance Award Subaccounts (as adjusted for investment earnings, gains and losses) which are not at that time vested in accordance with the vesting provisions of this Section shall continue to vest so long as the Participant continues to meet the requirements of Sections 3.24 and 5.05.

*Id.* at p. 11, § 5.02.

23.    Similarly, § 5.03 provides that a Special Award "made for Retirement retention purposes" may continue to vest after retirement, as long as the employee qualifies for "Retirement."

> A Special Award made for Retirement retention purposes shall not vest unless the Participant continues in Employee status until he or she satisfies the applicable age and years of service requirement for such Retirement and shall become distributable upon his or her subsequent cessation of Employee status provided such cessation is also a "separation from service" under Code section 409A, subject to the deferred commencement provisions of Section 8.10 to the extent applicable.

*Id.* at p. 12, § 5.03.C.

24.    To qualify for "Retirement" under the Plan, a participant must meet several requirements.  First, the participant must voluntarily resign his or her employment with the Company at a time when the participant is at least fifty (50), has completed at least three (3) years of continuous service as an employee, and has a combined age and length of continuous

service as an employee of at least sixty (60) years. *Id.* at p. 5, § 3.24.A. This is known as the "Rule of 60." Plaintiff easily met this Rule of 60, as he left Wells Fargo when he was 61.

25.     Second, for a period of three years, the participant may not "become associated . . . with any entity, whether as principal, partner, employee, consultant, agent, independent contractor, registered representative, or shareholder (other than solely as a holder of not more than one percent of the outstanding voting shares of any publicly traded corporation) that is actively engaged in the financial services business, including, but not limited to, any bank, broker-dealer, investment advisor, investment company, financial planner, investment bank, mutual fund or insurance company (a 'Financial Services Business')." *Id.* at p. 5, § 3.24.B(i). The participant may obtain a written waiver of this requirement, and participants in California and North Dakota are automatically granted such a waiver. *Id.* at p. 5, § 3.24.B(ii).

26.     Third, the participant (if deemed eligible by his or her employer) must enter into a Client Transition Agreement. *Id.* at p. 5, § 3.24.C. "Client Transition Agreement" is defined as "an agreement, in form and substance approved by the Participating Employer, under the sunset or book transfer program, or any other book transition program as may be approved by the Participating Employer from time to time, pursuant to which client accounts serviced by a retiring Participant are transitioned to other financial advisor(s) of the Participating Employer in connection with the Participant's retirement from the industry and the Participant is to receive one or more compensatory payments from the Participating Employer and/or such other financial advisor(s)." *Id.* at pp. 2-3, § 3.05. The Client Transition Agreement is not actually attached to or included in the Plan. But, upon information and belief, the Client Transition Agreement contains invalid non-competition and non-solicitation agreements.

27.     Fourth, the participant must execute and not revoke a Release.  *Id.* at p. 5, § 3.24.D.  "Release" is defined as "a release of claims against the Company and any Affiliated Company in the form and substance indicated by the Participating Employer."  *Id.* at p. 5, § 3.23. The Release is not actually attached to or included in the Plan.

28.     If a participant qualifies for Retirement, then the participant's deferred compensation (i.e., performance and special awards) will continue to vest after the participant retires.  *Id.* at p. 11, § 5.02.

### 3.     The Plan Is Unfunded.

29.     Wells Fargo failed to fund the Plan.  Under § 8.01 of the Plan, "The obligation to pay the vested balance of each Participant's Account hereunder shall at all times be an unfunded and unsecured obligation of the Company and the Participating Employer.  The Company as sponsor of the Plan shall serve as the guarantor of that obligation, but such guaranty shall also be unfunded and unsecured."  *Id.* at p. 19.  Under § 6.06, "Although the investment return on a Participant's Accounts is to be measured by the actual gains, earnings and losses realized by one or more of the investment alternatives selected by the Participant . . . , neither the Company nor any Participating Employer shall be under any obligation to make the selected investments, and the investment experience shall only be tracked as debits or credits to the Participant's book accounts over the deferral period."  *Id.* at p. 14.  For these reasons, the Plan describes participants' investments as "hypothetical."  *Id.* at pp. 8-9, §§ 4.02 and § 4.03.C.

### 4.     The Plan Contains a Forfeiture Clause.

30.     But if a participant fails to qualify for Retirement—e.g., because he or she "becomes associated with" another financial services business after leaving Wells Fargo or fails to execute the Client Transition Agreement or Release—then the participant's unvested deferred compensation shall be immediately forfeited.  The Plan's "Forfeiture Clause" states:

> **Forfeitures.**   Upon a Participant's cessation of Employee status for any reason (including a transfer to FiNet) other than (i) a Retirement (pursuant to Section 3.24), as set forth in Section 5.02, or (ii) Involuntary Termination, all balances in his or her Performance Award Subaccounts and/or Special Award Subaccounts (as adjusted for investment earnings, gains and losses) which are not at that time vested in accordance with the vesting provisions of Sections 5.02 and 5.03 shall be immediately forfeited, and the Participant shall cease to have any further right or interest in those forfeited balances . . .

*Id.* at p. 13, § 5.05.  And if a participant initially qualifies for Retirement but (after a request) fails to annually certify that he or she continues to qualify for Retirement, the participant's unvested deferred compensation shall be forfeited.  The "Forfeiture Clause" also states:

> The Participating Employer or the Plan Administrator may request a Participant to certify, at least annually, that the Participant has been and continues to be in compliance with the requirements of the Plan regarding eligibility for continued vesting as a result of Retirement.   A Participant's failure to provide a written certification in a form specified by the Plan Administrator within thirty (30) days of such request shall result in a forfeiture of the Participant's unvested balances.

## B.  The Forfeiture Clause Is Invalid Under ERISA.

### 1.  ERISA Applies to Plaintiff's Claims.

31.    The Forfeiture Clause is invalid under ERISA.   ERISA applies to employee benefit plans.  An "employee benefit plan" or "plan" is defined as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan."  29 U.S.C. § 1002(3).  A "pension benefit plan" or "pension plan" is defined as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—
>
> > (i)    provided retirement income to employees, or

> > (ii)    results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,
>
> > regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

*Id.* at § 1002(2)(A).  An "individual account pension plan" is defined as a "pension plan which provided for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account."  *Id.* at § 1002(34).

32.    A plan is established under ERISA if "from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits."  *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982).  Failure to adhere to the requirements set forth in ERISA does not exempt an employer from coverage of the Act.  *Scott v. Gulf Oil Corp*., 754 F.2d 1499, 1503 (9th Cir. 1985).

33.    ERISA applies to Plaintiff's claims because the Plan is a "pension benefit plan" and an "individual account pension plan."  The Plan is a "pension benefit plan" under 29 U.S.C. § 1002(2)(A) because, "by its express terms [and] as a result of surrounding circumstances," it provides "retirement income to employees and results in a deferral of income by employees for periods extending to the termination of covered employment or beyond."  As explained above, Sections 3.24 ("Retirement"), 5.02 ("Performance Awards"), 5.03 ("Special Awards"), and 5.05 ("Forfeitures") of the Plan provide the specific conditions under which Performance and Special Awards will systematically continue to vest after retirement.

34.    The Plan is also an "individual account pension plan" under 29 U.S.C. § 1002(34) because it is a "pension plan which provide[s] for an individual account for each participant and

- 11 -

for benefits based solely upon the amount contributed to the participant's account." As explained above, § 3.01 ("Account") of the Plan provides that performance and special awards shall be credited to an individual account for each participant. And § 7.04 ("Valuation") of the Plan provides for benefits based solely upon the amount contributed to the participant's account. Exhibit A, p. 18, § 7.04 ("The amount to be distributed from any subaccount . . . shall be determined on the basis of the vested balance credited to that subaccount as of the most recent practical Valuation Date . . . preceding the date of the actual distribution. . . .").

## 2. **The Forfeiture Clause Is Invalid Under ERISA.**

35.     The Forfeiture Clause is invalid under ERISA, which imposes vesting, non-forfeiture, accrual, and other requirements on pension plans. 29 U.S.C. §§ 1053 (vesting and non-forfeiture) and 1054 (accrual). The vesting and non-forfeiture requirements are contained in 29 U.S.C. § 1053, entitled "Minimum vesting standards." Under § 1053(a), entitled "Nonforfeitability requirements," "Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age and in addition shall satisfy the requirements of paragraphs (1) and (2) of this subsection." Paragraph (1) of subsection 1053(a) states that "A plan satisfies the requirements of this paragraph if an employee's rights in his accrued benefit derived from his own contributions are nonforfeitable."[3] The term "accrued benefit" means, "in the case of a plan which is an individual account plan, the balance of the individual's account." *Id.* at § 1002(23)(B).

36.     Paragraph (2)(B) of subsection 1053(a) contains the vesting and nonforfeitability requirements for an individual account plan:[4]

---

[3] 29 U.S.C. § 1053(a)(1).
[4] 29 U.S.C. § 1053(a)(2)(B).

(i)  In the case of an individual account plan, a plan satisfies the requirements of this paragraph if it satisfies the requirements of clause (ii) or (iii).

(ii)  A plan satisfies the requirements of this clause if an employee who has completed at least 3 years of service has a nonforfeitable right to 100 percent of the employee's accrued benefit derived from employer contributions.

(iii)  A plan satisfies the requirements of this clause if an employee has a nonforfeitable right to a percentage of the employee's accrued benefit derived from employer contributions determined under the following table.

| "Years of service: | The nonforfeitable percentage is: |
|---|---|
| 2 ..........................… | 20 |
| 3 ..........................… | 40 |
| 4 ..........................… | 60 |
| 5 ..........................… | 80 |
| 6 or more .......................… | 100. |

37.  The Plan violates the vesting and nonforfeitability requirements of 29 U.S.C. § 1053 because it fails to provide that "an employee who has completed at least 3 years of service has a nonforfeitable right to 100 percent of the employee's accrued benefit derived from employer contributions" under § 1053(a)(1), and that "an employee has a nonforfeitable right to a percentage of the employee's accrued benefit derived from employer contributions determined under the . . . Table" in § 1053(a)(2)(B). In violation of ERISA, the Plan includes the unenforceable Forfeiture Clause described above. But under ERISA's vesting and nonforfeitability requirements, and based on his years of service with Wells Fargo, Plaintiff's deferred compensation is 100% nonforfeitable.

### 3.    The Plan Does Not Comply With ERISA's Funding Requirements.

38.    The Plan does not comply with ERISA's funding requirements, including provisions under 29 U.S.C. §§ 1082, 1102, and 1103.  Under 29 U.S.C. § 1082, "A plan . . . shall satisfy the minimum funding standing applicable to the plan for any plan year."  Under 29 U.S.C. § 1102(b)(1), "Every employee benefit plan shall . . . provide a procedure for establishing and carrying out a funding policy and method."  And under 29 U.S.C. § 1103(a), "all assets of an employee benefit plan shall be held in trust by one or more trustees."  But Wells Fargo failed to create, fund, and maintain a trust fund for the Plan participants' benefit.

### 4.    The Plan Is Not a "Top Hat" Plan Under ERISA.

39.    The Plan is not a "top hat" plan under ERISA.  A top hat plan is "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees."  29 USC §§ 1051(2), 1081(a)(3), and 1101(a)(1); *Tolbert v. RBC Capital Mkts. Corp.*, 758 F.3d 619, 626 (5th Cir. 2014).  Top hat plans are exempt from ERISA's funding, accrual, vesting, forfeiture, and fiduciary provisions.  *Id*.

40.    The Plan is not a "top hat" plan because it does not meet the "primary purpose" factor—i.e., that the plan be "maintained . . .  primarily for the purpose of providing deferred compensation."  In fact, the primary purpose of the Plan is to restrain trade by imposing on departing employees an unenforceable penalty.  *See Almers v. S.C. Nat'l Bank*, 217 S.E.2d 135, 139 (S.C. 1975) ("restraint [of trade] is undoubtedly the purpose of the forfeiture provision").

41.    The Plan is also not a "top hat" plan because it does not meet the "selectivity" factor—i.e., that the plan be limited to "a select group of management or highly compensated employees."  The Plan defines "Eligible Employee" as "any Employee in a job classification which the Plan Administrator shall by appropriate resolution designate from time to time as

eligible for participation in the Plan." Exhibit A, p. 3, ¶ 3.08. In practice, the Plan included hundreds (perhaps thousands) of financial advisors throughout the United States, but excluded Wells Fargo's "management."[5] Discovery will reveal the extent to which Plan participants were "highly compensated," especially when compared to Defendants' management and executives.

42. The Plan is also not a "top hat" plan because the participants had no ability to affect or substantially influence the design and operation of the Plan on an individual basis. In fact, the Plan was provided to Plaintiff and the other participants in a take-it-or-leave-it manner.

43. Defendant Wells Fargo & Company established and maintains another deferred-compensation plan—called the "Wells Fargo Advisors, LLC Performance Award Contribution and Deferral Plan"—that is intended to be a "top hat" plan ("Other Plan").[6] This Other Plan is nearly identical to the Plan, except it purports to limit eligible employees to "a select group of management and other highly compensated individuals," and states it "shall function solely as a so-called 'top hat' plan of deferred compensation subject to [ERISA]." The existence of this Other Plan shows that the Plan was never intended to be a "top hat" plan.

**5.    Plaintiff Was Not Required to Exhaust Any Administrative Remedy.**

44. Plaintiff was not required to exhaust any administrative remedy because he has asserted an ERISA claim for breach of fiduciary duty. "Unlike a claim for benefits under a plan, which implicates the expertise of a plan fiduciary, adjudication of a claim for a violation of an ERISA statutory provision involves the interpretation and application of a federal statute, which is within the expertise of the judiciary. . . .  [So] the judicially created exhaustion requirement

---

[5] As of July 2014, Defendant Wells Fargo Advisors, LLC or affiliated entities employed over 15,000 financial advisors out of a total workforce of 25,000 employees.

[6] To the extent this Other Plan applies to Plaintiff's claims, the Other Plan is not a "top hat" plan because it was not maintained by Defendants primarily for the purpose of providing deferred compensation, it was not limited to a select group of management or highly compensated employees, and the participants had no ability to affect or substantially influence the design and operation of the plan on an individual basis.

does not apply to a claim for breach of fiduciary duty." *Smith v. Sydnor*, 184 F.3d 356, 365 (4th Cir. 1999). "'Indeed, there is a strong interest in judicial resolution of these [ERISA statutory] claims, for the purpose of providing a consistent source of law to help plan fiduciaries and participants predict the legality of proposed actions.'" *Id.* (quoting *Zipf v. American Tel. & Tel Co.*, 799 F.2d 889, 893 (3d Cir. 1986)).

45.    Further, this is not a typical ERISA benefits case. While the Plan contains an appeal process for a denial of a claim for benefits, Plaintiff is not asserting a 29 U.S.C. 1132(a)(1) claim for benefits under the Plan's terms. The issue in Plaintiff's ERISA claim is not how to interpret the Plan, but rather how to interpret ERISA (i.e., whether the Plan is an ERISA "pension benefit plan," which would invalidate the Forfeiture Clause). *See Smith*, 184 F.3d at 362 (a claim for benefits involves interpreting an ERISA plan, while a claim for breach of fiduciary duty involves interpreting ERISA). And because "no deference is due plan fiduciaries," *id.* at 365, and courts "do not give full credence to an ERISA fiduciary's assessment of his own allegedly wrongful conduct," *id.* at 365 n.10, exhaustion of administrative remedies would have been futile.

C.    **Alternatively, The Forfeiture Clause Is Invalid Under South Carolina Law.**

46.    Alternatively, if ERISA does not apply to Plaintiff's claims, the Forfeiture Clause is invalid and unenforceable under South Carolina law because it is an unreasonable restraint of trade, an unenforceable penalty, and ambiguous.

1.    **The Forfeiture Clause Is an Unreasonable Restraint of Trade.**

47.    The Forfeiture Clause is an unreasonable restraint of trade because it is overbroad and unduly restrictive. Forfeiture clauses are enforceable in South Carolina only if they contain reasonable time and geographic limitations. *See Almers v. S.C. Nat'l Bank*, 217 S.E.2d 135, 139 (S.C. 1975) ("[A] forfeiture clause in a profit or pension plan which provides that upon

employment with a competitor a participant is divested of rights under the plan is invalid unless it contains reasonable time and geographic limitations."). Here, the Plan seeks to prevent Plaintiff from becoming "associated with" any "financial services business" anywhere in the world for three years. Wells Fargo does not even attempt to tie the restriction to the type of services Plaintiff performed for Wells Fargo, to his clients, or to the geographic location where he worked. Further, in order to receive his deferred compensation in retirement, the Plan purports to require Plaintiff to sign invalid non-competition and non-solicitation agreements.

### 2.     The Forfeiture Clause Constitutes an Unenforceable Penalty.

48.     The Forfeiture Clause constitutes an unenforceable penalty under South Carolina law.[7] Wells Fargo made no effort to tie the amount of funds forfeited to any alleged damages it might have suffered. *Baugh v. Columbia Heart Clinic, P.A*., 738 S.E.2d 480 (S.C. Ct. App. 2013). Where a forfeiture "is reasonably intended by the parties as the predetermined measure of compensation for actual damages that might be sustained by reason of nonperformance, the [forfeiture] is for liquidated damages." *Tate v. Le Master*, 99 S.E.2d 39, 45-46 (S.C. 1957). But "where the [forfeiture] is not based upon contemplated actual damages but is intended to provide punishment for breach of the contract, it is a penalty." *Moser v. Gosnell*, 513 S.E.2d 123, 126 (S.C. Ct. App. 1999). A forfeiture will be deemed a penalty if it "is so large that it is plainly disproportionate to any probable damage resulting from breach of contract." *Lewis v. Premium Inv. Corp*., 568 S.E.2d 361, 363 (2002).

49.     Here, the Forfeiture Clause constitutes an unenforceable penalty because the forfeiture amount is not based on any contemplated actual damages suffered by Wells Fargo, but rather is intended to punish Plaintiff for breaching the Forfeiture Clause. Indeed, the forfeiture

---

[7] The Forfeiture Clause also constitutes an unenforceable penalty under North Carolina law, which is the law specified in the 2012 Plan.

amount is disproportionate to any probable damage resulting from any breach of the Forfeiture Clause.

50.    Further, the injury (if any) caused by any breach of the Forfeiture Clause is not difficult or impossible to determine; Wells Fargo can simply review its financial records.

51.    Also, Plaintiff did not intend for the Forfeiture Clause to provide for liquidated damages rather than a penalty.  In fact, the parties did not negotiate the terms of the Plan at all, so Plaintiff could not have any intent related to the Plan or its Forfeiture Clause.  Plaintiff's participation in the Plan was simply provided by Defendants in a take-it-or-leave-it manner.

52.    Wells Fargo also did not intend for the Forfeiture Clause to be liquidated damages rather than a penalty, as the amount of deferred compensation forfeited has no relationship to any predicted or actual losses allegedly suffered by Wells Fargo by Plaintiff's becoming "associated with" any "financial services business" anywhere in the world.   The amount of deferred compensation earned (and later forfeited) by Plaintiff was determined by Wells Fargo in an apparent "black box" with no (published at least) guidelines, standards, or criteria.   The Performance Awards earned were to be "determined on the basis of your performance relative to the goals and objectives established for that award," while the Special Awards were to be determined "under such circumstances as the plan administrator deems appropriate, including (without limitation) as a recruitment vehicle to attract new employees who qualify as eligible employees under the Plan or as a special retention incentive to motivate eligible employees to remain with the participating employer."  *Id.* at 5.  The Plan apparently provides no other guidelines for determining the amount of Performance or Special Awards.

53.    Further, the amount of deferred compensation forfeited was not a reasonable pre-estimate of the probable loss (if any) caused by Plaintiff's leaving Wells Fargo.  The sum

stipulated was rather the amount of previously earned deferred compensation (either Performance Awards or Special Awards), which was "backward" looking. Neither type of deferred compensation was intended by Wells Fargo to be a reasonable estimate of the probable loss caused by any breach of the Forfeiture Clause.

54.     For these reasons, the Forfeiture Clause constitutes an unenforceable penalty under South Carolina law.

### 3.     The Forfeiture Clause Is Unenforceable Because It Is Ambiguous.

55.     The Forfeiture Clause is unenforceable because it is ambiguous, was drafted by Wells Fargo, and should be enforced against Wells Fargo. Courts "abhor forfeitures," *Smith v. Equitable Life Assurance Soc*., 196 S.E. 879, 882 (S.C. 1938), and any ambiguity in a written contract should be construed most strongly against the party who drafted it. *Myrtle Beach Lumber Co. v. Willoughby*, 274 S.E.2d 423, 426 (S.C. 1981); *see also Metcalf v. Huntley-Richardson Lumber Co*., 170 S.E. 162 (S.C. 1933) (affirming order, which stated: "forfeitures are not favored in the law, and Courts will resort to any reasonable means of interpreting contracts to prevent forfeitures from occurring. So that, if the contracts in question . . . contained ambiguities, such ambiguities should be reconciled, so far as possible, to prevent a forfeiture."). For these reasons, an ambiguity in a forfeiture clause is construed against the drafter, and renders the clause unenforceable.

56.     Here, the Forfeiture Clause is ambiguous in its use of the phrases "associated with" and "any financial services business." Indeed, the phrases "become associated with" and "financial services business" are incredibly broad and susceptible to multiple meanings. "Become associated with" could mean "become employed in a competing position" or "become employed in non-competing position"; may or may not include non-competing positions that

later become competing positions; and may or may not include non-employment associations such as providing consulting services or opening an account. "Financial services business" could mean "a competing financial services business" or a "non-competing financial services business"; and may or may not include a non-competing business that later becomes a competing business. The Plan contains no criteria, guidelines, or standards about what it means to "become associated with" a "financial services business."

57.    Because Wells Fargo drafted the Plan, the ambiguities in the Forfeiture Clause should be construed against Wells Fargo and in favor of Plaintiff, so that the Forfeiture Clause is rendered unenforceable.

**D.    Forfeiture of Plaintiff's Deferred Compensation Accounts.**

58.    Plaintiff was employed by Wells Fargo, and a participant in the Plan.

59.    While employed by Wells Fargo, Plaintiff earned deferred compensation under the Plan. This includes both performance awards and service awards. The deferred compensation Plaintiff earned was placed into a segregated account (with subaccounts for each award), and were thus funds that Plaintiff had been credited with; *i.e.*, they satisfied all conditions to having the funds placed into a designated account for their deferred compensation.

60.    Plaintiff "retired" (as that term is used under the Plan) from Wells Fargo on February 2, 2014. Later that month, he became employed by Berry Financial Group. Wells Fargo then applied the Forfeiture Clause to deny Plaintiff with approximately $300,000 in deferred compensation he earned and was entitled to receive.

## V.    CAUSES OF ACTION

**A.    Count One: Breach of Fiduciary Duty**

61.    Plaintiff incorporates by reference the allegations in paragraphs 1-60 above.

62.     Under 29 U.S.C. §§ 1109(a) and 1132(a), Plaintiff seeks damages for Defendants' breaches of fiduciary duties.  Defendants control and manage the operation and administration of the Plan.  Defendants have breached their fiduciary duties by failing to (a) apply ERISA's non-forfeiture, vesting, and other provisions to the Plan; and (b) cause the Plan to create, fund, and maintain a trust fund for the Plan participants' benefit.

63.     Plaintiff seeks the restoration of all deferred compensation that was illegally forfeited by Defendants.

64.     Plaintiff also seeks the recovery of his reasonable attorney's fees and costs under 29 U.S.C. § 1132(g)(1).

**B.     Count Two: Breach of Contract**

65.     Plaintiff incorporates by reference the allegations in paragraphs 1-64 above.

66.     Plaintiff entered into a contract with Defendants to pay Plaintiff his deferred compensation as described by the Plan.

67.     Plaintiff has performed all of his legally required obligations under the Plan entitling him to payment of his deferred compensation.

68.     Defendants refuse to pay Plaintiff his deferred compensation based of the Plan's Forfeiture Clause.  But the Forfeiture Clause is unenforceable because it is an unreasonable restraint of trade, an unenforceable penalty, and ambiguous.

69.     Defendants' failure to pay constitutes a breach of their obligations, damaging Plaintiff.

70.     Defendants are liable to Plaintiff for breach of contract in the amount due in their deferred-compensation account balances, including earnings and interest at the highest legal rate.

**C.     Count Three: Money Had and Received**

71.     Plaintiff incorporates by reference the allegations in paragraphs 1-70 above.

72.     Plaintiff qualified for deferred compensation under the Plan.  Defendants failed to pay the deferred compensation to Plaintiff based on the Plan's unenforceable Forfeiture Clause.

73.     Defendants hold money in the nature of Plaintiff's deferred compensation, which in equity and good conscience belongs to Plaintiff.

74.     Defendants' wrongful withholding of Plaintiff's deferred compensation has caused damage to Plaintiff.

**D.     <u>Count Four: Unjust Enrichment</u>**

75.     Plaintiff incorporates by reference the allegations in paragraphs 1-74 above.

76.     Plaintiff is entitled to deferred compensation, even if he became "associated with" any "financial services businesses" anywhere in the world within three years of leaving Defendants' employment.  Defendants failed to pay Plaintiff his deferred compensation based on the Plan's invalid and unenforceable Forfeiture Clause.   The Plan's Forfeiture Clause is unenforceable under South Carolina law because it is an unreasonable restraint of trade, an unenforceable penalty, and ambiguous

77.     Defendants wrongfully secured a benefit from Plaintiff that would be unconscionable for Defendants to retain.

78.     Defendants' actions caused damages to Plaintiff.

**E.     <u>Count Five: Conversion</u>**

79.     Plaintiff incorporates by reference the allegations in paragraphs 1-78 above.

80.     Plaintiff owned the deferred compensation in his account, which was his personal property.  He a right to immediate possession of that property, and did not forfeit the right to the possession of that property.  The Plan's Forfeiture Clause is unenforceable under South Carolina law because it is an unreasonable restraint of trade, an unenforceable penalty, and ambiguous.

81.     Defendants wrongfully exercised dominion over Plaintiff's deferred compensation by seizing it in reliance on the Plan's unenforceable Forfeiture Clause.

82.     As a result, Defendants' wrongful conversion of property belonging to Plaintiff caused him to suffer injury.

**F.    Count Six: Declaratory & Injunctive Relief**

83.     Plaintiff incorporates by reference the allegations in paragraphs 1-82 above.

84.     There is a dispute between the parties regarding their rights, obligations, and duties under the terms of the Plan, which is ripe for judicial determination.

85.     Plaintiff is entitled to an order under 29 U.S.C § 1109(a) and 29 U.S.C § 1132(a)(3) declaring that the Plan's Forfeiture Clause is unenforceable because it violates ERISA's vesting and non-forfeitability provisions, and that the Plan violates ERISA's funding provisions.

86.     Alternatively, Plaintiff is entitled to an order declaring that the Plan's Forfeiture Clause is unenforceable under South Carolina law because it is an unreasonable restraint of trade, an unenforceable penalty, and ambiguous.

87.     Plaintiff is also entitled to a permanent injunction enjoining Defendants from using the Plan's Forfeiture Clause to forfeit Plaintiff's deferred compensation and from violating ERISA's funding provisions.

## VI.    REQUEST FOR RELIEF

88.     Plaintiff Robert Berry requests that this Court enter a judgment against Defendants for:

> (a)    Declaratory and injunctive relief as permitted by law or equity, including enjoining Defendants from using the Plan's Forfeiture Clause to forfeit Plaintiff's deferred compensation and enjoining Defendants from violating ERISA's funding provisions;

(b)     Declaratory relief that the Plan's Forfeiture Clause is invalid and unenforceable under ERISA, or alternatively, under South Carolina law;

(c)     Actual compensatory damages;

(d)     Reasonable attorneys' fees, costs, and expenses as provided by law and equity;

(e)     Pre-judgment and post-judgment interest at the highest lawful rates;

(f)     Such other and further relief as allowed by law and equity that this Court deems just and proper.

## VII.     DEMAND FOR JURY TRIAL

89.     Plaintiff demands a trial by jury on all issues so triable.

DATED:  February 1, 2017              Respectfully submitted,


By: */s/ William P. Tinkler*
    William P. Tinkler
    D.S.C. Bar No. 11794
    MOTLEY RICE LLC
    28 Bridgeside Boulevard
    Mount Pleasant, SC  29464
    Telephone:  (843) 216-9000
    Facsimile:   (843) 216-9450
    wtinkler@motleyrice.com

    Thomas R. Ajamie
    Texas Bar No. 00952400
    *Pro Hac Vice Admission – Pending*
    David S. Siegel
    Texas Bar No. 18341930
    *Pro Hac Vice Admission – Pending*
    John S. Edwards, Jr.
    Texas Bar No. 24040851
    *Pro Hac Vice Admission – Pending*
    AJAMIE LLP
    Pennzoil Place - South Tower
    711 Louisiana, Suite 2150
    Houston, TX  77002
    Telephone:  (713) 860-1600
    Facsimile:   (713) 860-1699
    tajamie@ajamie.com
    dsiegel@ajamie.com
    jedwards@ajamie.com

**ATTORNEYS FOR PLAINTIFF**