IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| ROBERT BERRY, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARILY SITUATED, | § § § § | |
| Plaintiff, | § § | Civil Action No. No. 3:17-cv-00304-JFA |
| VS. | § § | |
| WELLS FARGO & COMPANY, WELLS FARGO CLEARING SERVICES, LLC, and WELLS FARGO ADVISORS FINANCIAL NETWORK, LLC, and DOES 1 thru 50, | § § § § § § | **JURY TRIAL DEMANDED** |
| Defendants. | § § | |

## PLAINTIFF'S FIRST AMENDED CLASS-ACTION COMPLAINT

Plaintiff Robert Berry, individually and on behalf of all others similarly situated, files this

First Amended Class-Action Complaint against Defendants Wells Fargo & Company, Wells

Fargo Clearing Services, LLC f/k/a Wells Fargo Advisors, LLC, Wells Fargo Advisors Financial

Network LLC (collectively, "Wells Fargo"), and DOES 1 thru 50 (together with "Wells Fargo,"

the "Defendants") in order to require Wells Fargo to fund its pension benefit plans and to recover

deferred compensation owed to Plaintiff and other Wells Fargo former and current employees

that was improperly deemed forfeited in violation of ERISA.

## I.    PRELIMINARY STATEMENT

1.    This ERISA class action is filed on behalf of former and current employees of

Wells Fargo who did not receive money owed to them as deferred compensation. Plaintiff and

other financial advisors participated in two deferred-compensation plans. The plans constitute

"pension benefit plans" under ERISA, and are subject to ERISA's funding, vesting, non-

forfeitability, and other requirements. These requirements mandate that Plaintiff's and the class's purportedly unvested deferred compensation is non-forfeitable.

2.    The plans violate ERISA's funding, vesting, non-forfeitability, and other requirements. A forfeiture clause in the plans allows Wells Fargo to forfeit a participant's purportedly unvested deferred compensation if the participant "becomes associated with" any "financial services business" anywhere in the world for a period of three (3) years after the participant retires. After Plaintiff retired from Wells Fargo and started his own business, Wells Fargo used the forfeiture clause to deny Plaintiff his deferred compensation. Wells Fargo did the same to other departing employees. But because the forfeiture clause is unenforceable under ERISA, Plaintiff and all others similarly situated are entitled to their forfeited deferred compensation.

3.    Plaintiff, on behalf of himself and the class, seeks to recover the deferred compensation that Defendants improperly deemed forfeited, to have the forfeiture clause declared invalid and unenforceable, and to require Wells Fargo to fund the plans.

## II.    PARTIES

4.    Plaintiff Robert Berry resides in the State of South Carolina and in this judicial district. He is 64-years old and has over 25 years of experience as a financial professional. He began his career in 1984 at Dean Witter, where he worked as a financial advisor. He then worked at Prudential from 1985 to 1994. In 1994, he joined Wheat First Butcher Singer, which was acquired by First Union in 1997 and changed its name to Wheat First Union. Wheat First Union was acquired by Wachovia Corporation in 2001 and changed its name to Wachovia Securities, LLC. Wachovia Securities, LLC was acquired by Wells Fargo in 2008, and changed its name to Wells Fargo Advisors, LLC in 2009. In February 2014, Berry retired from Wells

Fargo and started his own business.  Since then, he has been employed at Berry Financial Group in Lexington, South Carolina.

5.    Defendant Wells Fargo & Company is a Delaware corporation, headquartered in San Francisco, California.  It is the sponsor of both plans.  Its wholly owned subsidiaries include Defendants Wells Fargo Advisors Financial Network LLC and Wells Fargo Advisors, LLC (including their predecessors-in-interest as described below).  Defendants have been served and have appeared in this lawsuit.

6.    Defendants Wells Fargo Clearing Services, LLC and Wells Fargo Advisors Financial Network LLC do business under the trade name, "Wells Fargo Advisors," and administer a combined $1.5 trillion in client assets.

7.    Wells Fargo conducts business in and employs individuals, including Plaintiff and other class members, in South Carolina and throughout the country.

8.    Section 402(a)(1) of ERISA requires that every plan provide for one or more named fiduciaries who will have "authority and control and manage the operation and administration of the plan."  29 U.S.C. § 1102(a)(1).  The plans specifically identify a "Plan Administrator," defined in § 3.21 of the Plans as Defendant Wells Fargo & Company's "Director of Compensation and Benefits (or the functional equivalent of such position)."  Exhibit A-1, p. 5; Exhibit A-2, p. 5; Exhibit B-1, p. 5.  ERISA also treats as fiduciaries any other person who exercises any discretionary authority or discretionary control respecting management of a plan, discretionary responsibility in the administration of a plan, or *any* authority or control respecting management or disposition of plan assets. ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i) (bold emphasis added).  Plaintiff names each such person, as well as any person acting as the

Plan Administrator, and any person to whom or entity to which the Plan Administrator delegated any fiduciary authority and control, as additional Defendants (the "Plan Fiduciary Defendants").

9.      Upon information and belief, Wells Fargo is a Plan Fiduciary Defendant because it has exercised authority or control respecting management or disposition of the plans' assets or has exercised discretionary authority or control respecting discretionary responsibility in administrating the plans.

10.     The remaining defendants, DOES 1 through 50, are also Plan Fiduciary Defendants.  Plaintiff is currently unaware of the names and capacities of DOES 1 through 50 and will amend this complaint when that information becomes known to him.  On information and belief, at all relevant times, DOES 1 through 50 were employees, agents, or representatives of Defendants engaged in the acts alleged in this complaint, and were acting with authorization and in the scope, course, and furtherance of such relationship.

### III.     JURISDICTION AND VENUE

11.     This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1) because this action arises under the federal Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461.

12.     This Court also has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because this is a civil action where the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different States.

13.     Venue is proper in this district under 28 U.S.C. §§ 1391(b)-(c) because a substantial part of the events giving rise to Plaintiff's claims occurred in this district, Plaintiff suffered harm in this district, and Defendants, themselves or through one or more of their subsidiaries, affiliates, business divisions, or business units, regularly conduct and transact business in South Carolina.

14.     Venue is also proper in this district under 29 U.S.C. § 1132(e)(2) because Defendants, who own and operate offices in this district, may be found in this district.

## IV.    FACTUAL BACKGROUND

### A.    Wells Fargo's Deferred-Compensation Plans

15.     Defendant Wells Fargo & Company established and maintains two deferred-compensation plans for its financial advisors: the "Wells Fargo Advisors, LLC Performance Award Contribution Plan" (the "Contribution Plan") and the "Wells Fargo Advisors, LLC Performance Award Contribution & Deferral Plan" (the "Deferral Plan") (collectively, the "Plans").  Wells Fargo has had these Plans since 1983, when its predecessor A.G. Edwards Inc. established the earliest plan. *Wakefield v. Wells Fargo & Co*., 2014 U.S. Dist. LEXIS 144142, *5-6 (N.D. Cal. Oct. 9, 2014).  The Plans have been amended several times, with amendments effective on January 1, 2006, January 1, 2008, January 1, 2009, January 1, 2010, January 1, 2012, and January 1, 2014. *See id.* at *5-6 and 10.   Attached are three plan documents: Exhibit A-1 is the 2012 version of the Deferral Plan, Exhibit A-2 is the 2014 version of the Deferral Plan, and Exhibit B-1 is the 2012 version of the Contribution Plan.  (Exhibit B-2 is reserved for the 2014 version of the Contribution Plan, which Plaintiff expects to obtain in discovery and which Plaintiff expects to contain many terms that are identical to those in Exhibit A-2.)

16.     The Plans offer identical benefits to two groups of financial advisors.  The Contribution Plan states it is offered to a "select group of individuals" and purports to be governed by North Carolina law.  Exhibit B-1, §§ 1.01 & 8.04, pp. 1 & 22.  The Deferral Plan, in contrast, purports to be limited to "a select group of management and other highly compensated individuals" in order to "function solely as a so-called 'top hat' plan of deferred compensation" and be governed by either ERISA or North Carolina law.  Exhibit A-1, §§ 1.02 & 9.04, pp. 1 & 22; Exhibit A-2, §§ 1.02 & 9.04, pp. 1 & 22-23.   But otherwise the Plans are substantively

identical—they have the same administration, performance and special awards, award criteria, vesting/distribution schedules, forfeiture provisions, investment returns, payments, and claims procedures.

17.    Plaintiff participated in the Deferral Plan (and its predecessor plans[1]) for about 10-12 years.  When he left Wells Fargo, Defendants enforced the forfeiture clause and seized about $200,000 or $300,000[2] of his deferred compensation.  The parties did not negotiate the terms of the Plans (or their previous versions), including the forfeiture clause, and Plaintiff's and the class's participation in the Plans (and their previous versions) was simply provided by Wells Fargo in a take-it-or-leave-it manner.  The Plans are uniformly applied to Plaintiff and each member of the class.

1.    **The Plans Provide Deferred Compensation to Participants.**

18.    The Plans purport to provide participants "with an opportunity to earn additional incentive [] compensation contingent upon their attainment of pre-established performance objectives and their completion of designated service periods.  One or more such individuals may also be credited with special awards under the Plan designed to serve as a meaningful incentive for them to continue in the employ of their participating employers."  Exhibit A-1, p. 1, § 1.02; Exhibit A-2, p. 1, § 1.02; Exhibit B-1, p. 1, § 1.01.

---

[1]    Previous versions of the Plans may also apply to Plaintiff's claims; Plaintiff expects to learn this information in discovery.  The Contribution Plan states it was established effective January 1, 2005, as the "Wachovia Securities Financial Holdings, LLC Performance Award Contribution Plan," and was amended several times, including in 2009, 2010, and 2012.  Exhibit B-1, p. 1, § 1.01.  The Deferral Plan states it was established effective January 1, 2005, as the "Wachovia Securities Financial Holdings, LLC Voluntary Deferral and Performance Award Contribution Plan," and was amended several times, including in 2009, 2010, and 2012.  Exhibit A-1, p. 1, § 1.01; Exhibit A-2, p. 1, § 1.01.  These previous versions of the Plans contain forfeiture provisions similar to those in the 2012 and 2014 versions of the Plans.  All versions of the Plans are collectively referred to as the "Plans."

[2]    Plaintiff's documents indicate Wells Fargo deemed forfeited about $300,000 of his deferred compensation, while documents recently provided by Wells Fargo show the number is almost $200,000.  Discovery should resolve this discrepancy.

19.     Participants in the Plans may earn two types of deferred compensation: "Performance Awards" and "Special Awards."  A "Performance Award" is an "incentive bonus which is credited to a Participant's Performance Award Account for a particular Plan Year on the basis of the Participant's performance relative to the performance objectives established for that Plan Year and which shall vest and become payable to the Participant only upon the Participant's continuation in Employee status for a designated term measured from the date that Performance Award is credited to his or her Performance Award Account."  Exhibit A-1, p. 5, ¶ 3.19; Exhibit A-2, p. 4, ¶ 3.19; Exhibit B-1, p. 4, ¶ 3.19.

20.     A "Special Award" is "any award of compensation credited to the Participant's Special Award Account . . . which is designed to serve as a meaningful incentive for the Participant to continue in the employ of his or her Participating Employer.  A Special Award shall ***not*** be based on the Participant's performance relative to pre-established performance objectives but shall be earned solely on the basis of his or her continuation in Employee status for the designated service period applicable to that award."  Exhibit B-1, p. 6, ¶ 3.27 (bold and italicized emphasis in original); Exhibit A-1, p. 6, ¶ 3.27 (bold and italicized emphasis in original); Exhibit A-2, p. 6, ¶ 3.27 (bold and italicized emphasis in original).

21.     Performance and special awards are to be credited to a participant's individual account.  The "Performance Award Account will each be divided into a series of subaccounts, and there will accordingly be a separate **Performance Award Subaccount** for each year the Participant is credited with a Performance Award."  Exhibit B-1, p. 2, § 3.01 (bold emphasis in original); Exhibit A-1, p. 2, § 3.01 (bold emphasis in original); Exhibit A-2, p. 2, § 3.01 (bold emphasis in original).  A "**Special Award Subaccount** shall be established for any Plan Year for which the Participant is credited with a Special Award."  *Id.*

22.    Both types of awards are subject to a vesting schedule "tied to the Participant's continuation in Employee status" and governed by either a cliff-vesting formula or an installment schedule.  Exhibit A-1, pp. 10-11, §§ 5.01.C, 5.02, and 5.03; Exhibit A-2, pp. 10-12, §§ 5.01.C, 5.02, and 5.03; Exhibit B-1, pp. 10-11, §§ 5.01.C, 5.02, and 5.03.  The vesting schedule shall be established by the Plan Administrator.  Exhibit A-1, pp. 11-12, §§ 5.02 and 5.03; Exhibit A-2, pp. 11-12, §§ 5.02 and 5.03; Exhibit B-1, pp. 10-11, §§ 5.02 and 5.03.  In practice, awards fully vest after 5 to 7 years (and are then taxable income reported on a Form W-2).  Because both types of awards are paid in later years, they constitute deferred compensation.

2.    **The Plans Provide Retirement Income to Participants.**

23.    The Plans, by their express terms and as a result of surrounding circumstances, provide retirement income to employees and result in a deferral of income for employees for periods extending to the termination of their employment with Wells Fargo and beyond.  Section 5.02 provides that a Performance Award may continue to vest after retirement, as long as the employee qualifies for "Retirement."

> If a Participant voluntarily terminates Employee status pursuant to a Retirement under Section 3.24 [or 3.27], all balances in his or her Performance Award Subaccounts (as adjusted for investment earnings, gains and losses) which are not at that time vested in accordance with the vesting provisions . . . shall continue to vest [so long as the Participant continues to meet the requirements for Retirement].

Exhibit A-1, p. 11, § 5.02; Exhibit A-2, p. 11, § 5.02; Exhibit B-1, p. 11, § 5.02.

24.    Similarly, the Plans provide that a Special Award "made for Retirement retention purposes" may continue to vest after retirement, as long as the employee qualifies for "Retirement."

> A Special Award made for retirement [or] retention purposes shall not vest unless the Participant continues in Employee status until he or she satisfies the applicable age and years of service

> requirement for such retirement or retention as determined by the Plan Administrator and shall become distributable upon his or her subsequent cessation of Employee status provided such cessation is also a "separation from service" under Code section 409A, subject to the deferred commencement provisions of Paragraph 9.10 [or 11.10] to the extent applicable.

Exhibit A-1, p. 13, § 5.03.C; Exhibit A-2, p. 13, § 5.03.C; Exhibit B-1, p. 12, § 5.03.C.

25.     To qualify for "Retirement" under the Plans, a participant must meet several requirements.  First, the participant must voluntarily resign his or her employment with the Company at a time when the participant is at least fifty (50), has completed at least three (3) years of continuous service as an employee, and has a combined age and length of continuous service as an employee of at least sixty (60) years.  Exhibit A-1, p. 5, § 3.24.A; Exhibit A-2, p. 5, § 3.24.A; Exhibit B-1, p. 5, § 3.24.A.  This is known as the "Rule of 60."  Plaintiff easily met this Rule of 60, as he left Wells Fargo when he was 61.

26.     Second, for a period of three years, the participant may not "become associated . . . with any entity, whether as principal, partner, employee, consultant, agent, independent contractor, registered representative, or shareholder (other than solely as a holder of not more than one percent of the outstanding voting shares of any publicly traded corporation) that is actively engaged in the financial services business, including, but not limited to, any bank, broker-dealer, investment advisor, investment company, financial planner, investment bank, mutual fund or insurance company (a 'Financial Services Business')."  Exhibit A-1, pp. 5-6, § 3.24.B(i); Exhibit A-2, pp. 5-6, § 3.24.B(i); Exhibit B-1, p. 5, § 3.24.B(i).  Participants may obtain a written waiver of this requirement, and since 2012, participants in California and North Dakota have automatically been granted such a waiver.   Exhibit A-1,  p. 6,  § 3.24.B(ii); Exhibit A-2, p. 6, § 3.24.B(ii); Exhibit B-1, p. 5, § 3.24.B(ii).

27.     Third, the participant (if deemed eligible by his or her employer) must enter into a Client Transition Agreement.  Exhibit A-1, p. 6, § 3.24.C; Exhibit A-2, p. 6, § 3.24.C; Exhibit B-1, p. 5, § 3.24.C.  "Client Transition Agreement" is defined as "an agreement, in form and substance approved by the Participating Employer, under the sunset or book transfer program, or any other book transition program as may be approved by the Participating Employer from time to time, pursuant to which client accounts serviced by a retiring Participant are transitioned to other financial advisor(s) of the Participating Employer in connection with the Participant's retirement from the industry and the Participant is to receive one or more compensatory payments from the Participating Employer and/or such other financial advisor(s)."  Exhibit A-1, p. 3, § 3.05; Exhibit A-2, p. 3, § 3.05; Exhibit B-1, pp. 2-3, § 3.05.  The Client Transition Agreement is not actually attached to or included in the Plans.  Upon information and belief, the Client Transition Agreement contains invalid non-competition and non-solicitation agreements.

28.     Fourth, the participant must execute and not revoke a Release.  Exhibit A-1, p. 6, § 3.24.D; Exhibit A-2, p. 6, § 3.24.D; Exhibit B-1, p. 5, § 3.24.D.  "Release" is defined as "a release of claims against the Company and any Affiliated Company in the form and substance indicated by the Participating Employer."  Exhibit A-1, p. 5, § 3.23; Exhibit A-2, p. 5, § 3.23; Exhibit B-1, p. 5, § 3.23.  The Release is not actually attached to or included in the Plans.

29.     If a participant qualifies for Retirement under the Plans, then the participant's deferred compensation (i.e., performance and special awards) will continue to vest after the participant retires.  Exhibit A-1, pp. 11 & 13, §§ 5.02 & 5.03.C; Exhibit A-2, pp. 11 & 13, §§ 5.02 & 5.03.C; Exhibit B-1, p. 11-12, §§ 5.02 & 5.03.C.

**3.    The Plans Are Employee Benefit Plans under ERISA.**

30.     The Plans are employee benefit plans under ERISA.  An "employee benefit plan" or "plan" is defined as "an employee welfare benefit plan or an employee pension benefit plan or

a plan which is both an employee welfare benefit plan and an employee pension benefit plan."

ERISA § 3(3), 29 U.S.C. § 1002(3). A "pension benefit plan" or "pension plan" is defined as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—
>
> > (i)    provided retirement income to employees, or
> >
> > (ii)   results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,
>
> regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

*Id.* at § 1002(2)(A). An "individual account pension plan" is defined as a "pension plan which provided for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." *Id.* at § 1002(34).

31.    A plan is established under ERISA if "from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982). Failure to adhere to the requirements set forth in ERISA does not exempt an employer from coverage of the Act. *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1503 (9th Cir. 1985).

32.    ERISA applies to Plaintiff's claims because the Plans are "pension benefit plans" and "individual account pension plans." The Plans are "pension benefit plans" under Section 3(2)(A) of ERISA because, "by [their] express terms [and] as a result of surrounding circumstances," they provide "retirement income to employees and results in a deferral of

income by employees for periods extending to the termination of covered employment or beyond." 29 U.S.C. § 1002(2)(A). As explained above, Sections 3.24 ("Retirement"), 5.02 ("Performance Awards"), 5.03 ("Special Awards"), and 5.05 ("Forfeitures") of the Plans provide the specific conditions under which Performance and Special Awards will systematically continue to vest after retirement.

33.    The Plans are also "individual account pension plans" under 29 U.S.C. § 1002(34) because they are "pension plans which provide[] for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account." As explained above, § 3.01 ("Account") of the Plans provides that performance and special awards shall be credited to an individual account for each participant. And § 7.04 ("Valuation") provides for benefits based solely upon the amount contributed to the participant's account. Exhibit A-1, p. 18, § 7.04 ("The amount to be distributed from any subaccount . . . shall be determined on the basis of the vested balance credited to that subaccount as of the most recent practical Valuation Date . . . preceding the date of the actual distribution."); Exhibit A-2, p. 19, § 7.04 (same); Exhibit B-1, p. 18, § 7.04 (same).

### 4.    The Deferral Plan Is Not a "Top Hat" Plan Under ERISA.

34.    The Deferral Plan is not a "top hat" plan under ERISA. Top-hat plans are a "rare sub-species of ERISA plans" and their definition is "narrow." *In re New Valley Corp.*, 89 F.3d 143, 148 (3rd Cir. 1996). A top-hat plan is "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 USC §§ 1051(2), 1081(a)(3), and 1101(a)(1); *Tolbert v. RBC Capital Mkts. Corp.*, 758 F.3d 619, 626 (5th Cir. 2014). Top-hat plans are exempt from ERISA's funding, accrual, vesting, forfeiture, and fiduciary provisions. *Id*. A defendant has the burden of demonstrating that a plan is a top-hat plan. *Deal v. Kegler*

*Brown Hill & Ritter Co. L.P.A.*, 551 F. Supp. 2d 694, 700 (S.D. Ohio 2008) (citing

*Barrowclough v. Kidder, Peabody, Inc.*, 752 F.2d 923, 932 (3rd Cir. 1985)).

35.     The Deferral Plan is not a "top hat" plan because it does not meet the "primary

purpose" factor—i.e., that the plan be "maintained . . .  primarily for the purpose of providing

deferred compensation."  In fact, the primary purpose of the Deferral Plan is to restrain trade by

imposing on departing employees an unenforceable penalty.  *See Almers v. S.C. Nat'l Bank*, 217

S.E.2d 135, 139 (S.C. 1975) ("restraint [of trade] is undoubtedly the purpose of the forfeiture

provision").

36.     The Deferral Plan is also not a "top hat" plan because it does not meet the

"selectivity" factor—i.e., that the plan be limited to "a select group of management or highly

compensated employees."  This selectivity factor has both quantitative and qualitative elements.

"In number, the plan must cover relatively few employees.  In character, the plan must cover

only high level employees."  *Bond v. Marriott Int'l, Inc.*, 637 Fed. Appx. 726, 729 (4th Cir.

2016) (quoting *In re New Valley Corp.*, 89 F.3d at 148).  The Deferral Plan defines "Eligible

Employee" as "any Employee in a job classification which the Plan Administrator shall by

appropriate resolution designate from time to time as eligible for participation in the Plan;

***provided, however***, that in each such instance the Employee must be either a highly compensated

employee of [Wells Fargo Advisors, LLC] or part of its management personnel, as determined

pursuant to guidelines established from time to time by the Plan Administrator."  Exhibit A-1,

p. 3, ¶ 3.08 (bold and italicized emphasis in original); Exhibit A-2, p. 3, ¶ 3.08 (bold and

italicized emphasis in original).  In practice, however, the Deferral Plan includes thousands of

on-the-ground financial advisors who are not part of a "select group" of management or highly

compensated individuals.  The Deferral Plan includes only financial advisors, and does not include executives or other high-level employees.

37.     Plaintiff was not part of a "select group" of management.  Wells Fargo (and its predecessor Wachovia) oversaw four divisions of financial advisors: (1) independent practice; (2) traditional advisor; (3) bank advisor; and (4) profit formula.  Plaintiff was in the profit-formula division.  Wells Fargo's senior management oversaw these four divisions—Plaintiff was not part of this management group.  Each division also had its own management team—Plaintiff was not part of these management teams.  Plaintiff was a managing director of a profit-formula office in the profit-formula division of Wachovia.  When he left Wells Fargo, Plaintiff managed only one financial advisor and one assistant in an office with three total employees.  Defendants apparently placed all employees with "managing" or "manager" in their titles in the Deferral Plan, rather than limiting the Deferral Plan to high-level employees.

38.     Plaintiff was also not part a "select group" of highly compensated individuals.  Thousands of employees participated in the Deferral Plan, and some Deferral Plan participants, like Plaintiff, earned less than some participants in the Contribution Plan.  Wells Fargo alleges in another lawsuit, for example, that one former employee—who forfeited two or three times as much deferred compensation as Plaintiff ($600,000 to $200,000 or $300,000)—participated in the Contribution Plan, not the Deferral Plan.  Discovery will reveal the extent to which participants in the Deferral Plan were "highly compensated," especially when compared to Defendants' executives and other high-level employees.  Even if the Deferral Plan included only "high level" employees, it could not constitute a "top hat" plan under ERISA because the Contribution Plan provides identical benefits to non-"high level" employees.

39.    The Deferral Plan is also not a "top hat" plan because the participants had no ability to affect or substantially influence the design and operation of the Deferral Plan on an individual basis.  In fact, the Deferral Plan was provided to Plaintiff and the other class members in a take-it-or-leave-it manner.   The existence of the Contribution Plan—which provides identical benefits to other financial advisors—shows that participants in the Deferral Plan had no ability to affect or substantially influence the design and operation of the Deferral Plan.  If they did, the Deferral Plan would provide greater benefits than the Contribution Plan, but the Plans provide identical benefits.

### 5.    The Contribution Plan Is Not a "Top Hat" Plan Under ERISA.

40.    The Contribution Plan is not a "top hat" plan under ERISA because it does not meet the "primary purpose" factor—i.e., that the plan be "maintained . . .  primarily for the purpose of providing deferred compensation."  In fact, the primary purpose of the Contribution Plan is to restrain trade by imposing on departing employees an unenforceable penalty.  *See Almers*, 217 S.E.2d at 139.

41.    The Contribution Plan is also not a "top hat" plan because it does not meet the "selectivity" factor—i.e., that the plan be limited to "a select group of management or highly compensated employees."   The Contribution Plan defines "Eligible Employee" as "any Employee in a job classification which the Plan Administrator shall by appropriate resolution designate from time to time as eligible for participation in the Plan."  Exhibit A, p. 3, ¶ 3.08.  This definition is not limited to "a select group of management or highly compensated employees."  In practice, the Contribution Plan included thousands of on-the-ground financial

advisors in the United States[3] who were neither management nor highly compensated.  It was not limited to "high level" employees, as required by *Bond*.  637 Fed. Appx. at 729.

42.     The Contribution Plan is also not a "top hat" plan because the participants had no ability to affect or substantially influence the design and operation of the Contribution Plan on an individual basis.  In fact, the Contribution Plan was provided to participants in a take-it-or-leave-it manner.

43.     The existence of the Deferral Plan shows that the Contribution Plan was never intended to be a "top hat" plan.   The plan documents are nearly identical, but unlike the Contribution Plan, the Deferral Plan purports to limit eligible employees to "a select group of management and other highly compensated individuals" in order to "function solely as a so-called 'top hat' plan of deferred compensation subject to [ERISA]."   Exhibit A-1, § 1.02, p. 1; Exhibit A-2, § 1.02, p. 1.  The Deferral Plan, however, is also not a "top hat" plan.

**6.     The Plans Contain a Forfeiture Clause.**

44.     The Plans contain the same forfeiture clause.  If a participant fails to qualify for Retirement—e.g., because he or she "becomes associated with" another financial services business after leaving Wells Fargo or fails to execute the Client Transition Agreement or Release—then what the Plans deem to be the participant's unvested deferred compensation shall be forfeited.  The "Forfeiture Clause" states:

> **Forfeitures.**  Upon a Participant's cessation of Employee status for any reason (including a transfer to FiNet) other than (i) a Retirement  . . . , or (ii) Involuntary Termination, all balances in his or her Performance Award Subaccounts and/or Special Award Subaccounts (as adjusted for investment earnings, gains and losses) which are not at that time vested in accordance with the vesting provisions . . . shall be immediately forfeited, and the

---

[3] As of July 2014, Defendant Wells Fargo Advisors, LLC or affiliated entities employed over 15,000 financial advisors out of a total workforce of 25,000 employees.

> Participant shall cease to have any further right or interest in those
> forfeited balances . . .

Exhibit A-1, p. 13, § 5.05; Exhibit A-2, p. 13, § 5.05; Exhibit B-1, p. 13, § 5.05.  A participant who initially qualifies for retirement may be requested "to certify, at least annually, that the Participant has been and continues to be in compliance with the requirements of the Plan regarding eligibility for continued vesting as a result of Retirement."  Exhibit A-1, p. 13, § 5.05; Exhibit A-2, pp. 13-14, § 5.05; Exhibit B-1, p. 13, § 5.05.  "A Participant's failure to provide a written certification in a form specified by the Plan Administrator within thirty (30) days of such request shall result in a forfeiture of the Participant's unvested balances."  Exhibit A-1, p. 13, § 5.05; Exhibit A-2, p. 14, § 5.05; Exhibit B-1, p. 13, § 5.05.  The certification form, however, is not actually attached to or included in the Plans.

### 7.    __The Plans Are Unfunded__.

45.    Wells Fargo failed to fund the Plans.  Under § 9.01 of the Plans, "The obligation to pay the vested balance of each Participant's Account hereunder shall at all times be an unfunded and unsecured obligation of the Company and the Participating Employer.  The Company as sponsor of the Plan shall serve as the guarantor of that obligation, but such guaranty shall also be unfunded and unsecured."  Exhibit A-1, p. 21; Exhibit A-2, p. 21; Exhibit B-1, p. 19.  Under § 6.06, "Although the investment return on a Participant's Accounts is to be measured by the actual gains, earnings and losses realized by one or more of the investment alternatives selected by the Participant . . . , neither the Company nor any Participating Employer shall be under any obligation to make the selected investments, and the investment experience shall only be tracked as debits or credits to the Participant's book accounts over the deferral period."  Exhibit A-1, p. 15; Exhibit A-2, p. 15; Exhibit B-1, p. 14.  For these reasons, the Plans

describe participants' investments as "hypothetical."  Exhibit A-1, pp. 8-9, §§ 4.02 & 4.03.C;

Exhibit A-2, pp. 8-9, §§ 4.02 & 4.03.C; Exhibit B-1, pp. 8-9, §§ 4.02 & 4.03.C.

**B.    Defendants' Breached Their Fiduciary Duties.**

 **1.    Defendants Breached Their Fiduciary Duties by Enforcing the Invalid Forfeiture Clause.**

 46.    ERISA imposes vesting, non-forfeiture, accrual, and other requirements on pension plans.  ERISA §§ 203 & 204, 29 U.S.C. §§ 1053 (vesting and non-forfeiture) & 1054 (accrual).   The vesting and non-forfeiture requirements are contained in 29 U.S.C. § 1053, entitled "Minimum vesting standards."   Under § 1053(a), entitled "Nonforfeitability requirements," "Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age and in addition shall satisfy the requirements of paragraphs (1) and (2) of this subsection."  Paragraph (1) of subsection 1053(a) states that a "plan satisfies the requirements of this paragraph if an employee's rights in his accrued benefit derived from his own contributions are nonforfeitable."[4] The term "accrued benefit" means, "in the case of a plan which is an individual account plan, the balance of the individual's account."  *Id.* at § 1002(23)(B).

 47.    Paragraph (2)(B) of subsection 1053(a) contains the vesting and nonforfeitability requirements for an individual account plan:[5]

  (i)    In the case of an individual account plan, a plan satisfies the requirements of this paragraph if it satisfies the requirements of clause (ii) or (iii).

  (ii)    A plan satisfies the requirements of this clause if an employee who has completed at least 3 years of service has a nonforfeitable right to 100 percent of the employee's accrued benefit derived from employer contributions.

---

[4] 29 U.S.C. § 1053(a)(1).
[5] 29 U.S.C. § 1053(a)(2)(B).

(iii)    A plan satisfies the requirements of this clause if an employee has a nonforfeitable right to a percentage of the employee's accrued benefit derived from employer contributions determined under the following table.

| "Years of service: | The nonforfeitable percentage is: |
|---|---|
| 2 ...........................… | 20 |
| 3 ...........................… | 40 |
| 4 ...........................… | 60 |
| 5 ...........................… | 80 |
| 6 or more ......................… | 100. |

48.    The Plans violate the vesting and nonforfeitability requirements of 29 U.S.C. § 1053 because they fail to provide that "an employee who has completed at least 3 years of service has a nonforfeitable right to 100 percent of the employee's accrued benefit derived from employer contributions" under § 1053(a)(2)(B)(ii), and fail to provide that "an employee has a nonforfeitable right to a percentage of the employee's accrued benefit derived from employer contributions determined under the . . . table" in § 1053(a)(2)(B)(iii).  In violation of ERISA, the Plans include the unenforceable Forfeiture Clause.  But under ERISA's vesting and nonforfeitability requirements, and based on their years of service with Wells Fargo, Plaintiff's and the class's deferred compensation is 100% vested and nonforfeitable.

49.    Plaintiff and the other class members were employed by Wells Fargo, and were participants in the Deferral Plan and the Contribution Plan.

50.    While employed by Wells Fargo, Plaintiff and the other class members earned deferred compensation (Performance Awards and Special Awards) under the Plans.  Their deferred compensation was placed into a segregated account (with subaccounts for each award),

and were thus funds Plaintiff and the other class members had been credited with—i.e., they satisfied all conditions to having the funds placed into a designated account.

51.    Plaintiff "retired" (as that term is used under the Plans) from Wells Fargo on February 2, 2014.  Later that month, he became employed by Berry Financial Group.  Wells Fargo then applied the Forfeiture Clause to deny Plaintiff about $200,000 or $300,000 in deferred compensation he earned and was entitled to receive.  Plaintiff earned this forfeited deferred compensation in multiple years, including in 2007, 2008, 2010, 2011, and 2012.

52.    Wells Fargo also applied the Forfeiture Clause to deny the other class members their deferred compensation.  On information and belief, there are hundreds (and possibly thousands) of other qualified financial advisors in the United States who have had their deferred compensation deemed forfeited by Wells Fargo under the Forfeiture Clause.  The damages to Plaintiff and the class are at least $5,000,000.

### 2.    Defendants Breached Their Fiduciary Duty by Failing to Comply with ERISA's Funding Requirements.

53.    The Plans do not comply with ERISA's funding requirements, including provisions under 29 U.S.C. §§ 1082, 1102, and 1103.  Under 29 U.S.C. § 1082, "A plan . . . shall satisfy the minimum funding standing applicable to the plan for any plan year."  Under 29 U.S.C. § 1102(b)(1), "Every employee benefit plan shall . . . provide a procedure for establishing and carrying out a funding policy and method."  And under 29 U.S.C. § 1103(a), "all assets of an employee benefit plan shall be held in trust by one or more trustees."  But Wells Fargo failed to create, fund, and maintain trust funds for the Plans participants' benefit.

C.     **Class Allegations**

54.     *Class Members*: Plaintiff brings this ERISA action on his own behalf, and on behalf of a class of all similarly situated financial advisors employed by Wells Fargo in the United States.  The named Plaintiff represents a class comprised of:

(a)     Wells Fargo's former employees in the United States who earned deferred compensation but were denied that compensation under the Forfeiture Clause in the Deferral Plan and the Contribution Plan; and

(b)     Wells Fargo's current employees in the United States who have account balances in the Deferral Plan and the Contribution Plan and who are at risk of forfeiture under the Forfeiture Clause.

55.     *Ascertainable Class*: The class is ascertainable, identifiable, and unambiguous. Indeed, the class members can be identified through Wells Fargo's payroll and deferred-compensation records.

56.     *Common Questions of Fact or Law*: There is a well-defined community of interest applicable to both fact and law common to all members of the class, which predominate over any individual question.  Wells Fargo has acted uniformly in a manner applicable to the members of the class.  Among the questions of fact and law common to the class are the following:

(a)     Whether ERISA applies to the Plans;

(b)     Whether the Forfeiture Clause is invalid under ERISA;

(c)     What declaratory or injunctive relief should be awarded to the class; and

(d)     The proper measure of damages for Plaintiff and class members.

57.     *Typicality and Adequacy*: Plaintiff's claims are typical, if not identical, to those of the class.  Plaintiff will fairly and adequately represent the interests of the class.

58.    *Numerosity*: The class is so numerous as to make it impracticable to bring all members of the class individually before the Court.

59.    *Predominance & Superiority*:  With respect to the claims for a monetary recovery concerning the Plans' invalid forfeiture provisions, Plaintiff seeks certification under Rule 23(b)(3) because the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  *See* FED. R. CIV. P. 23(b)(3).  Indeed, it is more efficient to resolve the common questions identified above in a single proceeding than to address those same questions over and over in many individual lawsuits.   And resolving the common questions once, in a single class-action proceeding, eliminates the risk of inconsistent judgments.  Plaintiff knows of no difficulty he may encounter in managing this controversy.

60.    *Injunctive Relief*: With respect to the claims for injunctive relief related to Wells Fargo's failure to fund the plans, Plaintiff seeks certification under Rule 23(b)(2), which allows a class action to be maintained if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  FED. R. CIV. P. 23(b)(2). Unless a classwide injunction is issued, Wells Fargo will continue to enforce the unlawful Forfeiture Clause, unlawfully take and possess Plaintiff's and the class members' deferred compensation, and fail to comply with ERISA's reporting, vesting, non-forfeiture, accrual, funding, and other requirements.

61.    *Plaintiff Will Protect Class*: Plaintiff will fully and adequately protect the interests of the class members and has retained counsel experienced and competent in class actions and in

complex commercial litigation. Further, Plaintiff does not have any interests that are antagonistic or contrary to those of the class, all of whom who have suffered, or will suffer, the same harm as a result of Wells Fargo's wrongdoing.

**D.      Plaintiff and the Other Class Members Were Not Required to Exhaust Any Administrative Remedy.**

62.      Plaintiff and the other class members were not required to exhaust any administrative remedy because they have asserted an ERISA claim for breach of fiduciary duty. "Unlike a claim for benefits under a plan, which implicates the expertise of a plan fiduciary, adjudication of a claim for a violation of an ERISA statutory provision involves the interpretation and application of a federal statute, which is within the expertise of the judiciary. . . . [So] the judicially created exhaustion requirement does not apply to a claim for breach of fiduciary duty." *Smith v. Sydnor*, 184 F.3d 356, 365 (4th Cir. 1999). "'Indeed, there is a strong interest in judicial resolution of these [ERISA statutory] claims, for the purpose of providing a consistent source of law to help plan fiduciaries and participants predict the legality of proposed actions.'" *Id.* (quoting *Zipf v. American Tel. & Tel Co.*, 799 F.2d 889, 893 (3d Cir. 1986)).

63.      Further, this is not a typical ERISA benefits case. While the Plans contain an appeal process for a denial of a claim for benefits, Plaintiff is not asserting a 29 U.S.C. 1132(a)(1) claim for benefits under the Plans' terms. The issue in Plaintiff's ERISA claim is not how to interpret the Plans, but rather how to interpret ERISA (i.e., whether the Plans are ERISA "pension benefit plans," which would invalidate the Forfeiture Clause). *See Smith*, 184 F.3d at 362 (a claim for benefits involves interpreting an ERISA plan, while a claim for breach of fiduciary duty involves interpreting ERISA). And because "no deference is due plan fiduciaries," *id.* at 365, and courts "do not give full credence to an ERISA fiduciary's assessment

of his own allegedly wrongful conduct," *id*. at 365 n.10, exhaustion of administrative remedies would have been futile.

## V.    CAUSES OF ACTION

### A.    Count One: Declaratory & Injunctive Relief
### (Declaratory Judgment Act and ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3))

64.    Plaintiff incorporates by reference the allegations in paragraphs 1-63 above.

65.    There is a dispute between the parties regarding their rights, obligations, and duties under the terms of the Plans.  This dispute is ripe for judicial determination.

66.    Section 502(a)(3) of ERISA authorizes a participant or beneficiary to bring a civil action to "(A) enjoin any act or practice which violates any provision of this title with the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."  29 U.S.C. § 1132(a)(3).

67.    Under 29 U.S.C. § 1132(a)(3), 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiff seeks a declaration that:

- The Deferral Plan and the Contribution Plan are "employee benefit plans" under 29 U.S.C. § 1002(3), "pension benefit plans" under 29 U.S.C. § 1002(a)(A), and "individual account pension plans" under 29 U.S.C. § 1002(34);

- The Deferral Plan and the Contribution Plan are not "top hat" plans under 29 U.S.C. §§ 1051(2), 1081(a)(3), or 1101(a)(1);

- The Deferral Plan and the Contribution Plan are subject to ERISA's reporting, vesting, non-forfeiture, accrual, funding, and other requirements under 29 U.S.C. §§ 1021, 1023, 1053, 1054, 1082, 1102, and 1103; and

- The Forfeiture Clause in the Deferral Plan and the Contribution Plan is invalid and unenforceable under ERISA, including under 29 U.S.C. §§ 1053 and 1054.

68.     Plaintiff and the class are entitled to a permanent injunction under 29 U.S.C § 1109(a) and 29 U.S.C § 1132(a)(3) directing all Defendants to:

- Bring the Deferral Plan and the Contribution Plan into compliance with ERISA, including the reporting, vesting, non-forfeiture, accrual, funding, and other requirements under 29 U.S.C. §§ 1021, 1023, 1053, 1054, 1082, 1102, and 1103;

- Remedy all past violations of ERISA's reporting, vesting, non-forfeiture, accrual, funding, and other requirements under 29 U.S.C. §§ 1021, 1023, 1053, 1054, 1082, 1102, and 1103;

- Remedy all past enforcement of the Forfeiture Clause in the Deferral Plan and the Contribution Plan, including by reversing all past forfeitures of Performance Awards and Special Awards;

- Refrain from enforcing the Forfeiture Clause in the Deferral Plan and the Contribution Plan in the future;

- Remedy the additional violations stated below; and

- Make all contributions to the Deferral Plan and the Contribution Plan as necessary to remedy the Plans' funding shortfalls.

69.     Under 29 U.S.C. § 1132(a)(3), Plaintiff and the class are further entitled to an accounting, disgorgement, equitable lien, constructive trust, and any other remedy the Court deems proper.

**B.     Count Two: Violation of Reporting and Disclosure Provisions (ERISA §§ 101-104, 502(a)(1)(A), (a)(3), 29 U.S.C. §§ 1021-1024, 1132(a)(1)(A), (a)(3))**

70.     Plaintiff incorporates by reference the allegations in paragraphs 1-69 above.

71.     Section 502(a)(1)(A) of ERISA permits a plan participant to bring a suit for penalties when a defendant violates the recordkeeping obligations in ERISA.  29 U.S.C. § 1132(a)(1)(A).

72.     Section 502(a)(3) of ERISA permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.  *Id.* at § 1132(a)(3).

### 1.     Annual Reports

73.     Section 103 of ERISA requires employee benefit plans to file an annual report with the Secretary of Labor.  *Id.* at § 1023.  This report, submitted on Form 5500, must include certain specified information about the plan's finances, participants, and administration.

74.     Defendants failed to file an annual report concerning the Plans with the Secretary of Labor in compliance with ERISA § 103, 29 U.S.C. § 1023, or a Form 5500 and associated schedules and attachments which the Secretary has approved as an alternative method of compliance with ERISA § 103, 29 U.S.C. § 1023.

75.     Defendants violated ERISA § 104(a), 29 U.S.C. § 1024(a), by failing to file annual reports for the Plans with the Secretary of Labor in compliance with ERISA § 103, 29 U.S.C. § 1023, or Form 5500s and associated schedules and attachments.

### 2.     Notification of Failure to Meet Minimum Funding Standards (Against Wells Fargo)

76.     Under Section 101(d)(1) of ERISA, employers maintaining employee benefit plans are required to issue a notice to beneficiaries and participants whenever the plan fails to make a required installment or other payment required to meet the minimum funding standards under ERISA.  29 U.S.C. § 1021(d)(1).

77.     Wells Fargo failed to furnish Plaintiff or any member of the Class with a notice about the Plans under ERISA § 101(d)(1), 29 U.S.C. § 1021(d)(1) informing them that Defendants failed to make payments required to comply with ERISA § 302, 29 U.S.C. § 1082.

C.     **Count Three: Failure to Provide Minimum Funding under ERISA**
       **(ERISA §§ 302 & 502(a)(3), 29 U.S.C. §§ 1082 & 1132(a)(3)) (Against Wells Fargo)**

78.     Plaintiff incorporates by reference the allegations in paragraphs 1-77 above.

79.     Section 302 of ERISA establishes minimum funding standards for employee pension benefit plans and requires employers to make minimum contributions to their plans so each plan will have assets available to fund plan benefits if the employer maintaining the plan is unable to pay benefits out of its general assets.  29 U.S.C. § 1082.

80.     Section § 502(a)(3) of ERISA permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.  29 U.S.C. § 1132(a)(3).

81.     As the employer maintaining the Plans, Wells Fargo was responsible for making the contributions required under Section 302 of ERISA at a level commensurate with ERISA's requirements.  29 U.S.C. § 1082.

82.     Wells Fargo failed to make contributions in satisfaction of the minimum funding standards of Section 302 of ERISA.  *Id.*

83.     By failing to make the required contributions to the Plans, Wells Fargo violated Section 302 of ERISA.  *Id.*

84.     As a result of Wells Fargo's failure to fund the Plans in accordance with ERISA's minimum funding standards, Plaintiff and the class members face a substantial risk that their deferred compensation will be lost or severely reduced.

D.     **Count Four: Breach of Fiduciary Duty (Against the Plan Fiduciary Defendants)**
       **(ERISA §§ 404(a)(1), 409(a), 502(a)(2), (a)(3) & (g)(1), 29 U.S.C. §§ 1104(a)(1),**
       **1109(a), 1132(a)(2), (a)(3) & (g)(1))**

85.     Plaintiff incorporates by reference the allegations in paragraphs 1-84 above.

86.     Under 29 U.S.C. §§ 1109(a) and 1132(a), Plaintiff and the class seek damages for the Plan Fiduciary Defendants' breaches of fiduciary duties.

87.     Section 404(a)(1) of ERISA provides that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries.  29 U.S.C. § 1104(a)(1).

88.     A fiduciary may not avoid his fiduciary responsibilities by relying solely on the language of the plan documents.  While the basic structure of a plan may be specified (within limits) by the plan sponsor, the fiduciary may not blindly follow the plan document if to do so would violate fiduciary duties.  ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

89.     The Plan Fiduciary Defendants violated their fiduciary duty of loyalty by enforcing the Forfeiture Clause in the Plans, as described above.

90.     Section 409 of ERISA provides that any person who is a fiduciary of a plan and who breaches any responsibility, obligation, or duty imposed on fiduciaries by ERISA shall be personally liable to make good to the plan any losses to the plan resulting from any breach, and to restore to the plan any profits the fiduciary made through the use of the plan's assets.  29 U.S.C. § 1109.  Section 409 of ERISA also provides that such fiduciaries are subject to such other equitable or remedial relief as a court may deem appropriate.  *Id.*

91.     Section 502(a)(2) of ERISA permits a plan participant, beneficiary, or fiduciary to bring a suit for relief under Section 409 of ERISA.  29 U.S.C. § 1132(a)(2).

92.     Section 502(a)(3) of ERISA permits a plan participant, beneficiary, or fiduciary to (A) enjoin any act or practice that violates any provision of Title I of ERISA or the terms of a plan; or (B) obtain other appropriate equitable relief to (i) redress such violations, or (ii) enforce any provisions of Title I of ERISA or the terms of a plan.  29 U.S.C. § 1132(a)(3).

93.     Plaintiff and the class seek the restoration of all deferred compensation that was illegally deemed forfeited by Defendants.

94.     Plaintiff and the class also seek the recovery of their reasonable attorney's fees and costs under 29 U.S.C. § 1132(g)(1).

## VI.     REQUEST FOR RELIEF

95.     Plaintiff Robert Berry and the class request that the Court enter a judgment against Wells Fargo ordering the following relief:

(a)     Certifying that this action be maintained as a class action under Fed. R. Civ. P. 23(a) and 23(b)(3);

(b)     Appointing Plaintiff Berry as representative of the class;

(c)     Appointing the undersigned counsel as class counsel;

(d)     Directing that reasonable notice of the pendency of this class action be provided to all members of the class at the appropriate time;

(e)     Declaratory relief as permitted by law or equity, including a declaration that: (1) the Deferral Plan and the Contribution Plan are "employee benefit plans" under 29 U.S.C. § 1002(3), "pension benefit plans" under 29 U.S.C. § 1002(a)(A), and "individual account pension plans" under 29 U.S.C. § 1002(34); (2) the Deferral Plan and the Contribution Plan are not "top hat" plans under 29 U.S.C. §§ 1051(2), 1081(a)(3), or 1101(a)(1); (3) the Deferral Plan and the Contribution Plan are subject to ERISA's reporting, vesting, non-forfeiture, accrual, funding, and other requirements under 29 U.S.C. §§ 1021, 1023, 1053, 1054, 1082, 1102, and 1103; and (4) the Forfeiture Clause in the Deferral Plan and the Contribution Plan is invalid and unenforceable under ERISA, including under 29 U.S.C. §§ 1053 and 1054;

(f)     Injunctive relief as permitted by law or equity, including an order directing all Defendants to: (1) bring the Deferral Plan and the Contribution Plan into compliance with ERISA, including the reporting, vesting, non-forfeiture, accrual, funding, and other requirements under 29 U.S.C. §§ 1021, 1023, 1053, 1054, 1082, 1102, and 1103;

(2) remedy all past violations of ERISA's reporting, vesting, non-forfeiture, accrual, funding, and other requirements under 29 U.S.C. §§ 1021, 1023, 1053, 1054, 1082, 1102, and 1103; (3) remedy all past enforcement of the Forfeiture Clause in the Deferral Plan and the Contribution Plan, including by reversing all past forfeitures of Performance Awards and Special Awards; (4) refrain from enforcing the Forfeiture Clause in the Deferral Plan and the Contribution Plan in the future; (5) remedy the additional violations stated below; and (6) make all contributions to the Deferral Plan and the Contribution Plan as necessary to remedy the Plans' funding shortfalls;

(g)     An accounting, disgorgement, equitable lien, constructive trust, and any other remedy the Court deems proper;

(h)     A declaration that Defendants violated ERISA § 104(a), 29 U.S.C. § 1024(a), by failing to file annual reports for the Plans with the Secretary of Labor in compliance with ERISA § 103, 29 U.S.C. § 1023, or Form 5500s and associated schedules and attachments;

(i)     An order that Defendants (1) remedy past violations of ERISA § 104(a), 29 U.S.C. § 1024(a), for failing to file annual reports for the Plans with the Secretary of Labor in compliance with ERISA § 103, 29 U.S.C. § 1023, or Form 5500s and associated schedules and attachments; and (2) comply with ERISA § 104(a), 29 U.S.C. § 1024(a) in the future;

(j)     A declaration that Wells Fargo failed to furnish Plaintiff or any member of the Class with a Notice about the Plans under ERISA § 101(d)(1), 29 U.S.C. § 1021(d)(1), informing them that Defendants failed to make payments required to comply with ERISA § 302, 29 U.S.C. § 1082;

(k)     An order directing that Wells Fargo (1) remedy past failures to furnish Plaintiff and the Class with notices about the Plans under ERISA § 101(d)(1), 29 U.S.C. § 1021(d)(1), informing them that Defendants failed to make payments required to comply with ERISA § 302, 29 U.S.C. § 1082; (2) make all past payments required by ERISA § 302, 29 U.S.C. § 1082; and (3) make all future payments required by ERISA § 302, 29 U.S.C. § 1082;

- 30 -

(l)        A declaration that Wells Fargo failed to make contributions in satisfaction of the minimum funding standards of ERISA § 302, 29 U.S.C. § 1082;

(m)       An order directing that Wells Fargo (1) remedy all past failures to make contributions in satisfaction of the minimum funding standards of ERISA § 302, 29 U.S.C. § 1082; and (2) make all future contributions in satisfaction of the minimum funding standards of ERISA § 302, 29 U.S.C. § 1082;

(n)        A declaration that the Fiduciary Defendants violated their fiduciary duty of loyalty by enforcing the Forfeiture Clause in the Plans;

(o)        An order directing that the Fiduciary Defendants (1) remedy all past enforcement of the Forfeiture Clause in the Plans; and (2) not enforce the Forfeiture Clause in the Plans in the future;

(p)        Actual compensatory damages on behalf of Plaintiff and the class;

(q)        Reasonable attorneys' fees, costs, and expenses as provided by law and equity;

(r)        Pre-judgment and post-judgment interest at the highest lawful rates; and

(s)        Such other and further relief as allowed by law and equity that this Court deems just and proper.

## VII.    <u>DEMAND FOR JURY TRIAL</u>

96.    Plaintiff and the class demand a trial by jury on all issues so triable.

DATED:  May 1, 2017                Respectfully submitted,


By: _/s/ William P. Tinkler_____
    William P. Tinkler
    D.S.C. Bar No. 11794
    MOTLEY RICE LLC
    28 Bridgeside Boulevard
    Mount Pleasant, SC  29464
    Telephone:  (843) 216-9000
    Facsimile:   (843) 216-9450
    wtinkler@motleyrice.com

    Thomas R. Ajamie
    Texas Bar No. 00952400
    *Admitted Pro Hac Vice*
    David S. Siegel
    Texas Bar No. 18341930
    *Admitted Pro Hac Vice*
    John S. Edwards, Jr.
    Texas Bar No. 24040851
    *Admitted Pro Hac Vice*
    AJAMIE LLP
    Pennzoil Place - South Tower
    711 Louisiana, Suite 2150
    Houston, TX  77002
    Telephone:  (713) 860-1600
    Facsimile:   (713) 860-1699
    tajamie@ajamie.com
    dsiegel@ajamie.com
    jedwards@ajamie.com

**ATTORNEYS FOR PLAINTIFF**

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on May 1, 2017, the foregoing *Plaintiffs' First Amended Class-Action Complaint* was served by ECF on all counsel of record, including:

Adam N. Yount
Pierce MacLennan
**HAYNESWORTH SINKLER BOYD, P.A.**
134 Meeting Street, Third Floor (29401)
P.O. Box 340
Charleston, SC  29402-0340
Telephone: (843) 722-3366
Facsimile: (843) 722-2266
ayount@hsblawfirm.com
pmaclennan@hsblawfirm.com

Amanda A. Sonneborn (*pro hac vice* to be filed)
Christopher M. Busey (*pro hac vice* to be filed)
**SEYFARTH SHAW LLP**
233 S. Wacker Drive, Suite 8000
Chicago, IL 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000
asonneborn@seyfarth.com
cbusey@seyfarth.com

*/s/ William P. Tinkler*
William P. Tinkler