IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| ROBERT BERRY, INDIVIDUALLY AND ON BEHALF OF ALL OTHER SIMILARILY [SIC] SITUATED,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO & COMPANY, WELLS FARGO CLEARING SERVICES, LLC, and WELLS FARGO ADVISORS FINANCIAL NETWORK, LLC, and DOES 1 thru 50,<br><br>Defendants. | Case No. 3:17-cv-304-JFA<br><br>**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT IN PART** |

## I. INTRODUCTION

Plaintiff Robert Berry purports to bring a class action against Defendants Wells Fargo & Company, Wells Fargo Clearing Services, LLC, and Wells Fargo Advisors Financial Network, LLC (collectively, "Wells Fargo"), alleging various violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"). At its heart, the Plaintiff's First Amended Class Action Complaint seeks to recover awards that Plaintiff forfeited under a compensation incentive plan provided by Wells Fargo. That plan was designed to incentivize continued employment with Wells Fargo for high performing employees. It did so by requiring participants to continue working at Wells Fargo for a certain period of time before those awards became fully vested. Awards could still fully vest if a participant retired from Wells Fargo, but the plan prohibits participants from fully vesting in their benefits where they "retire," but continue working for a competitor. Plaintiff flouted this express limitation in the plan by starting his own competing financial business *in the same month* that he "retired" from

Wells Fargo. He now seeks to recoup the awards he forfeited under the clear terms of the plan.

Recognizing that, by its express terms, the plan at issue does not provide for the benefits Plaintiff seeks, Plaintiff does not bring a claim for benefits under ERISA Section 502(a)(1)(B), 29 U.S.C § 1132(a)(1)(B). Rather, Plaintiff essentially challenges the lawfulness of two Wells Fargo plans. He claims that those plans violate various ERISA provisions because allegedly they are not "top hat" plans, which are exempted from many of ERISA's statutory requirements, including vesting, reporting, disclosure, and funding requirements. In particular, Plaintiff alleges that the Wells Fargo Advisors, LLC Performance Award Contribution Plan (the "Contribution Plan") and the Wells Fargo Advisors, LLC Performance Award Contribution and Deferral Plan (the "Deferral Plan") are not top hot plans and thus violate those ERISA requirements from which such plans are exempted.[1] He brings four counts related to these purported violations and seeks various forms of relief.

Plaintiff's First Amended Class Action Complaint, however, fails on multiple levels. First, Plaintiff has not alleged that he participated in the Contribution Plan or that he forfeited any awards under that plan. Indeed, he did not. He thus lacks standing to pursue any claims related to that plan.

Second, Plaintiff lacks standing to pursue any claims for which he has not alleged any actual harm suffered. This includes Count Two (for violations of ERISA's reporting and disclosure provisions) and Count Three (for failure to provided minimum funding under ERISA). Even if Wells Fargo violated those ERISA provisions, Plaintiff has not suffered any harm as a result. Therefore, his claims must be dismissed.

Finally, Counts Two and Three also fail to satisfy the Supreme Court's well-settled

---

[1] Wells Fargo will demonstrate that The Deferral Plan is, in fact, a top hat plan, but recognizes that a motion to dismiss may not be the appropriate avenue for making that showing. As discussed below, the Contribution Plan is governed by North Carolina state law.

pleading standards. Because Plaintiff cannot plausibly allege that any purported misconduct caused him actual harm, these claims fail as a matter of law for this additional reason.

## II. RELEVANT FACTS ALLEGED IN THE COMPLAINT

Plaintiff first began working for a predecessor of Wells Fargo in 1994. (Plaintiff's First Amended Class Action Complaint ("Compl.") ¶ 4). Ultimately, his employer was acquired by Wells Fargo in 2008 and changed its name to Wells Fargo Advisors, LLC. (*Id.*). In February 2014, Plaintiff "retired" from Wells Fargo and started his own business. (*Id.*). Since then, he has been employed at Berry Financial Group in Lexington, South Carolina. (*Id.*).

Through his employment with Wells Fargo, Plaintiff was at certain times a participant in the Deferral Plan. (*Id.* ¶ 17). The Deferral Plan provides "a select group of management and other highly compensated individuals in the employ of one or more participating employees with an opportunity to earn additional incentive compensation contingent upon their completion of designated service periods." (*Id.* ¶ 18; Compl. Ex. A-2 at § 1.02).[2] The Deferral Plan further states that it "shall function solely as a so-called 'top hat' plan of deferred compensation subject to the applicable provisions of [ERISA] (as amended from time to time) applicable to such a plan." (Compl. Ex. A-2 at § 1.02).

Pursuant to the Deferral Plan's stated purpose of providing additional compensation for completion of designated service periods, it also provides that awards shall be forfeited if those service periods are not met. In relevant part, it states:

> Upon a Participant's cessation of Employee status for any reason (including a transfer to FiNet) other than (i) a Retirement (pursuant to

---

[2] While the Court is generally limited in its review on a motion to dismiss to the facts alleged in the complaint, it may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Plaintiff attaches two versions of the Deferral Plan and one version of the Contribution Plan to his First Amended Class Action Complaint and repeatedly reference those documents throughout. (*See generally* Compl. ¶¶ 18-95; Compl. Ex. A-1; Compl. Ex. A-2; Compl. Ex. B-1).

3

> Section 3.24, as set for in Section 5.02, or (ii) Involuntary Termination, all balances in his or her Performance Award Subaccounts and/or Special Award Subaccounts (as adjusted for investment earnings, gains and losses) which are not at that time vested in accordance with the vesting provisions of Section 5.02 and 5.03 shall be immediately forfeited, and the Participant shall cease to have any further right or interest in those forfeited balances.

(*Id.* ¶ 44; Compl. Ex. A-2 at § 5.05). The Deferral Plan defines "Retirement" and sets forth limitations on that definition in keeping with its avowed goal "to serve as a meaningful incentive for [individuals] *to continue in the employ of their participating employers*." (Compl. Ex. A-2 at § 1.02 (emphasis added); *id.* § 3.24). As pertinent here, one qualification for "Retirement" is that:

> The Participant has not become associated, at any time in the period between the Termination Date and the date which is the earlier of (x) three years from the Termination Date or (y) the Vesting Date established pursuant to Section 5.02 (for the Special Award Subaccounts) and Section 5.03 (for Performance Award Subaccounts), with any entity . . . that is actively engaged in the financial services business, including but not limited to, any bank, broker-dealer, investment advisor, investment company, financial planner, investment bank, mutual fund or insurance company.

(Compl. Ex. A-2 at § 3.24(B)). In direct contravention of that provision, Plaintiff "retired" from Wells Fargo in February 2014 and immediately started his own business: Berry Financial Group. (Compl. ¶ 4). He thus forfeited approximately $200,000 in unvested awards under the express terms of the Deferral Plan. (Compl. ¶ 17).

Plaintiff does not allege, nor can he, that he was ever a participant in the Contribution Plan. (*Id.*).[3] The Contribution Plan states "it shall function solely as an incentive bonus arrangement tied to personal performance and continued service, and ***not*** as a deferred

---

[3] Plaintiff's original Complaint alleged that he was a participant in the Contribution Plan and that he forfeited benefits under that plan. (Plaintiff's Complaint, Dkt. No. 1 ¶ 16). Although not before the Court, after the Complaint was filed, Wells Fargo provided a declaration to Plaintiff attesting to the fact that Plaintiff forfeited benefits only under the Deferral Plan and that he did not forfeit any awards under the Contribution Plan. That declaration apparently precipitated the First Amended Class Action Complaint.

4

compensation program subject to the requirement of [ERISA]." (Compl. Ex. B-1 at § 1.01 (emphasis original)). It also provides that "[t]he [Contribution] Plan and all rights hereunder shall be construed, administered and governed in all respects in accordance with the laws of the State of North Carolina without resort to its conflict-of-laws provisions." (*Id.* at § 8.04).

### III. ARGUMENT

#### A. Standard of Review

In considering a motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure, the Court assumes the truth of all well-pleaded relevant facts as alleged in the complaint and all reasonable inferences drawn therefrom. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). But because the Court is testing the legal sufficiency of the claims, it is not bound by the plaintiff's legal conclusions. *See, e.g., Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001). Indeed, the Supreme Court in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), expressly precluded reliance on legal conclusions, or mere conclusions of any type. *See also Young*, 238 F.3d at 577 ("The presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged do not support the legal conclusions."). To survive a motion to dismiss, the complaint must allege facts sufficient to "state a claim to relief that is plausible on its face," *i.e.*, facts that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013) (same). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that

5

requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

**B.     Plaintiff Lacks Standing to Bring All Claims Related to the Contribution Plan and Counts Two and Three Related to the Deferral Plan**

To have Article III standing, a plaintiff must demonstrate, at the outset of litigation, that: (1) he has "suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). While these three elements are "the irreducible constitutional minimum," injury in fact, or a concrete and particularized harm, is the "indispensable element of a dispute" that "adds the essential dimension of specificity to the dispute by requiring that the complaining party have suffered a particular injury caused by the action." *Schlesinger v. Reservists Comm.*, 418 U.S. 208, 220-21 (1974). At the pleading stage, "the plaintiff must clearly [] allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *see also David v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013) ("As the party invoking federal jurisdiction, Appellants bear the burden of establishing standing." (citation omitted)).

Critically, "injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *Summers v. Earth Island Institute*, 555 U.S. 488, 497 (2009). Even after Congress has authorized a suit, "Article III's requirement remains[, and] the plaintiff must allege a *distinct and palpable injury* to himself." *Warth v. Seldin*, 422 U.S. 490, 501 (1975) (emphasis added). To establish an injury in fact, a plaintiff must show that he suffered "an invasion of a legally protected interested that is concrete and particularized and actual or imminent, not conjectural or

6

hypothetical." *Spokeo*, 136 S. Ct. at 1548 (quotation marks and citation omitted).  An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way." *Id.* (citation omitted).  "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* (citation omitted).  To that end, the "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right in *vacuo*—is insufficient to create Article III standing." *Summers*, 555 U.S. at 496 (Kennedy, J. concurring).  While Congress has the power to "identify[] and elevat[e] intangible harms," this "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. *Spokeo*, 136 S. Ct. at 1549.  Article III standing still "requires a concrete injury even in the context of a statutory violation" and "a bare procedural violation, divorced from any concrete harm" will not do.  *Id.*

### 1. Plaintiff Does Not Have Standing to Pursue Claims Regarding the Contribution Plan

Plaintiff lacks both Article III standing and statutory standing under ERISA to pursue claims related to the Contribution Plan.

#### a. Plaintiff Lacks Article III Standing

Plaintiff has not alleged any injury in fact with respect to any claims stemming from the Contribution Plan.  Plaintiff alleges that he was a participant in the Deferral Plan and forfeited benefits under it, but conspicuously omits a corresponding allegation that he was awarded or forfeited any benefits under the Contribution Plan.  (Compl. ¶ 17).  Indeed, Plaintiff cannot make that allegation in good faith, having been informed by Wells Fargo that he was never awarded benefits under the Contribution Plan.  Plaintiff thus fails to allege a concrete or particularized invasion of a legally protected interest with respect to that plan, as he had no interest in it whatsoever.  In particular, he cannot allege any injury that affected him "in a personal and

7

individual way." *Spokeo*, 136 S. Ct. at 1548.  Therefore, each count of Plaintiff's First Amended Class Action Complaint should be dismissed with prejudice with respect to the Contribution Plan.

### b.    Plaintiff Lacks Statutory Standing

Plaintiff also fails to satisfy ERISA's statutory standing requirements.  Federal courts "have subject matter jurisdiction over ERISA claims only where the [plaintiffs] have both statutory *and* constitutional standing."  *David v. Alphin*, 704 F.3d 327, 338 (4th Cir. 2013) (emphasis original).  ERISA provides for a federal cause of action for civil claims aimed at enforcing the provisions of an ERISA plan.  *See* 29 U.S.C. § 1132(e)(1).  Section 502 of ERISA provides the exclusive civil enforcement mechanism for claims relating to a benefit plan.  *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 50-52 (1987).  Section 502(a) "specifies which persons-participants, beneficiaries, fiduciaries, or the Secretary of Labor-may bring actions for particular kinds of relief."  *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 25 (1983).  Accordingly, in order to have standing to bring such a claim, "a plaintiff must fall within one of ERISA's nine specific civil enforcement provisions, each of which details who may bring suit and what remedies are available."  *Reynolds Metals Co. v. Ellis*, 202 F.3d 1246, 1247 (9th Cir. 2000).  "The express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties . . . as to whom Congress presumably determined that a right to enter federal court was necessary to further the statute's purposes."  *Franchise Tax Bd.*, 463 U.S. at 21.

Section 502(a)(1) of ERISA limits actions to those brought by participants and beneficiaries.  29 U.S.C. § 1132(a)(1).  Only participants, beneficiaries, and fiduciaries can sue under ERISA Section 502(a)(3).  29 U.S.C. § 1132(a)(3).  In addition to those three groups, the

Secretary of Labor may also bring suit under Section 502(a)(2). 29 U.S.C. § 1132(a)(2). ERISA defines a "participant," in relevant part, as "any employee or former employee of an employer . . . , who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). A "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

Even accepting Plaintiff's incorrect assertion that the Contribution Plan is governed by ERISA, he has not alleged facts sufficient to plausibly suggest that he meets either of these definitions with respect to that plan.[4] Plaintiff was not awarded benefits under the Contribution Plan. (*See* Compl. ¶ 17). Moreover, since he is no longer employed by Wells Fargo, he has no chance of becoming eligible for those performance awards in the future. (Compl. ¶ 4). Plaintiff thus fails to satisfy both Article III and statutory standing requirements as to claims pertaining to the Contribution Plan. *See, e.g.*, *Provident Life & Acc. Ins. Co. v. Waller*, 906 F.2d 985, 987-88 (4th Cir. 1990) (stating that federal jurisdiction is limited "to the suits by the entities specified in" ERISA); *Richmond v. Am. Sys. Corp.*, 792 F. Supp. 449, 454 (E.D. Va. 1992) (dismissing ERISA claim because plaintiffs "do not fit into any of these categories" and thus "have no standing to sue under ERISA."). The Court should thus dismiss each count as to the Contribution Plan with prejudice.

### 2.     **Plaintiff Does Not Have Standing to Pursue Counts Two and Three**

Counts Two and Three should each be dismissed as to the Deferral Plan as well.[5] Count Two seeks relief under ERISA Sections 502(a)(1)(A) and 502(a)(3) for purported violations of

---

[4] Plaintiff also does not allege that he qualifies as a fiduciary of either plan at issue.
[5] Wells Fargo focuses on the Deferral Plan for purposes of simplicity. However, the arguments set forth in this section apply equally to the Contribution Plan as Plaintiff has set forth no injury in fact from alleged ERISA violations pertaining to that plan.

ERISA's reporting and disclosure requirements. (Compl. ¶¶ 70-77). Count Three seeks relief again under ERISA Section 502(a)(3) for alleged violations of ERISA's minimum funding requirements. (Compl. ¶¶ 78-84). Each of these claims fail as a matter of law with respect to both the Deferral Plan and the Contribution Plan because Plaintiff has not alleged an injury in fact.

### a.     Plaintiff Lacks Article III Standing to Pursue Count Two

Count Two contains two subparts, each alleging a separate violation of ERISA. First, Plaintiff claims that Wells Fargo "failed to file an annual report concerning the Plans with the Secretary of Labor" or "a Form 5500 and associated schedules and attachments" in violation of ERISA Sections 103 and 104, 29 U.S.C §§ 1023 and 1024. (Compl. ¶¶ 73-74). Second, he alleges that Wells Fargo "failed to furnish Plaintiff or any member of the Class with a notice about the Plans . . . informing them that the Defendants failed to make payments required to comply with ERISA § 302, 29 U.S.C § 1082." (Compl. ¶ 77). Plaintiff thus seeks relief under ERISA Section 502(a)(1)(A), which permits certain individuals to obtain civil penalties for violations of certain of ERISA's disclosure requirements. 29 U.S.C. § 1132(a)(1)(A).

Plaintiff again lacks Article III standing as to these allegations, having failed to meet the injury in fact requirement. Even if the Plans were subject to and violated these requirements, Plaintiff has not claimed that he suffered any harm as result of them. Plaintiff has alleged the "bare procedural violation, divorced from any concrete harm" warned against in *Spokeo*. 136 at 1549. He fails to show any concrete or "real" injury that is particularized, *i.e.,* affected him "in a personal and individual way." *Id.* at 1548. Count Two should thus be dismissed. This result is compelled by the Supreme Court's restatement of Article III principles in *Spokeo*, which comports with ERISA cases predating that decision. *See, e.g.*, *Pierce v. Sec. Trust Life Ins. Co.*,

979 F.2d 23, 30 (4th Cir. 1992) ("[A] plan participant must show reliance and prejudice in order to recover for an employer's failure to comply with ERISA's statutory requirements in any event.") (citation and internal quotation marks omitted); *Colin v. Marconi Commerce Sys. Employees' Retirement Plan*, 335 F. Supp. 2d 590, 606 (M.D.N.C. 2004) (granting motion to dismiss where "Plaintiffs have not alleged that Defendants' failure to comply with ERISA's notice requirements actually harmed them").

Plaintiff also fails to satisfy the second requisite element of Article III standing. He cannot show causation, *i.e.*, that any injury "is fairly traceable to the challenged action of the defendant." *Friends of the Earth,* 528 U.S. at 180-81; *David*, 704 F.3d at 333. To that end, Plaintiff concedes that he is not bringing a claim for benefits under ERISA Section 502(a)(1)(B), which provides the remedy for obtaining benefits due under the terms of a plan. (Compl. ¶ 63; 29 U.S.C. § 1132(a)(1)(B)). He states that "the issue in Plaintiff's ERISA claim is not how to interpret the Plans, but rather how to interpret ERISA." (Compl. ¶ 63). Plaintiff thus admits that Wells Fargo properly interpreted the Deferral Plan's terms as written in determining that he was not entitled to benefits, but challenges the legality of those terms. (*Id.*). Accordingly, any claim of procedural violation or breach of fiduciary duty could not have caused the purported harm suffered--the forfeiture of benefits. By conceding that he was not entitled to benefits under the Deferral Plan as written, Plaintiff necessarily admits that Wells Fargo's misconduct alleged in Count Two did not result in those forfeitures. In other words, even if Wells Fargo had filed the appropriate annual reports with the Secretary of Labor or provided notices of failure to meet ERISA's minimum funding standards, Plaintiff would still not have been entitled to the benefits he seeks.

### b.     Plaintiff Lacks Statutory Standing to Pursue Count Two's Claims Regarding Annual Reports

Plaintiff also lacks statutory standing on his Section 502(a)(1)(A) claim to the extent it seeks penalties for Wells Fargo's lack of filing annual reports or Form 5500's.  Section 502(a)(1) allows participants and beneficiaries to bring a civil action "for the relief provided for in subsection (c) of this section."  29 U.S.C. § 1132(a)(1)(A).  In turn, Section 502(c) sets forth various penalties available for particular violations.  For instance, an administrator who fails to comply with a request from a participant or beneficiary for specific types of information "may in the court's discretion be personally liable to such *participant or beneficiary* in the amount of up to $100 a day from the date of such failure."  29 U.S.C. § 1132(c)(1) (emphasis added).  By contrast, for the alleged failures of which Plaintiff complains --to file annual reports or Form 5500's--the statute does not provide for a private cause of action.  Instead, that provision states that "the *Secretary [of Labor]* may assess a civil penalty against any plan administrator" for "failure or refusal to file the annual report required to be filed with the Secretary."  29 U.S.C. § 1132(c)(2) (emphasis added).  No other provision of Section 502(c) permits a participant to bring suit for civil penalties for failure to file annual reports or Form 5500's.  *See* 29 U.S.C. § 1132(c).  Plaintiff thus lacks statutory standing to pursue these allegations as well.

### c.     Plaintiff Lacks Article III Standing to Pursue Count Three

The argument set forth above applies with equal force to Count Three.  Plaintiff seeks relief under Section 502(a)(3) and alleges that "Wells Fargo failed to make contributions [to the Plans] in satisfaction of the minimum funding standards of Section 302 of ERISA."  (Compl. ¶ 82).  Plaintiff claims that, due to this lack of funding, "Plaintiff and the class members face a substantial risk that their deferred compensation will be lost or severely reduced."  (*Id*. ¶ 84).

As an initial matter, Plaintiff again fails to plausibly allege that he suffered any injury in fact. Rather, he speculates that the failure to fund the Deferral Plan causes a "substantial risk" of future harm. (*Id.*). While "threatened rather than actual injury can satisfy Article III standing requirements,… not all threatened injuries constitute an injury-in-fact." *Beck v. McDonald*, 848 F.3d 262, 271 (4th Cir. 2017) (internal citation omitted). The Supreme Court thus requires that threatened harm be "imminent." *Id.* And "although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that alleged injury is not too speculative for Article III purposes--that the injury is *certainly* impending." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (citation omitted, emphasis original); *see also Beck*, 848 F.3d at 271. Accordingly, allegations of "*possible* future injury are not sufficient." *Id.* (internal quotations marks and citation omitted, emphasis original).

Here, Plaintiff fails to meet his burden to establish this element because his risk of harm is far too speculative. Count Three fails for this reason alone. *See, e.g.*, *David*, 704 F.3d at 337-38 (affirming dismissal for lack of standing where plaintiffs alleged that risk of loss of pension benefits was sufficient and stating that "[w]e find these risk-based theories of standing unpersuasive, not least because they rest on a highly speculative foundation lacking any discernible limiting principle."); *Beck*, 848 F.3d at 274 (finding "enhanced risk of future identity theft too speculative" to state injury in fact).

Moreover, Plaintiff again fails to meet his burden to meet the causation element of the Article III standing inquiry. Here, that would entail a showing that Wells Fargo's failure to fund the Deferral Plan resulted in the harm Plaintiff seeks to remedy--the forfeiture of his benefits. Having admitted that he was not entitled to benefits under the Deferral Plan, even Wells Fargo's

full compliance with ERISA's funding requirements would not have remedied Plaintiff's harm. The only harm alleged is not traceable to the alleged misconduct by Wells Fargo.

### C.      Plaintiff Fails to Plausibly Allege Actual Harm Due to Violations Alleged in Counts Two and Three

As with Plaintiff's failure to allege an injury in fact and causation for the purposes of standing, he similarly fails to allege facts showing those elements that "raise [his] right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

As noted, Count Two seeks relief under ERISA Section 502(a)(1)(A). Plaintiff, however, has not plead, much less plausibly shown, that he suffered any actual harm as a result of Wells Fargo's alleged failure to comply with ERISA's filing and disclosure requirements. That claim fails as a matter of law for this additional reason.

Count Two also references Section 502(a)(3) and Count Three purports to state a claim under that provision, which allows certain individuals to bring suit to obtain "other appropriate equitable relief" for violations of ERISA or a plan's terms. 29 U.S.C. § 1132(a)(3). The Supreme Court has clarified the meaning of this phrase, stating that Section 502(a)(3) acts as a "catchall" provision, "offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe,* 516 U.S. 489, 512 (1996). Narrowing the definition further, the Supreme Court has limited Section 502(a)(3) to providing "those categories of relief that, traditionally speaking … were *typically* available in equity." *CIGNA Corp. v. Amara*, 563 U.S. 421, 439 (2011) (citations and internal quotation marks omitted; emphasis original). In *Amara*, the Supreme Court listed certain remedies that would satisfy this criterion. *See id.* at 439-442 (discussing injunctions, reformation, estoppel, and surcharge as traditionally equitable remedies).

14

At minimum, a plaintiff seeking an equitable remedy must show harm and causation from a breach of fiduciary duty.  *Amara*, 563 U.S. at 444.  Plaintiff fails to do so.

In sum, Plaintiff fails on two fronts.  He has not alleged: (1) any harm from the purported procedural violations and breach of fiduciary duty; or (2) that any harm was *caused* by those violations.  Because Plaintiff concedes that the Deferral Plan's terms do not provide for the benefits he forfeited, any procedural violations or breaches of fiduciary duty could not have caused the purported harm suffered.  Plaintiff has not plead--and cannot prove--the element of causation necessary to establish a breach of fiduciary duty.  *Amara*, 563 U.S. at 444.  Counts Two and Three should therefore be dismissed with prejudice.

## IV.  CONCLUSION

For the foregoing reasons, Wells Fargo respectfully requests that all counts of Plaintiff's First Amended Class Action Complaint be dismissed with prejudice to the extent they allege violations related to the Contribution Plan.  Finally, Wells Fargo further requests that Counts Two and Three be dismissed with prejudice as to the Deferral Plan as well.

Respectfully submitted,

WELLS FARGO & COMPANY, WELLS FARGO CLEARING SERVICES, LLC, and WELLS FARGO ADVISORS FINANCIAL NETWORK, LLC


By: s/Adam N. Yount
    Adam N. Yount
    Pierce T. MacLennan
    **HAYNSWORTH SINKLER BOYD, P.A.**
    134 Meeting Street, Third Floor
    Charleston, South Carolina 29401
    Telephone: (843) 722-3366
    Facsimile: (843) 722-2266
    ayount@hsblawfirm.com
    pmaclennan@hsblawfirm.com

    Frederick T. Smith (*pro hac vice* admission granted)
    **SEYFARTH SHAW LLP**
    6000 Fairview Road, Suite 1200
    Charlotte, North Carolina 28210
    Telephone: (404) 888-1021
    Facsimile: (404) 892-7056
    fsmith@seyfarth.com

    Amanda A. Sonneborn (*pro hac vice* to be filed)
    Christopher M. Busey (*pro hac vice* to be filed)
    **SEYFARTH SHAW LLP**
    233 S. Wacker Drive, Suite 8000
    Chicago, Illinois 60606
    Telephone: (312) 460-5000
    Facsimile: (312) 460-7000
    asonneborn@seyfarth.com
    cbusey@seyfarth.com

Date:  May 22, 2017