IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Robert Berry, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>Wells Fargo & Company, Wells Fargo Clearing Services, LLC, and Wells Fargo Advisors Financial Network, LLC, and Does 1 thru 50,<br><br>    Defendants. | C/A No. 3:17-304-JFA<br><br><br><br>**ORDER GRANTING DEFENDANTS'<br>MOTION FOR PARTIAL DISMISSAL<br>IN PART** |

**I. INTRODUCTION**

  This case was originally filed by Plaintiff Robert Berry ("Berry") against Wells Fargo & Company and its affiliates (collectively "Wells Fargo") due to Wells Fargo invoking a forfeiture clause and retaining funds to be paid to Berry because he retired as a financial advisor and opened his own business in violation of the parties' agreement under a compensation plan. Since its filing, Berry has filed an amended complaint purporting to make this case a class action. ECF No. 22.

  Defendants have moved for a partial dismissal of Berry's claims, arguing (1) Berry lacks standing to sue under one of the plans—the Contribution Plan—because he was not a participant, and (2) Berry lacks standing because he has failed to allege an injury in fact or show causation as to Count Two ("Violation of Reporting and Disclosure Provisions") and Count Three ("Failure to Provide Minimum Funding under ERISA") for both plans. ECF No. 26.

  Based upon the following, this Court grants Wells Fargo's motion, in part, and dismisses all claims brought regarding the Contribution Plan as well as Berry's claims under Count Two.

1

## II.   FACTUAL BACKGROUND

Viewing the allegations in the light most favorable to Berry, the facts are as follows:

In 1994, Berry began working for the predecessor of Wells Fargo and remained with the company through its various entity changes until he retired in February 2014. ECF No. 22 at 2. While employed with Wells Fargo, Berry participated in a plan—labeled the "Deferral Plan"—which provided "an opportunity to earn additional incentive compensation contingent upon [participants'] attainment of pre-established performance objectives and their completion of designated service periods." *Id.* at 6.[1]

There were two awards provided through this plan: (1) a Performance Award, and (2) a Special Award. Each award required the participant to continue employment for a designated term before the right in the benefit was vested, which took approximately 5 to 7 years.[2] *Id.* at 8. Thus, the benefits served as deferred income for participants. *Id.* The benefits could continue to vest after a participant retired as long as the participant qualified for "Retirement" under the Deferral Plan. *Id.* at 8–9. Although there are various requirements to qualify for Retirement, only the following item is at issue here:

> The Participant has not become associated, at any time in the period between the Termination Date and the date which is the earlier of (x) three years from the

---

[1] In his amended complaint, Berry includes another compensation incentive plan—the "Contribution Plan"—in his allegations. ECF No. 22. Although Berry alleges that the Contribution Plan offers the same benefits as the Deferral Plan, Berry does not allege that he was a participant in the Contribution Plan. *See id.*; *see also* ECF No. 30. According to each plan's text, the main differences between them appear to be that the Contribution Plan is provided to a "select group of individuals" and is governed by North Carolina law whereas the Deferral Plan is provided to "a select group of management and other highly compensated individuals" and is governed by either North Carolina law or ERISA law as a "top hat" plan. ECF No. 22 at 5.

Throughout his amended complaint, Berry attempts to equate the two plans and claims he has standing to represent a class under the Contribution Plan because Wells Fargo operates and commits the same conduct for both plans.

[2] The Performance Award requires two criteria: performance and continued employment for the designated term; however, the performance requirement is not at issue in this case. *Id.* at 7.

2

> Termination Date or (y) the Vesting Date established pursuant to Section 5.02 (for the Special Award Subaccounts) and Section 5.03 (for Performance Award Subaccounts), with any entity . . . that is actively engaged in the financial services business . . . .

ECF No. 22-2 at 6–7 (§ 3.24).[3] Within one month of his retirement, Berry founded his own financial business—Berry Financial Group in Lexington, South Carolina. ECF No. 22 at 3. Due to his new employment with a financial business, Wells Fargo enforced the forfeiture clause contained in the plan agreement, which states:

> **Forfeitures.** Upon a Participant's cessation of Employee status for any reason (including a transfer to FiNet) other than (i) a Retirement (pursuant to Section 3.24), as set forth in Section 5.02, or (ii) Involuntary Termination, all balances in his or her Performance Award Subaccounts and/or Special Award Subaccounts (as adjusted for investment earnings, gains and losses) which are not at that time vested in accordance with the vesting provisions of Sections 5.02 and 5.03 shall be immediately forfeited, and the Participant shall cease to have any further right or interest in those forfeited balances . . . .

ECF No. 22-2 at 14 (§ 5.05). Thus, Berry allegedly forfeited between $200,000 and $300,000 when he started his business. ECF No. 22 at 6.

Berry's amended class action complaint alleges four causes of action: (1) declaratory and injunctive relief to determine the parties' rights, obligations, and duties under the terms of the plans, (2) violation of reporting and disclosure provisions required under ERISA, (3) failure to provide minimum funding under ERISA (against Wells Fargo), and (4) breach of fiduciary duty (against plan fiduciary defendants). ECF No. 22.

---

[3] Both plans were attached to and referenced in Berry's amended complaint, and, thus, this Court may consider them in its review of Wells Fargo's motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Comparison of the provided Deferral Plans, dated 2012 and 2014, reflects that the substance of the paragraphs quoted are identical whereas other portions of the sections may have been updated to reflect higher percentages, etcetera, in 2014. As to the Contribution Plan provided, the sections regarding retirement and forfeiture appear to be the same as the Deferral Plan dated 2012.

### III.   PROCEDURAL HISTORY

On February 1, 2017, Berry filed this action against Wells Fargo. ECF No. 1. On March 21, 2017, Wells Fargo timely moved for an extension of time to file an answer or response, which this Court granted for good cause shown. ECF Nos. 16–17. On April 7, 2017, Wells Fargo filed a second motion for an extension of time until April 25, 2017, which this Court granted. ECF Nos. 17–18. On April 25, 2017, the parties filed a joint motion for entry of a briefing schedule, which this Court approved on April 26, 2017. ECF Nos. 20–21. On May 1, 2017, Berry filed an amended class action complaint against Wells Fargo. ECF No. 22. On May 22, 2017, Wells Fargo filed an answer and a motion to partially dismiss the amended complaint. ECF Nos. 25–26. On June 12, 2017, Berry filed a response in opposition. ECF No. 30. On June 19, 2017, Wells Fargo filed a reply. ECF No. 34. On July 14, 2017, this Court held a hearing on the motion. ECF No. 43. On July 20, 2017, Wells Fargo submitted supplemental authority to supports its motion. ECF No. 44. On July 26, 2017, Berry filed a reply to Wells Fargo's supplement. ECF No. 45.

### IV.   LEGAL STANDARD

#### A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and, as such, may only hear and decide cases when given the authority to do so by the United States Constitution and by federal statute. *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998).

In a motion to dismiss pursuant to Rule 12(b)(1), the burden rests with the plaintiff to prove that federal subject-matter jurisdiction is proper. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Beck v. McDonald*, 848 F.3d 262, 269–70 (4th Cir. 2017), *cert. denied sub nom. Beck v. Shulkin*, No. 16-1328, 2017 WL 1740442 (U.S. June 26, 2017). "[T]he absence of jurisdiction may be raised at any time during the case, and may be based on the court's review of

the evidence." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999); *see Gibbs v. Buck*, 307 U.S. 66, 72 (1939).

"Determining the question of subject matter jurisdiction at the outset of the litigation is often the most efficient procedure." *Lovern*, 190 F.3d at 654. The "district court may address its lack of subject matter jurisdiction in two ways." *Id*. It "may find insufficient allegations in the pleadings, viewing the alleged facts in the light most favorable to the plaintiff, similar to an evaluation pursuant to Rule 12(b)(6)," or, "after an evidentiary hearing, the court may weigh the evidence in determining whether the facts support the jurisdictional allegations." *Id*. (internal citations omitted); *see Adams*, 697 F.2d at 1219 (same). However, "when the jurisdictional facts are inextricably intertwined with those central to the merits, the [district] court should resolve the relevant factual disputes only after appropriate discovery." *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 333–34 (4th Cir. 2014) (quoting *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009)).

### B.  Motion to Dismiss for Failure to State a Claim

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The court must determine whether the factual allegations in a complaint state a plausible claim for relief based on "judicial experience and common sense." *Id.* at 679. In addition, the court "should view the complaint in a light most favorable to the plaintiff."

5

*Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)).

## V. DISCUSSION

In this case, Wells Fargo asserts partial dismissal of Berry's case is warranted for two reasons: (1) Berry lacks standing to pursue any claims under the Contribution Plan because he was not a participant and, as such, also may not serve as a class representative for participants under the Contribution Plan; and (2) Berry lacks standing to pursue any claims for which he has not plausibly alleged any actual harm suffered—applicable to Count Two (violations of reporting and disclosure provisions required under ERISA) and Count Three (failure to provide minimum funding required under ERISA).[4]

Berry responds that he has standing to bring these claims. First, Berry argues that the Contribution Plan and Deferral Plan provide identical benefits, are administered by the same Defendants, and the alleged wrongful conduct or policy applies uniformly to both so he is able to serve as a class representative for both despite the fact he was only a participant in the Deferral Plan.[5] ECF No. 30 at 3. Second, Berry argues he has standing under Article III to bring Counts Two and Three because he is seeking to enjoin any act or practice which violates ERISA as well as seeking prospective and equitable relief so he is not required to show an individualized harm to

---

[4] More specifically, Wells Fargo alleges that Berry lacks Article III and statutory standing regarding all claims for the Contribution Plan as well as for Count Two, Article III standing for Count Three, and, moreover, Berry has failed to plausibly allege harm for Counts Two and Three. ECF No. 26.

[5] Berry only cites persuasive authority for this proposition.

6

seek injunctive relief.[6] *Id.* at 12. Moreover, Berry argues that he has alleged an injury. Third, Berry states he has statutory standing to pursue Count Two because he is only seeking enforcement of the filing of annual reports, not monetary damages.[7] *Id.* at 17.

Wells Fargo replies that Berry's argument—he has standing to serve as a class representative for the Contribution Plan—rests on faulty legal analysis, which has not been adopted in the Fourth Circuit and was implicitly rejected by the United States Supreme Court in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). ECF No. 34 at 1–2. Moreover, Wells Fargo argues

---

[6] The position that injunctive relief does not require an injury in fact—a concrete and particularized injury—is not supported by Supreme Court precedent. *See Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (citing multiple cases in support stating "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought" and "a plaintiff who has standing to seek damages must also demonstrate standing to pursue injunctive relief"); *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).

[7] Berry also argues that Wells Fargo is conflating standing with Rule 23 of the Federal Rules of Civil Procedure. This argument appears to be borrowed largely from the cases citing *Fallick* with approval.

There is case law stating a court may consider a Rule 23 certification prior to standing; however, it appears, in that case, a motion for certification had been raised before the court whereas here it has not. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) ("Ordinarily, of course, this or any other Article III court must be sure of its own jurisdiction before getting to the merits. . . . But the class certification issues are, as they were in *Amchem,* 'logically antecedent' to Article III concerns, and themselves pertain to statutory standing, which may properly be treated before Article III standing . . . .Thus the issue about Rule 23 certification should be treated first, "mindful that [the Rule's] requirements must be interpreted in keeping with Article III constraints. . . .") (internal citations omitted). Furthermore, a district court in New York has recognized the limited holding of the case and its inapplicability should a plaintiff fail to have standing. *See Grund v. Delaware Charter Guarantee & Trust Co.*, 788 F. Supp. 2d 226, 236–37 (S.D.N.Y. 2011), *on reconsideration,* No. 09 CIV. 8025, 2011 WL 3837146 (S.D.N.Y. Aug. 30, 2011) ("Plaintiffs argue that this Court may not consider their lack of ERISA standing at this stage, but rather must wait until after class certification, relying on *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) and its progeny. However, *Ortiz* is a 'limited exception' and does not apply where the standing issue would exist for the named Plaintiff if they filed their claims alone and not as a class action.") (internal citations omitted).

Moreover, the Supreme Court has noted tension amongst it prior cases as to whether "variation" between (1) a named plaintiff's claims and (2) the claims of putative class members "is a matter of Article III standing . . . or whether it goes to the propriety of class certification." *Gratz v. Bollinger*, 539 U.S. 244, 263, n.15 (2003) (citing *Gen. Tel. Co.,* 457 U.S. 147, 149 (2003) and *Blum v. Yaretsky,* 457 U.S. 991 (1982)). In *Gratz*, the issue was whether the plaintiff, a transfer student alleging race discrimination in a university's admissions, could sue on behalf of freshman students due to the fact that he was a transfer student. The Supreme Court stated it did not need to decide the issue because both avenues were met.

7

that, even if the faulty framework was applied, the Contribution Plan is not governed by ERISA so the harm suffered by unknown class members is distinctly different from the harm claimed under the Deferral Plan. *Id.* at 2. With regard to Counts Two and Three, Wells Fargo contends that Berry lacks standing under Article III because he has not alleged any concrete injury or causation tracing the injury to Wells Fargo's action as the harm was not caused by an ERISA violation, but by the terms of the Deferral Plan and Berry's decision to open a financial business. *Id.* at 2.[8]

### A. No Standing Under the Contribution Plan

Berry does not have standing to pursue claims under the Contribution Plan because he has not alleged that he was a participant or beneficiary nor does he have the potential to become one, and, thus, Berry has not suffered a personal injury in connection with the Contribution Plan, which makes him ineligible to file suit. Therefore, Berry lacks constitutional standing and statutory standing to bring a claim under the Contribution Plan.

#### 1. *No Constitutional Standing*

"When the case is a class action lawsuit, the named class representatives 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" *Pashby v. Delia*, 709 F.3d 307, 316 (4th Cir. 2013) (quoting *Blum v. Yaretsky,* 457 U.S. 991, 1001 n.13 (1982)). The Fourth Circuit recently re-articulated the requirements of standing in a class action: "In a class action matter, 'we analyze standing based on the allegations of personal injury made by the named plaintiff[ ]. 'Without a sufficient allegation of harm to the named plaintiff in particular, [he] cannot meet [his] burden of establishing standing.'" *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 343 (4th Cir. 2017)

---

[8] Due to Berry's response, it appears that the motion to dismiss on Count Two for lack of statutory standing is no longer at issue because Berry stated that he is not seeking monetary damages, which are limited to the Secretary of Labor under the statute. ECF No. 30 at 4.

(quoting *Beck*, 848 F.3d at 269–70) (citation omitted); *see Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976). Thus, a plaintiff must show: injury in fact, causation, and redressability. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 *as revised* (May 24, 2016).

Berry's reliance upon other circuits' frameworks for standing is primarily based upon *Fallick v. Nationwide Mutual Insurance Company*, 162 F.3d 410 (6th Cir. 1998). In that case, the Sixth Circuit "affirmed the principle that '[a] potential class representative must demonstrate individual standing vis-a-vis the defendant; he cannot acquire such standing merely by virtue of bringing a class action.'" *Haney v. USAA Cas. Ins. Co.*, 331 F. App'x 223 n.5 (4th Cir. 2009) (quoting *Fallick*, 162 F.3d at 423). Moreover, the Fourth Circuit has noted *Fallick* stands for a unique proposition that "[i]t is only after 'an individual has alleged a distinct and palpable injury to himself [that] he has standing to challenge *a practice* even if the injury is of a sort shared by a large class of possible litigants.'" *Id*.

The Fourth Circuit's opinion discussing *Fallick* is unpublished. Moreover, Wells Fargo contends that *Fallick* is not controlling and would no longer be considered good law even in the Sixth Circuit after the Supreme Court's decision in *Spokeo*; however, the Sixth Circuit has recently cited *Fallick* with approval. *See Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 581–85 (6th Cir. 2016) ("We previously made clear that potential class representatives must demonstrate 'individual standing vis-a-vis the defendant; [they] cannot acquire such standing merely by virtue of bringing a class action.'"). Yet, noticeably, the Sixth Circuit did not cite *Fallick*'s conclusion "that once a potential ERISA class representative establishes his individual standing to sue his own ERISA-governed plan, there is no additional constitutional standing requirement related to his suitability to represent the putative class of members of other plans to which he does not belong." 162 F.3d at 424.

However, to the extent that other circuits may apply or lean toward the reasoning in *Fallick*, this Court declines to do so and follows the precedent of this Circuit and the Supreme Court. In particular, the Fourth Circuit has not adopted the reasoning in *Fallick* and the case appears to run afoul of the standing requirements articulated by the Supreme Court. For example, under the *Fallick* analysis, Berry may bring claims regarding the Contribution Plan under a class action; however, if Berry was not bringing the claims regarding the Contribution Plan as a class representative, he would not be able to proceed. Thus, hypothetically, a motion to certify the class could be denied later in this case and Berry would be unable to proceed on those claims individually.

This situation is not similar to the one admission policy discussed in *Gratz v. Bollinger*, 539 U.S. 244 (2003), wherein all applicants—regardless of whether they were freshman or transfer students—were being racially discriminated against. This situation involves two separate plans, applicable to two separate categories of people, and purportedly administered by different agreements—stipulating that the Contribution Plan shall be governed exclusively by North Carolina law and the Deferral Plan shall be governed by ERISA law and, possibly, North Carolina law. Thus, the Court finds that Berry does not have standing under Article III of the Constitution because he fails to allege that he was a participant in the Contribution Plan, such that he suffered an injury in fact that was caused by Wells Fargo and able to be redressed by a decision in this Court.

Even if the reasoning in *Fallick* was applied, this case does not fall within the proper scope of it. Pursuant to the agreement, the Contribution Plan is governed by North Carolina law, not ERISA. *See* ECF No. 22-3 at 2 (§ 1.01) ("The Plan shall function solely as an incentive bonus arrangement tied to personal performance and continued service, and ***not*** as a deferred compensation program subject to the requirements of [ERISA].") (emphasis in original); *Id.* at 21

(§ 8.04) ("The Plan and all rights hereunder shall be construed, administered and governed in all respects in accordance with the laws of the State of North Carolina . . . ."). In contrast, the Deferral Plan operates as a "'top hat' plan of deferred compensation subject to the applicable provisions of [ERISA]." *See* ECF No. 22-3 at 2 (§1.02) ("The Plan shall function solely as a so-called 'top hat' plan of deferred compensation subject to the applicable provisions of [ERISA]."); *see also id.* at 23–24 (§ 9.04) ("The Plan . . . and all rights hereunder shall be construed, administered and governed in all respects in accordance with the provisions of [ERISA] applicable to such an arrangement and, to the extent not pre-empted thereby, by the laws of the States of North Carolina without resort to its conflict-of-laws provisions.").

Berry attempts to tie Wells Fargo's conduct—the seizing of forfeited funds—for both plans together; however, the differences are already evident with regard to these two plans and, in order to equate them, Berry attempts to argue that the Deferral Plan is not a "top hat" plan but a simple plan under ERISA and the Contribution Plan is not governed by state law but under ERISA. Thus, even if the Court were to apply the reasoning in *Fallick* that standing under one ERISA plan suffices to confer standing for another ERISA plan, the Court deems this situation inappropriate to confer standing to Berry under the Contribution Plan as it is not clear that both plans should be governed by ERISA[9] or even the same set of laws under ERISA.[10]

---

[9] *See Connell v. Wells Fargo & Co.*, No. CV H-15-2841, 2016 WL 4733448, at *1 (S.D. Tex. Sept. 12, 2016) ("Based on a review of the pleadings, the record, and the applicable law, the court grants Wells Fargo's motion to dismiss, finding that the parties' choice of North Carolina law governs and that the forfeiture provision is valid and enforceable.").

[10] In *Haney*, while discussing *Fallick*, the Fourth Circuit did appear to indicate a limitation of the reasoning to ERISA cases. *Haney*, 331 Fed. Appx. at 227 n.5 (quoting *In re Eaton Vance Corp. Sec. Litig.*, 220 F.R.D. 162, 168 (D. Mass. 2004)) ("Moreover, as at least one court has noted, "circuit precedent interpreting ERISA, a statute that is not at issue in the present case, was an important factor in the [*Fallick* ] court's decision regarding Article III standing.").

Therefore, Berry fails to show an injury in fact regarding the Contribution Plan and, thus, fails to fulfill the other elements—causation and redressability—required under Article III standing as well.

### 2. *No Statutory Standing*

The flawed reasoning in *Fallick* is even more evident when evaluating whether Berry has statutory standing to bring a claim regarding the Contribution Plan.

The Fourth Circuit has held constitutional standing and statutory standing serve as distinct requirements and courts "have subject matter jurisdiction over ERISA claims only where the [parties] have both statutory *and* constitutional standing." *David v. Alphin*, 704 F.3d 327, 338 (4th Cir. 2013).

Under each count, Berry lists the relevant portion of the ERISA statute that purports to give him the authority to bring this suit. However, each of these sections list the persons empowered to bring a civil action, at most, to be a participant, beneficiary, fiduciary, or the Secretary of Labor.[11] Berry does not allege in his amended complaint nor argue in his response that he was a participant, beneficiary, or fiduciary under the Contribution Plan. In addition, due to his "retirement" from

---

[11] *See* 29 U.S.C. § 1132(a), (g):

> (a) "A civil action may be brought--(1) by a *participant or beneficiary*--(A) for the relief provided for in subsection (c) of this section, or (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; (2) *by the Secretary [of Labor], or by a participant, beneficiary or fiduciary* for appropriate relief under section 1109 of this title; (3) *by a participant, beneficiary, or fiduciary* (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan; . . .

> (g)(1) In any action under this subchapter (other than an action described in paragraph (2)) *by a participant, beneficiary, or fiduciary*, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

(emphasis added).

Wells Fargo, Berry is ineligible to become a participant or beneficiary under the Contribution Plan. Thus, Berry lacks statutory standing to bring claims regarding the Contribution Plan.[12]

Therefore, Berry lacks standing to bring claims regarding the Contribution Plan and these claims are dismissed without prejudice.

### B. No Standing Under Count Two

As to the Deferral Plan, Wells Fargo correctly asserts that Berry has failed to plead an injury so he lacks constitutional standing as to Count Two.[13] ECF No. 26.

In order to determine that a plaintiff has standing, three things must be shown: (1) the plaintiff suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *See Dreher*, 856 F.3d at 343. Here, despite the arguments raised in his response in opposition, Berry stumbles on all three elements: injury in fact, causation, and redressability.

#### 1. Injury in Fact

Review of the amended complaint reveals Berry alleged that Wells Fargo committed statutory violations for failing to file annual reports or forms for the Deferral Plan with the Secretary of Labor (29 U.S.C. §§ 1024(a), 1023) and failing to issue notices to participants of the plans when they did not meet the minimum funding standards (29 U.S.C. § 1021(d)(1)). In addition, Berry alleges he has a right to bring this action pursuant to 29 U.S.C. § 1132.

This Court has "subject matter jurisdiction over ERISA claims only where the [plaintiffs] have both statutory *and* constitutional standing." *David*, 704 F.3d at 338. The Fourth Circuit

---

[12] Due to this analysis, the Court will only address the Deferral Plan in the remaining portions of this discussion. However, the Court notes that Berry fails to plead an injury and lacks statutory standing under the Contribution Plan for Count Two as well as Count Three.

[13] Under this count, Berry has statutory standing because he was a participant under the Deferral Plan and alleges a violation of ERISA law by Wells Fargo.

recently re-iterated that "a 'bare procedural violation, divorced from any concrete harm, is not sufficient to satisfy the injury in fact requirement.'" *Ben-Davies v. Blibaum & Assocs., P.A.*, 2017 WL 2378920, at *1 (4th Cir. June 1, 2017) (quoting *Spokeo*, 136 S. Ct. at 1549). "[A] plaintiff suffers a concrete informational injury where he is denied access to information required to be disclosed by statute, *and* he suffers, by being denied access to that information, the type of harm *Congress sought to prevent* by requiring disclosure." *Trapp v. SunTrust Bank*, No. 16-2293, 2017 WL 2875212, at *1 (4th Cir. July 6, 2017) (quoting *Dreher*, 856 F.3d at 345–46 (emphasis in original).

Although Berry was a participant under the Deferral Plan and alleges a violation of ERISA law by Wells Fargo, his amended complaint does not contain any reference to an injury within Count Two. *See* ECF No. 22 at 25–27. Moreover, he fails to allege, in his amended complaint, how he has suffered an injury by being denied the information and only attempts in his response to allege how the lack of information harmed his ability to recover the forfeited funds. This does not correct the deficiency in his amended complaint to plausibly allege a claim upon which relief can be granted. Thus, Berry has failed to meet this element as well as plausibly plead an injury for Count Two.

### 2. Causation

Moreover, if it is construed that Berry had alleged an injury in his amended complaint previously, he is unable to meet the second element required—the injury "is fairly traceable to the challenged conduct of the defendant." *Dreher*, 856 F.3d at 343 (quoting *Spokeo*, 136 S. Ct. at 1547). "Proximate-cause analysis is controlled by the nature of the statutory cause of action. The question it presents is whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1305 (2017). Essentially, Berry claims that he earned benefits or compensation that were illegally seized via a

forfeiture clause in violation of ERISA—his injury was the loss of the funds and Wells Fargo's conduct was the seizure of the funds. However, that alleged injury and its causation are different than Wells Fargo's alleged violation of the statutes for recordkeeping and funding. Thus, Berry has failed to show causation.

### 3. *Redressability*

Wells Fargo did not raise redressability as an issue; however, the Court notes that Berry fails to meet this element as well. Even if Wells Fargo was forced to comply with the recordkeeping, such as annual reports and notifications of failure to meet minimum funding standards, mandated by ERISA, it would not address any injury alleged by Berry for Count Two—the forfeiture of his funds.

Thus, Berry lacks constitutional standing under Count Two and this cause of action is dismissed without prejudice.

### C. Standing Under Count Three

In contrast, under Count Three, Wells Fargo is incorrect because Berry does allege an injury sufficient to withstand a motion to dismiss.

As previously stated, in order to have standing, Berry must show three things: (1) he suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of Wells Fargo, and (3) that is likely to be redressed by a favorable judicial decision. Here, Berry fulfills all three elements.

### 1. *Injury in Fact*

Review of the amended complaint shows Berry alleged that Wells Fargo committed statutory violations by failing to provide minimum funding (29 U.S.C. § 1082) and, as a result of the "failure to fund" the plan, Berry "and the class members face a substantial risk that their

15

deferred compensation will be lost or severely reduced." ECF No. 22 at ¶ 84. In addition, Berry alleges he has a right to bring this action pursuant to 29 U.S.C. § 1132.

Under this count, Berry has statutory standing because he was a participant under the Deferral Plan and alleges a violation of ERISA law by Wells Fargo. Moreover, Berry has constitutional standing because he alleges an injury in fact—he faces a substantial risk that he will not be able to recover his funds. Although Wells Fargo argues that this injury is not concrete and particularized, the Court finds the cases cited in support by Wells Fargo to be distinguishable. *See, e.g.*, *Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017); *David v. Alphin*, 704 F.3d 327 (4th Cir. 2013).

In *Beck*, the plaintiffs "sought to establish Article III standing based on the harm from the increased risk of future identity theft and the cost of measures to protect against it." 848 F.3d at 266–67. The plaintiffs argued they were at a "substantial risk" of identity theft due to a data breach. While conducting a standing analysis, the Fourth Circuit acknowledged, "we may also find standing based on a 'substantial risk' that the harm will occur, which in turn may prompt a party to reasonably incur costs to mitigate or avoid that harm." 848 F.3d at 275 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)). However, in that case, the Fourth Circuit found the allegations that "(1) 33% of health-related data breaches result in identity theft; (2) the [d]efendants expend millions of dollars trying to avoid and mitigate those risks; and (3) by offering the [p]laintiffs free credit monitoring" the defendants conceded that the data breach constituted a "reasonable risk of harm to those victimized" were insufficient to establish a "substantial risk" of harm. *Id.* at 275–76.

Here, Berry has alleged that Wells Fargo's failure to provide minimum funding to the Deferral Plan has placed himself and the class members in a position where they "face a substantial risk that their deferred compensation will be lost or severely reduced." ECF No. 22 at ¶ 84. The

Supreme Court has recognized a "substantial risk" standard may be relevant and distinct from the "clearly impending" requirement of an injury. *Clapper*, 568 U.S. at 414 n.5 ("In some instances, we have found standing based on a 'substantial risk' that the harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm."). Moreover, for purposes of a motion to dismiss, Berry does not make the same mistake as the plaintiffs in *Beck* because he is not alleging a percentage of risk that the Deferral Plan, if not funded, cannot pay the compensation allegedly due to him and the class members. If the Deferral Plan is not funded and the funds are due, they cannot be paid. Furthermore, Berry does not allege an attenuated chain of inferences necessary to find harm here. Berry alleges that Wells Fargo has failed to fund the Deferral Plan and, thus, he and others face a substantial risk that they will be unable to fully recover the funds allegedly due.

In *David*, the plan at issue was a defined benefit pension plan that was overfunded. The Fourth Circuit found the risk-based theories of standing unpersuasive because they were highly speculative and noted that "a participant in a defined benefit pension plan has an interest in his fixed future payments only, not the assets of the pension fund" and "[m]isconduct by the administrators of a defined benefit plan will not affect an individual's entitlement to a defined benefit *unless it creates or enhances a risk of default by the entire plan.*" 704 F.3d at 338. Here, the Deferral Plan is alleged to be more akin to a contribution plan. Thus, Berry would be entitled to the contributions that he made to the plan. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439–41 (1999) (discussing the differences between a defined contribution plan and a defined benefit plan).

Moreover, in *David,* the Fourth Circuit stated, "Whether an Article III injury-in-fact results from the possibility that (1) a pension plan will terminate in an underfunded state, *and* (2) [the Pension Benefit Guaranty Corporation ("PBGC")] will not pay full benefits is a question that has

not been decided by the Supreme Court nor this Court; this case does not afford the opportunity for such a pronouncement." Here, Berry is alleging that the Deferral Plan was underfunded, and, as a result, he or class members of the class may not recover the funds that he contributed.

Furthermore, the Fourth Circuit found the injury too speculative in *David* because it would require the plan to deplete from being overfunded to underfunded, the bank being unable to make additional contributions due to insolvency, and, even then, the injury was minimized because the vested benefits were guaranteed by the PBGC up to a statutory minimum. Finally, in *David*, any surplus resulting from a favorable outcome in the litigation reverted back to the plan and not to the participants. Here, the Deferral Plan is already alleged to be underfunded and does not appear to have the same protections in place. Moreover, it appears Berry would be entitled to receive the funds allegedly due to him under the plan.

Thus, viewing the factual allegations in the light most favorable to Berry, he has sufficiently pled an injury for Count Three.

### 2. *Causation*

Moreover, as depicted above, Berry is able to meet the second element required—the injury is fairly traceable to the challenged conduct of Wells Fargo. Berry is able to fulfill the proximate-cause analysis because the funding statute was enacted to protect employees from employers insufficiently funding pension plans and risking the inability to pay employees. *See* 29 U.S.C. § 1082. Thus, Wells Fargo's alleged failure to properly fund the Deferral Plan places the ability to pay Berry and the class members at risk, and Berry has alleged sufficient facts to show causation sufficient to survive a motion to dismiss.

*3. Redressability*

Likewise, the Court notes that Berry meets the redressability element as well. If Wells Fargo is forced to comply with the funding requirement, assuming funds are due to Berry and the class members, then Wells Fargo will be able to compensate them.

Therefore, at this stature of the proceedings, Berry has plausibly alleged sufficient facts to survive a motion to dismiss under Count Three for the Deferral Plan.

## VI.     CONCLUSION

Thus, based on the foregoing, this Court **GRANTS** Defendants' motion for partial dismissal on all claims raised by Berry under the Contribution Plan and the claims raised under Count Two ("Violation of Reporting and Disclosure Provisions") without prejudice. ECF No. 26. However, the Court **DENIES** Defendants' motion for partial dismissal as to the remaining claim under Count Three ("Failure to Provide Minimum Funding under ERISA") for the Deferral Plan.

**IT IS SO ORDERED.**

July 31, 2017                                                                 Joseph F. Anderson, Jr.
Columbia, South Carolina                                          United States District Judge