IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| ROBERT BERRY, INDIVIDUALLY | § | |
| AND ON BEHALF OF ALL OTHERS | § | |
| SIMILARILY [SIC] SITUATED, | § | |
| | § | |
| Plaintiff, | § | Case No. 3:17-cv-00304-JFA |
| | § | |
| VS. | § | |
| | § | |
| WELLS FARGO & COMPANY, | § | |
| WELLS FARGO CLEARING | § | |
| SERVICES, LLC, and WELLS FARGO | § | |
| ADVISORS FINANCIAL NETWORK, | § | |
| LLC, and DOES 1 thru 50, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................. 3

I.     PLAINTIFF ROBERT BERRY ................................................................................. 3

II.    WELLS FARGO ADVISORS, LLC PERFORMANCE AWARD
       CONTRIBUTION AND DEFERRAL PLAN ........................................................... 4

III.   AS A STANDARD INDUSTRY RECRUITMENT PRACTICE, FINANCIAL
       ADVISORS ARE COMPENSATED FOR AMOUNTS FORFEITED UNDER
       PRIOR EMPLOYERS' DEFERRED COMPENSATION PLANS ............................ 6

IV.    PLAINTIFF'S AMENDED COMPLAINT AND PROPOSED CLASS ................... 8

ARGUMENT ......................................................................................................................... 9

I.     PLAINTIFF CANNOT REPRESENT ANY CLASS SEEKING PROSPECTIVE
       RELIEF BECAUSE HE LACKS STANDING TO PURSUE THOSE CLAIMS ...... 9

II.    THE PROPOSED CLASS CANNOT PROCEED UNDER § 502(A)(2)
       BECAUSE IT EXCLUDES CURRENT PARTICIPANTS ..................................... 11

III.   CLASS CERTIFICATION IS INAPPROPRIATE UNDER RULE 23 ................... 12

       A.     Plaintiff Cannot Satisfy the Rule 23(a) Requirements .......................... 13

              1.     Plaintiff Has Failed to Show That Common Issues Are Key To
                     Resolving All Individual Class Members' Claims .................... 13

                     (a)    Individualized Issues Regarding Defendants' Liability
                            Preclude Class Certification ........................................ 14

                     (b)    Individualized Issues Regarding The Statute of Limitations
                            Preclude Class Certification ........................................ 17

              2.     Plaintiff's Claims Are Not Typical of Those of Putative Class
                     Members ................................................................................... 19

              3.     Plaintiff Is Not an Adequate Class Representative ................... 21

       B.     Plaintiff Cannot Satisfy Any of the Requirements of Rule 23(b) ........ 26

              1.     Plaintiff Fails to Show That Certification Under Rule 23(b)(1) Is
                     Proper ....................................................................................... 26

              2.     Plaintiff Fails to Show That Certification Under Rule 23(b)(3) Is
                     Proper ....................................................................................... 28

CONCLUSION ....................................................................................................................... 32

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aetna Health Inc. v. Davila*,
    542 U.S. 200 (2004) ........................................................................23

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ..................................................21, 28, 29, 30

*Benner v. Becton Dickinson & Co.*,
    214 F.R.D. 157 (S.D.N.Y. 2003) ..................................................31

*Bennett v. Hayes Robertson Grp., Inc.*,
    880 F. Supp. 2d 1270 (S.D. Fla. 2012) ........................................29

*Bond v. Marriott Int'l, Inc.*,
    296 F.R.D 403 (D. Md. 2014) ..........................................17, 18, 19

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
    155 F.3d 331 (4th Cir. 1998) ........................................................19

*Browning v. Tiger's Eye Benefits Consulting, Inc.*,
    313 F. App'x 656 (4th Cir. 2009) ................................................18

*CIGNA Corp. v. Amara*,
    131 S. Ct. 1866 (2011) ..........................................................15, 17

*Coan v. Kaufman*,
    457 F.3d 250 (2d Cir. 2006) ........................................................11

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013) ................................................................28

*Cox v. Blue Cross Blue Shield of Mich.*,
    216 F. Supp. 3d 820 (E.D. Mich. 2016) ......................................17

*Cuming v. S.C. Lottery Comm'n*,
    Civil Action No. 3:05-cv-03608-MBS, 2008 WL 906705
    (D.S.C. Mar. 31, 2008) ................................................................27

*DeFelice v. U.S. Airways, Inc.*,
    235 F.R.D. 70 (E.D. Va. 2006) ....................................................12

*Dukes v. Wal-Mart Stores, Inc.*,
    564 U.S. 338 (2011) ............................................................ *passim*

*EQT Prod. Co. v. Adair*,
    764 F.3d 347 (4th Cir. 2014) ............................................................................12, 13

*Fifth Third Bancorp v. Dudenhoffer*,
    134 S. Ct. 2459 (2014) ............................................................................................23

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*,
    528 U.S. 167 (2000) .................................................................................................9

*Gariety v. Grant Thornton LLP*,
    368 F.3d 356 (4th Cir. 2004) ...................................................................................28

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ....................................................................................12, 20, 21

*Georgine v. Amchem Prods., Inc.*,
    83 F.3d 610 (3d Cir. 1996) ......................................................................................31

*Gonzalez v. City of Albuquerque*,
    No. CIV 09–0520 JB/RLP, 2010 WL 4053947 at *15 (D.N.M. Aug. 21, 2010) ....................22

*Halo v. Yale Health Plan, Dir. Of Benefits & Records Yale Univ.*,
    819 F.3d 42 (2d Cir. 2016) ......................................................................................23

*Kirkpatrick v. J.C. Bradford & Co.*,
    827 F.2d 718 (11th Cir. 1987) .................................................................................24

*Langbecker v. Elec. Data Sys. Corp.*,
    476 F.3d 299 (5th Cir. 2007) ...................................................................................21

*Liberty Lincoln Mercury v. Ford Mktg. Corp.*,
    149 F.R.D. 65 (D.N.J. 1996) ...................................................................................20

*Lott v. Westinghouse Savannah River Co., Inc.*,
    200 F.R.D. 539 (D.S.C. 2000) ................................................................................22

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .................................................................................................9

*Martin v. Ford Motor Co.*,
    292 F.R.D. 252 (E.D. Pa. 2013) ..............................................................................28

*Mass. Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985) ...............................................................................................11

*Mazur v. eBay Inc.*,
    257 F.R.D. 563 (N.D. Cal. 2009) ............................................................................17

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)...........................................................................................27

*Parkis v. Arrow Fin. Servs.*,
    No. 07-CV-410, 2008 WL 94798 (N.D. Ill. Jan. 8, 2008)......................................13

*Plotnick v. Computer Sciences Corp. Deferred Compensation Plan for Key
    Executives*,
    182 F. Supp. 3d 573 (E.D. Va. 2016) .......................................................23, 30, 31

*In Re Processed Egg Prod. Antitrust Litig.*,
    312 F.R.D. 124 (E.D. Pa. 2015)............................................................................28

*Retired Chicago Police Ass'n v. Chicago*,
    141 F.R.D. 477 (N.D. Ill. 1992), *rev'd in part on other grounds*, 7 F.3d 585
    (1993) ....................................................................................................................20

*Ruiz v. Citibank, N.A.*,
    93 F. Supp. 3d 279 (S.D.N.Y. 2015).................................................................28, 29

*Semenko v. Wendy's Int'l., Inc.*,
    No. 2:12-CV-0836, 2013 WL 1568407 (W.D. Pa. Apr. 12, 2013)..........................29

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009).............................................................................................9

*Szabo v. Bridgeport Machs., Inc.*,
    249 F.3d 672 (7th Cir. 2001) ..........................................................................30, 31

*Tatum v. R.J. Reynolds Tobacco Co.*,
    254 F.R.D. 59 (M.D.N.C. 2008) ..........................................................................12

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
    445 F.3d 311 (4th Cir. 2006) ...............................................................................14

*Tolbert v. RBC Capital Markets Corp.*,
    No. H-11-0107, 2016 WL 3034497 (S.D. Tex. May 26, 2016)...................... *passim*

*Warth v. Seldin*,
    422 U.S. 490 (1975).............................................................................................9

*Zimmerman v. Bell*,
    800 F.2d 386 (4th Cir. 1986) ...............................................................................26

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001) ..............................................................................31

**Statutes**

Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq* ("ERISA")................................................................................................. *passim*

ERISA Section 409, 29 U.S.C. § 1109 ...................................................................11

ERISA Section 413, 29 U.S.C. § 1113 ...................................................................18

ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) ...........................................14

ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2) .............................................. *passim*

ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3)........................................8, 15, 17

**Other Authorities**

Federal Rules of Civil Procedure Rule 23 ........................................................ *passim*

Fed. R. Civ. P. 23(a) ................................................................................... *passim*

Fed. R. Civ. P. 23(a)(2)................................................................................13, 28

Fed. R. Civ. P. 23(a)(3)......................................................................................20

Fed. R. Civ. P. 23(b) ..........................................................................12, 13, 26, 28

Fed. R. Civ. P. 23(b)(1)....................................................................3, 26, 27, 32

Fed. R. Civ. P. 23(b)(3).............................................................................. *passim*

## INTRODUCTION

Plaintiff Robert Berry attempts to certify a class with respect to two counts of his Amended Complaint against Defendants Wells Fargo & Company, Wells Fargo Clearing Services, LLC, and Wells Fargo Advisors Financial Network (collectively "Wells Fargo"). Each claim seeks relief for the alleged misclassification of the Wells Fargo Advisors, LLC Performance Award Contribution and Deferral Plan (the "Deferral Plan" or "plan") under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA"). Plaintiff claims that the plan was misclassified as a so-called "top hat" plan under ERISA. He seeks injunctive and declaratory relief and to recoup benefits he forfeited under the clear terms of the plan. He asks the Court to certify a class of all individuals who forfeited benefits from February 1, 2011 to the present. *See* Memorandum of Law in Support of Plaintiff's Motion for Class Certification ("Memo.") at 6. Plaintiff's motion fails for numerous reasons.

First, the relief Plaintiff pursues on a class basis does not match his proposed class. Plaintiff initially proposed a class definition that included both current and former plan participants. Recognizing that such a class would create inherent intra-class conflicts, he now only seeks to represent a class of individuals who have forfeited awards under the plan. Plaintiff excludes from his class definition, however, any current plan participants, *i.e.*, those that have an interest in the ongoing administration of the plan. As a result, Plaintiff and his proposed class lack standing to pursue Count I because it seeks only this prospective relief. That count must be dismissed and Plaintiff's class request denied as to it.[1]

Second, Plaintiff's class similarly cannot stand to the extent he seeks relief on behalf of the plan as a whole. While ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2), permits actions to

---

[1] Wells Fargo anticipates filing a motion for judgment on the pleadings or motion for summary judgment on Count I at the appropriate time.

be brought in a representative capacity on behalf of a plan, no one in the proposed class of *only former participants* would adequately protect the interests of current participants and the plan as a whole. Plaintiff's exclusion of current participants dooms both the substance of his claim for relief on behalf of the plan and his effort to certify a class on that count.

Third, Plaintiff cannot establish the requirements of Rule 23 of the Federal Rules of Civil Procedure with respect to either count upon which he seeks to certify a class. The Court must decide individualized issues for each putative class member. The legal theories under which Plaintiff proceeds dictate that only equitable relief is available to him and other class members. Yet many, if not all, potential class members received compensation from subsequent employers to offset amounts forfeited under the plan. As a result, most class members would be unjustly enriched if the Court awards forfeited benefits on a formulaic basis as Plaintiff requests. This contradicts the entire purpose of relief based in equity. Similarly, many class members' claims would likely be barred by the applicable statute of limitations. These individualized inquiries defeat the requisite elements of commonality and typicality under Rule 23(a). They also predominate over any class-wide issues the Court must resolve.

Fourth, Plaintiff is not an adequate class representative. Conflicts exist between past participants and unrepresented current participants. As courts have recognized, top hat plans provide a benefit to participants in the form of tax-deferred compensation. Current participants would undoubtedly prefer that the plan continue in operation as constituted to avoid any immediate penalties or tax consequences and potential reduction in future benefits. Moreover, Plaintiff has not demonstrated a level of interest or involvement in this case that would allow the Court to appoint him as class representative. He has no understanding of the claims involved in this case, and his lack of involvement borders on negligence.

Fifth, Plaintiff cannot certify a class under Rule 23(b)(1) because of intra-class conflicts. The mandatory nature of a Rule 23(b)(1) class means such a class cannot proceed with respect to Plaintiff's requests for injunctive and declaratory relief in Count I. Plaintiff cannot evade this conflict by excluding current plan participants from the class. This only exacerbates the issue that those participants have no one representing their interests in this action.

Finally, Plaintiff has not met his burden to show that a class action is a superior means of adjudicating this dispute. If Plaintiff succeeds in having the Court order Wells Fargo to repay amounts forfeited under the plan, the average recovery to each participant could exceed █████████ This amount is sufficiently high that class members have a substantial interest in pursuing their own claims and controlling the outcome of those individual cases. The potential for high individual recoveries by financially sophisticated individuals vitiates the fundamental rationale for class actions in aggregating small claims that would otherwise not be worth pursuing.

The Court, therefore, should deny Plaintiff's motion for class certification in its entirety.

## FACTUAL BACKGROUND

### I.  PLAINTIFF ROBERT BERRY

Plaintiff Robert Berry began working for a predecessor of Wells Fargo Advisors, LLC ("WFA") in 1994. Exhibit 1, Excerpts of Deposition of Robert Berry ("Berry Dep.") at 32. Ultimately, after a series of acquisitions, Plaintiff's employer was acquired by WFA in 2008. *Id.*; *see also* Exhibit 2, Excerpts of and Exhibits to Deposition of Anthony Citro ("Citro Dep.") at 32-33, 157[2]; Citro Dep. Exhibit 2[3], Wells Fargo Advisors, LLC Performance Award Contribution

---

[2] Wells Fargo is submitting information and documents subject to the confidentiality order entered by the Court in redacted form. It reserves the to assert confidentiality over any material previously marked as confidential.

and Deferral Plan Amended and Restated as of January 1, 2014[4] at § 1.01. Plaintiff ceased working for WFA on February 3, 2014. Berry Dep. at 32. At the time he left, Plaintiff was a Senior Profit Formula Financial Advisor with WFA. *Id*. at 34. Two days after he left WFA, on February 5, 2014, Plaintiff opened Berry Financial Group—a competing financial services company. *Id*. at 32, 34, 40. During his employment with WFA, Plaintiff was granted various awards under the plan. *See, e.g.*, Citro Dep. at 180-81; Citro Dep. Exhibits 40 and 41.

## II.   WELLS FARGO ADVISORS, LLC PERFORMANCE AWARD CONTRIBUTION AND DEFERRAL PLAN

The Deferral Plan was established January 1, 2005. Deferral Plan at § 1.01. It has been amended and restated five times, with the latest restatement taking effect January 1, 2017. Citro Dep. at 47-48; Citro Dep. Exhibit 11, Wells Fargo Advisors, LLC Performance Award Contribution and Deferral Plan Amended and Restated Effective January 1, 2017 at § 1.01.

The Deferral Plan operates as a top hat plan under ERISA and provides a select group of management and highly compensated Wells Fargo employees "an opportunity to earn additional incentive compensation contingent upon their completion of designated service periods." Deferral Plan at § 1.02. Through the plan, Wells Fargo provides awards to eligible individuals in one of two business lines: Wealth Brokerage Services ("WBS") and Private Client Group ("PCG"). Citro Dep. at 25-27, 96-97; Memo. Exhibit F, Defendants' Supplemental Responses to Plaintiff's First Set of Interrogatories ("Supp. Responses") at 3.[5]

---

[3] Exhibits to depositions are included in the same exhibits to this opposition as the deposition excerpts for the deponent.
[4] Unless otherwise noted, Wells Fargo cites to the 2014 version of the Deferral Plan, which was the version in effect when Plaintiff forfeited awards under the plan.
[5] Defendants' Supplemental Responses to Plaintiff's First Set of Interrogatories are confidential.

Pursuant to the Deferral Plan's stated purpose of providing additional compensation in exchange for the completion of designated service periods, it also provides that awards shall be forfeited if those service periods are not met. In relevant part, it states:

> Upon a Participant's cessation of Employee status for any reason (including a transfer to FiNet) other than (i) a Retirement (pursuant to Section 3.24, as set forth in Section 5.02, or (ii) Involuntary Termination, all balances in his or her Performance Award Subaccounts and/or Special Award Subaccounts (as adjusted for investment earnings, gains and losses) which are not at that time vested in accordance with the vesting provisions of Section 5.02 and 5.03 shall be immediately forfeited, and the Participant shall cease to have any further right or interest in those forfeited balances.

Deferral Plan at § 5.05. The Deferral Plan defines "Retirement" and sets forth limitations on that definition in keeping with its avowed goal "to serve as a meaningful incentive for [individuals] *to continue in the employ of their participating employers*." Deferral Plan at § 1.02 (emphasis added); *id.* § 3.24). One pertinent qualification for "Retirement" is that:

> The Participant has not become associated, at any time in the period between the Termination Date and the date which is the earlier of (x) three years from the Termination Date or (y) the Vesting Date established pursuant to Section 5.02 (for the Special Award Subaccounts) and Section 5.03 (for Performance Award Subaccounts), with any entity . . . that is actively engaged in the financial services business, including but not limited to, any bank, broker-dealer, investment advisor, investment company, financial planner, investment bank, mutual fund or insurance company.

Deferral Plan at § 3.24(B).

In direct contravention of that provision, Plaintiff "retired" from Wells Fargo in February 2014 and immediately started his own business: Berry Financial Group. Berry Dep. at 32, 34. Thus, under the Plan, Plaintiff forfeited awards. *See* Exhibit 3, Excerpt of and Exhibit to Deposition of Scott Swiezynski ("Swiezynski Dep.") at 104; Swiezynski Dep. Exhibit 12; Citro Dep. at 162-63.

The Deferral Plan limits eligibility for participation in several ways. First, it limits participation to only individuals employed by a "Participating Employer." Deferral Plan at §

- 5 -

3.18. In the 2014 version, the only Participating Employer identified was WFA. Deferral Plan at Schedule A. Second, eligibility is limited to "Eligible Employees," which is any employee in a job classification determined by the Plan Administrator, "***provided, however,*** that in each such instance the Employee must be either a highly compensated employee of his or her Participating Employer or part of its management personnel." Deferral Plan at § 3.08. Third, individuals within that limited population must meet criteria established by the Plan Administrator for either Performance Awards or Special Awards. Deferral Plan at §§ 3.19, 3.27, 5.01, 5.03; Citro Dep. at 105-08. ███████████████████████████████████████████████████████

███████████████████. Citro Dep. at 63-64, 73-75, 77; Memo. Exhibit E, February 16, 2018 Letter at 5-6.[6] ███████████████████████████ *Id.* ███████████████████████

████████████████████████████████ Citro Dep. at 63-64. ████████████████

████████████████ *Id.* In total, these criteria limit participation in the Deferral Plan to a tiny fraction of Wells Fargo's overall workforce. In 2016, ███████████ employees received plan awards. Memo. Ex. F, Supp. Responses at 3. This accounts for ███████████ of Wells Fargo's workforce of approximately 269,100 as of December 31, 2016. Exhibit 4, Wells Fargo & Company Form 10-K Annual Report at 3.[7]

III.    **AS A STANDARD INDUSTRY RECRUITMENT PRACTICE, FINANCIAL ADVISORS ARE COMPENSATED FOR AMOUNTS FORFEITED UNDER PRIOR EMPLOYERS' DEFERRED COMPENSATION PLANS**

████████████████████████████████████████████████████████

████████████████ Exhibit 5, Declaration of Michael Sinacore ("Sinacore Decl.") ¶ 11; Exhibit 6,

---

[6] The February 16, 2018 letter is confidential.
[7] Available at https://www.sec.gov/Archives/edgar/data/72971/000007297117000278/wfc-12312016x10k.htm

Declaration of Brian Danbury ("Danbury Decl.") ¶ 5.[8] ███████████████████

███████████████████████████ Danbury Decl. ¶ 7. █████████

████████████████████████████████████████

*Id.* ¶ 8. ███████████████████████████████

████████████ *Id.* ██████████████████████████████

███████████████████ *Id.*; *see also* Sinacore Decl. ¶ 12.

████████████████████████████████

████████████ Danbury Decl. ¶¶ 8, 15; Sinacore Decl. ¶ 10.

████████████████████████████

████████████ ¶¶ 9-10; Sinacore Decl. ¶¶ 4-6; Citro Dep. at 104, 130. ████

████████████████████████████

████ Danbury Decl. ¶¶ 9-10; Sinacore Decl. ¶¶ 4-6; *see also* Exhibit 7, ████

████████; Exhibit 8, ████████████████████ ███

████████████████████████████

████████████████████████████

████ Danbury Decl. ¶¶ 10-13; Sinacore Decl. ¶ 4-6. ████████████████

████████████████████████████

███████████████████████ Danbury Decl. ¶ 14; Sinacore Decl. ¶ 8.

████████████████████████████

████████████████████████████

████████████████████. Danbury Decl. ¶ 14; Sinacore Decl. ¶ 8. ████████

████████████████████████████

---

[8] Exhibits 5 and 6 are confidential and are being submitted in redacted form pursuant to the confidentiality order entered by the Court.

Danbury Decl. ¶ 15; Sinacore Decl. ¶ 10. 

*See* Danbury Decl. ¶¶ 6, 10-13, 16; Sinacore Decl. ¶¶ 4-6, 9-10.

Danbury Decl. ¶ 9; Sinacore Decl. ¶ 7; Citro Dep. at 104; Deferral Plan at § 5.03.

## IV.    PLAINTIFF'S AMENDED COMPLAINT AND PROPOSED CLASS

Three counts from Plaintiff's Amended Complaint remain as to the Deferral Plan, but only two are relevant here.[9] Both counts relate to the Deferral Plan's status as a top hat plan.

Count I seeks declaratory and injunctive relief under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3). Am. Compl. at ¶¶ 64-69. In particular, it seeks an order from the Court making several declarations, including that the Deferral Plan is not a top hat plan. *Id.* at ¶ 67. It further seeks an injunction requiring Wells Fargo to bring the plan into compliance with ERISA's requirements that apply to non-top hat plans. *Id.* at ¶ 68.

Count IV alleges that Defendants breached their fiduciary duties to Plaintiff and seeks relief under ERISA Sections 502(a)(2) and (a)(3). Am. Compl. at ¶¶ 85-94. Specifically, Count IV seeks "the restoration of all deferred compensation that was illegally deemed forfeited" under the Deferral Plan. *Id.* at ¶ 93.

As to each of these counts, Plaintiff seeks to certify a class consisting of:

All participants in the Wells Fargo Advisors Performance Award Contribution and Deferral Plan (the "Deferral Plan") since February 1, 2011, who earned deferred compensation under the Deferral Plan and were denied compensation under the Deferral Plan's Forfeiture Clause (§ 5.05).

Memo. at 6.

---

[9] The Amended Complaint asserts four counts with respect to the Deferral Plan and the Wells Fargo Advisors, LLC Performance Award Contribution Plan. The Court dismissed each count as it relates to the latter plan. (ECF No. 47.) The Court also dismissed Count II in its entirety. (*Id.*) Plaintiff does not seek to certify a class with respect to Count III. Memo. at 6.

# ARGUMENT

## I. PLAINTIFF CANNOT REPRESENT ANY CLASS SEEKING PROSPECTIVE RELIEF BECAUSE HE LACKS STANDING TO PURSUE THOSE CLAIMS

Count I seeks prospective relief—*i.e.* declaratory and injunctive relief—under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3). Am. Compl. at ¶¶ 64-69. In part, Count I asks the Court to declare that the Deferral Plan is not a top hat plan. *Id.* at ¶ 67. It also seeks an injunction directing Wells Fargo to comply with ERISA's requirements that apply to non-top hat plans. *Id.* at ¶ 68.

Plaintiff, however, lacks Article III standing to pursue prospective relief. To have Article III standing, a plaintiff must demonstrate that: (1) he has "suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). An "injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009). Plaintiff must allege "a distinct and palpable injury to himself." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

Plaintiff cannot identify any injury-in-fact that he has suffered (or could suffer) that would be redressed by the prospective relief sought in Count I. As a former participant in the plan, Plaintiff has no risk of harm that may be remedied by prospective relief. For instance, a declaration that the Deferral Plan is not a top hat plan would have no bearing on Plaintiff or the awards he has already forfeited. Am. Compl. at ¶ 67. Similarly, an injunctive order directing Wells Fargo to refrain from enforcing the Deferral Plan's forfeiture provisions would not remedy

- 9 -

the harm Plaintiff alleges.[10] Similarly, no other putative class member would have standing to pursue this relief as they are, by definition, no longer participants in the plan. Because this claim fails as a matter of law with respect to Plaintiff, he cannot represent a class on Count I.

Plaintiff's standing was not at issue under his original proposed class.[11] Plaintiff initially proposed a class comprised of both former and current Wells Fargo employees. Am. Compl. at ¶ 54. The class identified in the Amended Complaint included: "Wells Fargo's current employees in the United States who have account balances in the Deferral Plan [] and who are at risk of forfeiture under the Forfeiture Clause." Am. Compl. at ¶ 54. In other words, Plaintiff sought to represent both individuals who have forfeited awards under the Deferral Plan and those who were *potentially at risk of forfeiting awards* currently held in the Deferral Plan or who could potentially otherwise benefit from declarative or injunctive relief. Plaintiff, however, has abandoned his attempt to represent a class of current plan participants. Memo. at 6. Therefore, neither Plaintiff nor anyone else in the proposed class may pursue Count I. Because that claim fails as a matter of law, it cannot form the basis of any class claims.

---

[10] Among the injunctive relief sought, Plaintiff requests that the Court order Wells Fargo to "remedy all past violations of ERISA's" statutory requirements and "remedy all past enforcement" of the Deferral Plan's forfeiture provisions. These are plainly not requests for injunctive relief.

[11] Plaintiff may have strategically limited the class to avoid an inherent conflict of interest between past Deferral Plan participants, who Plaintiff claims uniformly want the Deferral Plan re-classified as a non-top hat plan, and current participants, who are satisfied with the plan's operation and benefits. Another court recently addressed this precise conflict and found that it precluded class certification: "It is undisputed that the [plan at issue], operating as a top hat plan, provided and continues to provide tax and other monetary benefits to participants" and "any number of putative class members would not necessarily want the [plan's] top hat status declared invalid." *Tolbert v. RBC Capital Markets Corp.*, No. H-11-0107, 2016 WL 3034497, at *7 (S.D. Tex. May 26, 2016). Plaintiff's solution—to merely abandon current participants—is a nonstarter. The interests of those participants, which would necessarily be affected by a reclassification of the plan, are unaccounted for in the proposed class.

- 10 -

## II.    THE PROPOSED CLASS CANNOT PROCEED UNDER § 502(a)(2) BECAUSE IT EXCLUDES CURRENT PARTICIPANTS

Count IV of the Amended Complaint, in part, asserts a claim under ERISA Section 502(a)(2). Plaintiff cannot pursue that claim for similar reasons that Count I fails.[12]

Section 502(a)(2) permits the Secretary of Labor, plan participant, beneficiary, or fiduciary to bring suit for "appropriate relief" under ERISA Section 409. 29 U.S.C. § 1132(a)(2). Among other relief, Section 409 permits a court to require a plan fiduciary to "make good to such plan any losses to the plan resulting from" a breach of fiduciary duty. 29 U.S.C. § 1109. The Supreme Court has interpreted this statute to limit "recovery for a violation of § 409 [to] inure[] to the benefit of the plan as a whole." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985). The statute's language indicates "Congress' intent that actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole." *Id.* at 142 n.9.

Because a claim under ERISA Section 502(a)(2) redounds to the benefit of the plan as a whole, it is brought in a representative capacity and must abide by procedural safeguards to ensure that the interests of all beneficiaries are protected. *See, e.g., Coan v. Kaufman*, 457 F.3d 250, 259-61 (2d Cir. 2006) ("[W]e do not see how an action can be brought in a 'representative capacity on behalf of the plan' if the plaintiff does not take any steps to become a bona fide representative of other interested parties.") (*quoting Russell*, 473 U.S. at 142 n.9). This may not require compliance with Fed. R. Civ. P. 23, but a plaintiff bringing suit in a representative capacity on behalf of the plan must, at a minimum, "take adequate steps under the circumstance properly to act in" that capacity. *Id.* at 260. As in the case of trusts—the bedrock of ERISA—

---

[12] Plaintiff also cannot certify a class under Rule 23 with respect to his Section 502(a)(2) claim. For the reasons discussed below, he fails to meet each of the commonality, typicality, adequacy, predominance, and superiority elements. This claim fails, however, for the more fundamental reason that Plaintiff is not a current Deferral Plan participant.

"when a beneficiary brings suit against a trustee on behalf of the trust, other beneficiaries should be joined as parties, either as plaintiffs or as defendants, if their interests would be affected by the decree." *Id.* at 260.

By limiting the proposed class to only former Deferral Plan participants who have forfeited awards, Plaintiff abdicates his responsibility as putative representative of the Deferral Plan to seek relief on behalf of the plan as a whole. Indeed, any relief obtained for the class as defined would not inure to the benefit of the plan and would potentially harm the interests of current participants. This harm could include an immediate taxable event to current participants or even tax penalties or a reduction future benefits. In each of the ERISA cases Plaintiff cites in which class certification was granted on a Section 502(a)(2) claim, the class definition was drafted broadly enough to ensure that any recovery could be made to the plan as a whole. *See, e.g.*, *DeFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 73 (E.D. Va. 2006) (certifying class of "[a]ll participants and their beneficiaries" in the plan who held certain securities in their accounts); *see also Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 64 (M.D.N.C. 2008) (same). Because Plaintiff fails to meet this basic requirement of Section 502(a)(2), this claims fails as a matter of law.

## III.    CLASS CERTIFICATION IS INAPPROPRIATE UNDER RULE 23

Plaintiff bears the burden of proving that the requirements of Fed. R. Civ. P. 23 are satisfied as to each of the claims that he seeks to bring on a class basis. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). Plaintiff must establish each of the four requirements for Rule 23(a): "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see also EQT Prod.*

*Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014). Plaintiff also must satisfy at least one provision of Rule 23(b). *See EQT Prod. Co.*, 764 at 357 ("In addition, the class action must fall within one of the three categories enumerated in Rule 23(b)") (quotation marks and citation omitted). Under that provision, Plaintiff seeks to satisfy 23(b)(1) or (b)(3). Memo. at 13-15.

Rule 23 does not set forth a mere pleading standard—Plaintiff must affirmatively demonstrate compliance with all of the requirements of Rule 23(a) and at least one of Rule 23(b) for each claim that he seeks to bring on a class basis. *Dukes v. Wal-Mart Stores, Inc.*, 564 U.S. 338, 350 (2011). The trial court must conduct a "rigorous analysis" of Plaintiff's class allegations. *Id.* at 351. This analysis "will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Id.*

Plaintiff has failed to demonstrate the requirements of either Rule 23(a) or (b) with respect to either count under which he seeks to certify a class, and, therefore, his motion for class certification should be denied entirely.

### A.    Plaintiff Cannot Satisfy the Rule 23(a) Requirements

#### 1.    Plaintiff Has Failed to Show That Common Issues Are Key To Resolving All Individual Class Members' Claims

Plaintiff's Motion for Class Certification fails because Plaintiff has not demonstrated that common questions of law or fact exist. To satisfy Rule 23(a)(2), Plaintiff must demonstrate that the claims of class members depend upon a common contention that is "capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. In order for a "contention" to constitute a "common question," it must yield the same answer with respect to each member of the proposed class. *Id.* Commonality generally exists when the defendant has engaged in "standardized conduct" toward the members of the proposed class. A question is not

common "if its resolution turns on a consideration of the individual circumstances of each class member." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006); *see also Parkis v. Arrow Fin. Servs.*, No. 07-CV-410, 2008 WL 94798, at *4 (N.D. Ill. Jan. 8, 2008) (denying class certification where "this court would have to look into the payment history of each putative class member" to resolve each class member's claim).

> (a)    Individualized Issues Regarding Defendants' Liability Preclude Class Certification

Plaintiff proposes several common questions of law. Memo. at 9. None of these, however, satisfy the commonality requirement. *See Dukes*, 564 U.S. at 350 ("What matters to class certification . . . is not the raising of common 'questions'—even in droves. . . .") (citation omitted). None of the questions Plaintiff proposes "have the capacity . . . to generate common *answers* apt to drive the resolution of the litigation." *Id.* (emphasis original). To that end, none of Plaintiff's questions lead to a common answer to the fundamental question the Court must resolve: whether Wells Fargo is liable to each putative class member for the alleged misclassification of the Deferral Plan. Plaintiff cannot make that showing because individualized issues preclude class-wide relief.

The type of relief Plaintiff must seek dictates this outcome. At base, Plaintiff seeks to recover awards forfeited under the Deferral Plan. Memo. at 6; Am. Compl. at ¶ 93. Typically, a plan participant seeking plan benefits would bring suit under ERISA Section 502(a)(1)(B). That remedial provision allows plan participants and beneficiaries to "recover benefits due to him under the terms of the plan or to clarify his right to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Plaintiff apparently recognizes that the Deferral Plan expressly precludes his recovery of forfeited benefits and that relief under Section 502(a)(1)(B) is unavailable to him. If Plaintiff has any remedy available, it must lie under ERISA Sections

- 14 -

502(a)(2) or (a)(3).[13] In short, Plaintiff attempts an end-run around the plan terms under which he forfeited awards and seeks to invalidate the Deferral Plan terms as applicable to all participants.

Section 502(a)(3) allows for only injunctive or "other appropriate equitable relief." The Supreme Court has delineated the types of relief that were typically available in equity and that are available under Section 502(a)(3). *See CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1878-81 (2011) (limiting relief under § 502(a)(3) to remedies that "traditionally speaking . . . were *typically* available in equity" and listing remedies falling into that category) (emphasis original). At a minimum, such appropriate equitable relief requires a showing that an individual suffered actual harm such that they could be made whole through an equitable remedy. *Id.* at 1881 (stating that with respect to the equitable relief of surcharge, "just as a court of equity would not surcharge a trustee for a nonexistent harm . . . , a fiduciary can be surcharged under § 502(a)(3) only upon a showing of actual harm").

In the instant case, Plaintiff presupposes that every putative class member experienced actual harm by operation of the forfeiture clause, limiting the class to those "who earned deferred compensation under the Deferral Plan and were denied compensation under the Deferral Plan's Forfeiture Clause." Memo. at 6-7. This is not so. ████████████████████████████████ ████████████████████████████████████████████████████ Danbury Dec. at ¶¶ 4-8. ████████████████████████████████████████████████ ████████████████████████ *Id.* at ¶ 8. ████████████████████████████████████ ████████████████████████████████████████████████ ████████ *Id.*

---

[13] As discussed, *supra* at 11-12, Plaintiff cannot proceed under ERISA Section 502(a)(2) because his proposed class fails to include current participants in the Deferral Plan. Thus, Plaintiff cannot obtain relief on behalf of the plan because the interests he advocates for contradict those of current participants and former participants who did not forfeit awards.



███████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████

    █████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████. ¶ 9-10; Sinacore Decl. ¶ 4-6; Ex. 7; Ex. 8. ████████

█████████████████████████████████████████████

████████████████████████ Danbury Decl. ¶¶ 6, 10-13, 16; Sinacore Decl. ¶¶ 4-6, 9-10. ███

█████████████████████████████████████████████

██████████████████████. Danbury Decl. ¶ 8, 15 Sinacore Decl. ¶ 10. ████████████

██████████████████████████████████████████

████████████████████████████████████████████████

█████. Danbury Decl. ¶ 14; Sinacore Decl. ¶ 8. █████████████████████████████

██████████████████████████████████████████ Danbury Decl. ¶ 9; Sinacore Decl. ¶

7. █████████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████ Danbury Decl. ¶¶ 4-8; Sinacore Decl. ¶

12.

The Court cannot assess whether each putative class member has suffered actual harm without conducting individualized mini-trials into the compensation package each member received upon exiting Wells Fargo. Plaintiff claims that determining damages is of a "mechanical nature" and not an "especially complex" undertaking. Memo. at 16, 17. This argument ignores the established industry practice of offsetting forfeited deferred compensation. To award an

amount, as Plaintiff proposes, based on a formulaic calculation of forfeited benefits would, in almost all instances, provide a windfall to class members. *See, e.g., Bond v. Marriott Int'l, Inc.*, 296 F.R.D 403, 408 (D. Md. 2014) (denying class certification in part because many of the putative class were better off than they would have been but for the alleged ERISA violations and thus had "no viable cause of action"); *Mazur v. eBay Inc*., 257 F.R.D. 563, 572 (N.D. Cal. 2009) (finding class certification inappropriate in part because of individualized inquiry regarding mitigation of damages).

Moreover, the question of individualized relief is not, as Plaintiff suggests, merely one of damages. Because Plaintiff can only seek equitable relief, it is one of *liability*. Whether Wells Fargo is liable to any particular class member in the first instance turns on whether that individual has been made whole by a subsequent employer. *See, e.g., CIGNA Corp.*, 131 S. Ct. at 1881 (noting that, under trust law, equitable relief requires a beneficiary to be made whole for the trustee's breach of trust).

Plan participants who have suffered no harm cannot sue under ERISA. At a minimum, "other appropriate equitable relief" under Section 502(a)(3) requires a showing of actual harm. *CIGNA Corp.*, 131 S. Ct. at 1878-79; *see also Cox v. Blue Cross Blue Shield of Mich.*, 216 F. Supp. 3d 820, 825 (E.D. Mich. 2016) (requiring proof of injury-in-fact to pursue claims for equitable relief). In this case, mini-trials would therefore be required for each putative class member to determine both liability *and* damages. Such individualized inquiries preclude class certification.

       (b)       Individualized Issues Regarding The Statute of Limitations Preclude Class Certification

ERISA requires that a plaintiff bring a claim for breach of fiduciary duty within the earlier of "(1) six years after (A) the date of the last action which constituted a part of the breach

or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation." 29 U.S.C. § 1113. The three-year period is triggered when an individual has actual knowledge of the violation. *Browning v. Tiger's Eye Benefits Consulting, Inc.*, 313 F. App'x 656, 661 (4th Cir. 2009).

Plaintiff claims that he largely failed to read the plan documents and benefit award letters sent to him, which speaks to his inadequacy as a class representative. Berry Dep. at 66-67. He will thus argue that he did not obtain actual knowledge of the conduct giving rise to his potential claims more than three years prior to filing suit. Had he read the plan documents, Plaintiff would have been apprised of all facts required to assert his claim that the Deferral Plan is misclassified. For instance, the Deferral Plan notifies participants that the plan is operated as a top hat plan and that benefits are subject to forfeiture. Deferral Plan at §§ 1.02, 5.05. The award letters similarly notify participants that their benefits may be forfeited. *See, e.g.,* Citro Dep. at 201-02; Citro Dep. Exhibit 42 at 4-6 (describing vesting and forfeiture of benefits under the Deferral Plan). This knowledge would be sufficient for a claim to accrue. *Browning*, 313 F. App'x at 660-61 (noting that the majority of circuits to address what constitutes actual knowledge "require only that the plaintiff have knowledge of the facts or transaction that constituted the alleged violation" and not "actual knowledge that the facts establish a cognizable legal claim under ERISA in order to trigger the running of the statute"); *see also Bond*, 296 F.R.D at 408 (denying class certification in part due to individualized determinations of whether the statute of limitations precluded class members' claims). It is unlikely, however, that each potential class member—particularly individuals trained in providing financial advice—was as derelict as Plaintiff in understanding the deferred compensation awards at issue. To award any relief, the Court must resolve the

individualized issues of when each class member's claims accrued and whether those claims fall within ERISA's three-year limitations period.

Individualized determinations regarding affirmative defenses—including the application of the relevant statute of limitations—defeat commonality and typicality. *See, e.g., Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 342 (4th Cir. 1998). In *Broussard*, the Fourth Circuit reversed a district court's certification of a class of franchisees, finding that "tolling the statute of limitations on each of the plaintiffs' claims *depends on individualized showings that are non-typical and unique* to each franchisee." *Id.* at 342 (emphasis added). Because the "trial court's analysis of equitable tolling should thus have taken the form of individualized inquiry in *what each franchisee knew* about [defendant's] operation . . . and when he knew it," class certification was "preclude[d]." *Id.* (emphasis added). Similar issues have doomed class certification in ERISA cases as well. *See, e.g., Bond*, 296 F.R.D. at 408 (applying *Broussard* in denying class certification in ERISA case regarding administration of top hat plan because "when the defendants' affirmative defenses (such as . . . the statute of limitations) may depend on facts peculiar to each plaintiff's case, class certification is erroneous.") (quotations and brackets omitted). The statute of limitations issues in *Bond* not only defeated commonality, but also precluded certification under Rule 23(b)(3) because the individualized timelines for calculating the statute of limitations vitiated predominance as well. *Id.* at 410. These issues supersede any common questions presented by Plaintiff and may prevent particular class members from entitlement to any relief.

## 2.     Plaintiff's Claims Are Not Typical of Those of Putative Class Members

Plaintiff fails to meet the typicality requirement for similar reasons. The Supreme Court has noted that the typicality and commonality elements "tend to merge," and both serve as

guideposts for determining "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes,* 554 U.S. at 349, n.5 (*quoting Falcon,* 457 U.S. 157-58, n.13). Plaintiff has not shown that his claims are typical of any other putative class member because he cannot show that any other class member has suffered the same actual harm of forfeited benefits that were not ultimately recouped by way of a recruitment or signing bonus.

Typicality as to Count I fails for an additional reason. Even if the Court finds that Plaintiff has standing to pursue prospective relief, his motion fails to satisfy Rule 23(a)(3). The Supreme Court has repeatedly held that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Falcon*, 457 U.S. at 156 (citations omitted). "[C]ommon requests for relief . . . or common legal theories do not establish typicality when the facts required to prove the claims are markedly different among class members." *Retired Chicago Police Ass'n v. Chicago*, 141 F.R.D. 477, 486 (N.D. Ill. 1992), *rev'd in part on other grounds*, 7 F.3d 585 (1993). "If proof of the representatives' claims could not necessarily prove all of the proposed class members' claims, the representatives are not typical of the proposed members' claims." *Liberty Lincoln Mercury v. Ford Mktg. Corp*., 149 F.R.D. 65, 77 (D.N.J. 1996) (internal quotation marks and citations omitted).

Here, the potential harm suffered by Plaintiff is, by definition, not typical of the relief requested in Count I. Quite simply, he is not "part of the class" and does not "possess the same interest" as any individual with a potential claim for injunctive or prospective declaratory relief. *Falcon*, 457 U.S. at 156. The interests of past and current plan participants severely conflict. As a past participant, Plaintiff only has an interest in pursuing relief to remedy past forfeitures. This relief is not typical of or consistent with the declarative and injunctive relief sought in Count I.

- 20 -

### 3.    Plaintiff Is Not an Adequate Class Representative

Plaintiff fails to show that he can adequately represent his proposed class with respect to his claims for equitable relief for the same reasons he cannot meet his burden to show commonality and typicality. The Supreme Court has stated that these factors are all interrelated. *See, e.g. Dukes,* 554 U.S. at 349, n.5 (noting that commonality and typicality "also tend to merge with the adequacy-of-representation requirement") (*quoting Falcon,* 457 U.S. 157-58, n.13). Accordingly, to the extent Plaintiff's claims for equitable relief require individualized determinations, Plaintiff is not an adequate class representative. Because Plaintiff started his own competing firm, he did not receive any recruitment or signing bonus with an established firm. *See generally* Berry Dep. at 32-34. If any relief is available to him, that relief should merely equal the plan benefits he forfeited. He has no incentive, however, to protect the interests of putative class members by proffering the individualized proof of actual harm necessary for each class member to recover any forfeited awards. The undertaking to show that each class member suffered actual harm—*i.e.* that the amount of each member's forfeited awards exceeded offsetting recruitment bonuses—would be immense on its own. Plaintiff's incentive to bear that load is even lower because his particular circumstances differ from the majority of class members.

Further, Plaintiff cannot adequately represent any class seeking prospective relief because the interests between relief for alleged past violations and prospective violations diverge substantially. The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 (1997); *see also Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 315-16 (5th Cir. 2007) (same and denying class certification in ERISA breach of fiduciary duty case in part due to lack of adequacy of representation).

An inherent conflict between the interests of past and current participants prevents Plaintiff from meeting the adequacy requirement for Count I. This conflict is apparent on its face. In an effort to recover forfeited benefits under the Deferral Plan, Plaintiff seeks to alter the terms and administration of the Deferral Plan going forward. Current participants, however, have an interest in protecting the *status quo* in order to receive tax deferred benefits owed them under the Deferral Plan's existing form. A full award of the injunctive and declaratory relief sought in Count I would invariably affect the interests of current participants. This conflict disqualifies Plaintiff from pursuing any form of prospective relief. *See, e.g., Gonzalez v. City of Albuquerque*, No. CIV 09–0520 JB/RLP, 2010 WL 4053947 at *15 (D.N.M. Aug. 21, 2010) (rejecting class certification for lack of adequacy due to conflict of interest where class representatives, as former employees, sought injunctive relief that may lead to lower pay for current employees); *see also Lott v. Westinghouse Savannah River Co., Inc.*, 200 F.R.D. 539, 562 (D.S.C. 2000) (denying certification on adequacy grounds where "remedial interests" diverged within the class).

Two similar cases involving top hat plans are particularly instructive on this issue. In *Tolbert v. RBC Capital Markets Corp.*, No. H-11-0107, 2016 WL 3034497 (S.D. Tex. May 26, 2016), plaintiffs, like in the instant case, sought certification of a class seeking a declaration that a deferred compensation plan was not a lawful top hat plan, thereby invalidating that plan's forfeiture clause. *Id.* at *1. The court denied class certification on adequacy grounds, noting that "Plaintiffs do not dispel Defendants' argument that any number of putative class members would not necessarily want the [plan's] top hat status declared invalid . . . . Because of these *inherent conflicts of interest*, Plaintiffs cannot show that they, as the class representatives, would fairly and adequately protect the interests of the class as a whole." *Id.* at *7 (emphasis added). In

- 22 -

response to this argument, plaintiffs proposed subclasses that would distinguish between those who suffered forfeitures and those that did not. *Id.* The court found this proposal to still be inadequate, because "[w]ith or without the expanded subclasses, an inherent conflict of interest would remain between the class representatives and those class members *who have no injury in fact or would not want the [plan] declared invalid.*" *Id.* (emphasis added).

Similarly, in *Plotnick v. Computer Sciences Corp. Deferred Compensation Plan for Key Executives*, 182 F. Supp. 3d 573 (E.D. Va. 2016), plaintiff sought certification of a class claiming that a 2012 amendment to a top hat plan violated ERISA. *Id.* at 580. The proposed class failed for lack of adequacy: "plaintiffs' interest in invalidating the 2012 Amendment is contrary to the economic interests of those who have benefited from the 2012 Amendment." *Id.* at 586.

Here, seeking a declaration that the Deferral Plan is invalid, but with a class only constituted of former employees, Plaintiff attempts to reach beyond his grasp. Current participants have an interest in maintaining the top hat status of the Deferral Plan and obtaining benefits due under the terms as written now, yet Plaintiff's proposed relief could negatively impact them. While the Court may find that the Deferral Plan has been misclassified, it cannot order Wells Fargo to maintain the Deferral Plan as a non-top hat plan in perpetuity. ERISA reflects a careful balancing of interests that seeks to encourage employers to offer benefit plans while also protecting the interests of participants. *Aetna Health Inc. v. Davila,* 542 U.S. 200, 209 (2004). Sponsorship of benefit plans—including top hat plans—is thus wholly voluntary. *See id.*; *see also Halo v. Yale Health Plan, Dir. Of Benefits & Records Yale Univ.*, 819 F.3d 42, 55 (2d Cir. 2016) (recognizing ERISA's dual purposes of "of encouraging employers to continue voluntarily providing benefits while also protecting employees' interests in those benefits") (*citing Fifth Third Bancorp v. Dudenhoffer*, 134 S. Ct. 2459, 2470 (2014)). An order declaring

that the Deferral Plan has been misclassified would, at the very least, cause Wells Fargo to reevaluate whether it should continue offering the same level of benefits while incurring the additional costs imposed by ERISA's onerous statutory requirements from which top hat plans are exempt. Such an order would likely have immediate implications for current participants. Wells Fargo may have to immediately vest many of the Deferral Plan's unvested awards, leading to an immediate taxable event and possible penalties for current participants. This would vitiate the primary benefit of participating in the Deferral Plan (deferred taxation) in the first place. Many plan participants likely do not want such a result. *See Tolbert,* 2016 WL 3034497, at *7 ("It is undisputed that the [plan], operating as a top hat plan, provided and continues to provide tax and other monetary benefits to participants"). Such a conflict of interest precludes class certification and the Court should deny the motion as to Count I.

Finally, Plaintiff is an inadequate class representative for the simple reason that he has proven himself to be disinterested in this litigation. A named plaintiff fails to qualify as an adequate representative, where his "participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987).

Plaintiff's meager involvement in this lawsuit fails to meet this threshold. By his own telling, Plaintiff has extensive professional experience "designing and implementing retirement plans," including 401(k)s and IRAs, and is a certified as a Retirement Planning Counselor. Berry Dep. at 12-13. Yet Plaintiff is entirely ignorant of the claims asserted in his own case. When asked what was "inappropriate[]" about how Wells treated his deferred compensation, Plaintiff could state only that he "felt [he] deserved [his] deferred comp." *Id*. at 22. Plaintiff undertook no investigation of his claims other than to "Google" his attorney and law firm. *Id*. at 26. He has no

- 24 -

understanding as to whether other class members signed similar compensation agreements as did he. *Id*. at 39-40. Plaintiff also lacks familiarity with the key Deferral Plan documents or summaries that govern the plan at issue in this case. *Id*. at 73-74. Plaintiff did not even know that the Court had dismissed some of his claims. *Id*. at 92. Nor does Plaintiff know what remedies he is seeking from Wells Fargo. *Id*. at 95. Most egregiously, Plaintiff does not know if he was ever a participant in the Deferral Plan:

> Q. Were you a participant in the Wells Fargo deferral plan?
>
> A. Do you mean salary deferral plan?
>
> Q. I'm referring to the Wells Fargo Performance Award Contribution and Deferral Plan.
>
> A. I -- I --
>
> …
>
> A. I -- I don't know. There were so many plans. I couldn't -- I -- I don't know.

*Id*. at 41.

Plaintiff clearly fails to meet the adequacy threshold. He does not understand the legal theories at issue, has not reviewed key documents, and undertook no investigation of his claims. He has not demonstrated even the barest involvement in the case. Indeed, he could not be bothered to review documents pertaining *to his own awards* when they were first sent or to take an interest in the Deferral Plan's terms when he was a current participant. Plaintiff could not even affirmatively state that he was a participant in the only plan at issue in this litigation *after nearly a year litigating this case*. Plaintiff has exhibited a startling lack of involvement and interest in his own benefits, and there is no evidence to suggest that he will now seek to protect the interests of complete strangers, including those who still have awards in the plan. As such, his motion fails in its entirety on this ground as well.

**B.     Plaintiff Cannot Satisfy Any of the Requirements of Rule 23(b)**

Plaintiff must also satisfy the requirements of at least one provision of Rule 23(b). He seeks to bring a class both under Rule 23(b)(1), which requires a showing that there is risk of inconsistent adjudications, and Rule 23(b)(3), which requires a showing that common questions of law or fact predominate over individualized issues and that that a class action is superior to other means of adjudication. Fed. R. Civ. P. 23(b).

Plaintiff does not attempt to distinguish which of his counts correspond to the respective provisions under Rule 23(b). Nonetheless, the remedies sought in each of Counts I and IV dictate the provisions of Rule 23(b) under which Plaintiff must proceed. Due to the limited procedural safeguards provided for classes certified under Rule 23(b)(1), certification under that provision is proper only where the relief sought is primarily not for monetary damages. Count I may only proceed, if at all, under that provision. Count IV's express request for monetary relief places it squarely within the ambit of Rule 23(b)(3).

**1.     Plaintiff Fails to Show That Certification Under Rule 23(b)(1) Is Proper**

Plaintiff first seeks to certify a class under Rule 23(b)(1). Such a class is improper for Count IV, which seeks money damages in the form of reimbursements of amounts forfeited under the Deferral Plan. It is well established that certification under 23(b)(1) is not appropriate where the action is primarily for monetary damages. *See Dukes,* 564 U.S. at 347; *Zimmerman v. Bell*, 800 F.2d 386, 389 (4th Cir. 1986) (affirming denial of certification under Rule 23(b)(1) where plaintiff sought money damages). Rule 23(b)(1) classes do not offer the procedural protections to absent class members of notice and an opportunity to opt out. *Dukes*, 564 U.S. at 362. When a class action is predominantly for money damages, the "absence of notice and opt-out violates due process." *Id.* at 363. Plaintiff cannot credibly claim that this case (and Count IV

- 26 -

in particular) is not predominantly one for monetary damages. Am. Compl. at ¶ 93; Berry Dep. at 30 (stating that Plaintiff's basis for this lawsuit is "for funding and fulfillment of the obligation to pay me in retirement for my deferred comp"), 89 (stating that Plaintiff's reason for initiating this lawsuit as "I felt like that that [sic] money belonged to me and not to Wells. And so I wanted to sue Wells because of that").

A Rule 23(b)(1) class is inappropriate in this case for injunctive or declaratory relief, as well. As noted above, Plaintiff has no standing to pursue those claims and no interest in the Deferral Plan's continued operation. Because he has no basis to continue litigating those claims, the proposed class fails as to Count I.

Similarly, Plaintiff's proposed Rule 23(b)(1) class fails because it creates a conflict of interest between members. While Plaintiff's proposed class includes only former participants, the relief he seeks plainly would affect the interests of individuals currently holding awards in the plan. Rule 23(b)(1), however, does not allow for notice and an opportunity to opt-out of the class. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833-34 (1999); *see also Cuming v. S.C. Lottery Comm'n*, Civil Action No. 3:05-cv-03608-MBS, 2008 WL 906705, at *6 (D.S.C. Mar. 31, 2008) ("Because Rule 23(b)(1) has the effect of preventing individual members from opting-out of the class to pursue separate litigation that might prejudice the class or defendant, class actions qualified under this rule are often called 'mandatory.'") (citation omitted). A ruling in Plaintiff's favor on the merits of the case would impact not only members of the class, but *all current participants* in the Deferral Plan. Plaintiff's attempt to evade any conflict with current participants has the opposite effect. It exposes the fact that Plaintiff's claims and proposed class as constituted strip current plan participants of all due process rights.

**2.      Plaintiff Fails to Show That Certification Under Rule 23(b)(3) Is Proper**

Plaintiff has not demonstrated that his claims satisfy the predominance and superiority requirements of Rule 23(b)(3). Factors relevant to these determinations include "the class members' interests in individually controlling the prosecution or defense of separate actions" and "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b). "The Rule 23(b) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (citation omitted). The predominance requirement is "far more demanding" than Rule 23(a)(2) requirement of commonality. *Id*. at 624; *Gariety v. Grant Thornton LLP*, 368 F.3d 356, 362 (4th Cir. 2004) (same). The predominance inquiry is "designed for situations in which class-action treatment is not as clearly called for." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (internal citation and quotation omitted). Under this inquiry, the court must "assesses whether a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." *In Re Processed Egg Prod. Antitrust Litig*., 312 F.R.D. 124, 142 (E.D. Pa. 2015) (citation omitted.) Superiority under Rule 23(b)(3) requires that plaintiffs demonstrate that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Martin v. Ford Motor Co*., 292 F.R.D. 252, 282 (E.D. Pa. 2013) (internal citation and quotation omitted).

Plaintiff's failure to demonstrate a common issue under Rule 23(a)(2) dooms his attempt to certify a Rule 23(b)(3) class. Under the standards set forth in *Dukes*, courts find that, where plaintiffs have provided "no convincing proof of a companywide [unlawful] policy[,] they have not established the existence of any common question." *Ruiz v. Citibank, N.A*., 93 F. Supp. 3d 279, 290 (S.D.N.Y. 2015) (*citing Dukes*, 131 S. Ct. at 2556-57). If there are no common

questions, then common questions cannot predominate over individual questions. *Ruiz*, 93 F. Supp. 3d at 295 (*citing Amchem Prods., Inc.,* 521 U.S. at 624).

Because Plaintiff has failed to meet his burden under Rule 23(a), the Court can automatically reject certification under the more rigid requirements of 23(b)(3). *See Semenko v. Wendy's Int'l., Inc*., No. 2:12-CV-0836, 2013 WL 1568407, at *10 (W.D. Pa. Apr. 12, 2013); *see also Bennett v. Hayes Robertson Grp., Inc*., 880 F. Supp. 2d 1270, 1282 (S.D. Fla. 2012) ("Because the Court is not satisfied that all of the elements of Rule 23(a) have been met, it need not shift to an analysis under Rule 23(b)(3)").

Even if the Court determines that common questions would drive the resolution of this case, class certification is not warranted because Plaintiff has not met—and cannot meet—his burden as to the predominance and superiority requirements. With respect to the former, to the extent common questions exist, they are far outweighed by the individualized issues discussed above. In particular, the Court must conduct individualized inquiries into the compensation packages received by putative class members that were specifically awarded to offset forfeitures under the Deferral Plan. Similarly, the Court must determine whether each individual class member had actual notice of the claims raised in this lawsuit within three years of Plaintiff filing it. These issues do not merely relate to calculating damages. They are necessary to determine whether Wells Fargo is liable to any given class member in the first instance.

*Tolbert* is again instructive. In *Tolbert*, the plaintiff challenged a forfeiture clause of a top hat plan. The court noted that "[e]ach class member's recovery would be based on the amount forfeited in his or her account, and would, by necessity, require individual damages calculations." 2016 WL 3034497, at *8. The individualized nature of the forfeiture award meant that class certification was improper: "[b]ecause each individual class member who incurred a

forfeiture would, under Plaintiffs' theory of recovery, be entitled to recovery of such sum, the

Court is not convinced that the 'predominance' and 'superiority' factors are met in this case." *Id.*

This case presents the identical issue—whether amounts in a top hat plan subject to forfeiture are

suitable for class treatment—and commands the same outcome. Because each class member

would have to show—on individualized bases—actual harm, the amount of damages allegedly

suffered, and the date upon which his or her claims accrued, any common issues that might exist

do not predominate and a class action is not a superior method of adjudication.

Moreover, Plaintiff fails to prove that any of the relevant factors in Rule 23(b)(3) are

satisfied here. Memo. at 17. He pays lips service to the method of calculating damages and

makes the unsupported assertion that "[t]he 1,400 hundred members of the class are not

unmanageable." *Id.* Given the complicated individual issues here, this is a baseless assumption.

Further, Plaintiff wholly ignores a primary factor in certifying a class: "the class

members' interests in individually controlling the prosecution or defense of separate actions."

Fed. R. Civ. B. 23(b)(3). "Consistent with this policy and the recognition that class actions are

the exception rather than the rule, courts routinely conclude that the class action is not a superior

mechanism where individuals have sufficient incentives to pursue their own legal redress."

*Plotnick v. Computer Sciences Corp. Deferred Comp. Plan for Key Execs.*, 182 F. Supp. 3d 573,

590 (E.D. Va. 2016) (collecting cases). The Supreme Court has stated that:

> [T]he policy at the very core of the class action mechanism is to overcome the
> problem that small recoveries do not provide the incentive for any individual to
> bring a solo action prosecuting his or her rights. A class action solves this
> problem by aggregating the relatively paltry potential recoveries into something
> worth someone's (usually an attorney's) labor.

*Amchem Prods.,* 521 U.S. at 617. Accordingly, courts typically look at the potential recovery for

each class member in assessing whether they have important interests in bringing individual

actions. *See, e.g., Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 678 (7th Cir. 2001) (holding

that "it is unnecessary to certify a nationwide class. Each [class member] has a substantial claim, of the sort that could be, and often is, pursued independently."); *see also Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190-91 (9th Cir. 2001) (finding failure to demonstrate superiority when allegations of the minimum amount in controversy for each putative class member exceeded $50,000); *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 633 (3d Cir. 1996) (quoting Rule 23 advisory committee's note and stating that class action was not a superior means for resolving claims where "the amounts at stake for individuals" were not "so small that separate suits would be impracticable" and instead "[p]laintiffs have a substantial stake in making individual decisions on whether and when to settle."); *Benner v. Becton Dickinson & Co.*, 214 F.R.D. 157, 173 (S.D.N.Y. 2003) (finding superiority not met where each class member's alleged damages exceeded $75,000).

Tellingly, Plaintiff fails to mention the potential recoveries for class members. Although the number fluctuated from year to year, for the period 2011 through 2016, the *average* forfeiture per individual was ███████. Supp. Responses at 4-5. Each putative class member thus has a substantial stake in litigating his or her individual claims and deciding when and whether to settle.

Moreover, putative class members are well-equipped to pursue their own remedies. As financial advisors for a "major multinational corporation," members of the proposed class are all "highly compensated and presumably financially sophisticated." *Plotnick*, 182 F. Supp. 3d at 591 (denying class certification in part on superiority grounds). Plaintiff's proposed class thus fails to satisfy even the most fundamental rationale underlying class actions. This basis alone should preclude class certification.

## CONCLUSION

For the foregoing reasons, Count I should be dismissed in its entirety for Plaintiff's lack of standing to seek prospective relief. Plaintiff's motion should also be denied in its entirety because he has failed to meet his burden of proof to show that all requisite elements of Rule 23 have been met. With respect to both Counts I and IV, Plaintiff fails to meet his burden to establish Rule 23(a)'s commonality, typicality, and adequacy requirements. Count I also fails to satisfy the requirements of Rule 23(b)(1) because it creates intra-class conflicts. Count IV fails under Rule 23(b)(3) because commons issues—to the extent they exist—do not predominate over individual issues, and class adjudication is not a superior method for resolving Plaintiff's claims.

Respectfully submitted,

By: */s/ Adam N. Yount*

Adam N. Yount, Fed. ID 10313
Robert Knowlton, Fed. ID 2380
Pierce MacLennan, Fed. ID 12008
**HAYNSWORTH SINKLER BOYD, P.A.**
134 Meeting Street, Third Floor (29401)
P.O. Box 340
Charleston, SC 29402-0340
Telephone: (843) 722-3366
Facsimile: (843) 722-2266
ayount@hsblawfirm.com
bknowlton@hsblawfirm.com
pmaclennan@hsblawfirm.com

Frederick T. Smith (*pro hac vice*)
SEYFARTH SHAW LLP
1075 Peachtree Street NE, Suite 2500
Atlanta, GA 30309
Telephone: (404) 888-1021
Facsimile: (404) 892-7056
fsmith@seyfarth.com

Amanda A. Sonneborn (*pro hac vice*)
Christopher M. Busey (*pro hac vice*)
SEYFARTH SHAW LLP
233 S. Wacker Drive, Suite 8000
Chicago, Illinois 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000
asonneborn@seyfarth.com
cbusey@seyfarth.com

March 29, 2018

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 29, 2018, the foregoing was served by ECF on all counsel of record, including:

William P. Tinkler
William H. Narwold
Motley Rice LLC
28 Bridgeside Blvd.
Mt. Pleasant, South Carolina
29464
bnarwold@motleyrice.com
wtinkler@motleyrice.com

Mark P. Kindall
Douglas P. Needham
Izard Kindall and Raabe LLP
305 Main Street
West Hartford, CT 06107
mkindall@ikrlaw.com
dneedham@ikrlaw

Thomas R. Ajamie
David S. Siegel
John S. Edwards, Jr.
AJAMIE LLP
Pennzoil Place - South Tower
711 Louisiana, Suite 2150
Houston, Texas 77002
tajamie@ajamie.com
dsiegel@ajamie.com
jedwards@ajamie.com

*/s/ Adam N. Yount*