IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| ROBERT BERRY, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | § § § § | |
| Plaintiff, | § § | Civil Action No. 3:17-cv-00304-JFA |
| VS. | § § | |
| WELLS FARGO & COMPANY, WELLS FARGO CLEARING SERVICES, LLC, and WELLS FARGO ADVISORS FINANCIAL NETWORK, LLC, and DOES 1 thru 50, | § § § § § § | |
| Defendants. | § § | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................... 2

    A.    Summary of Claims ................................................................................... 2

    B.    Procedural History .................................................................................... 3

    C.    Discovery ................................................................................................... 4

        1.    Discovery Requests and Documents ............................................ 4

        2.    Third-Party Subpoenas ................................................................ 5

        3.    Motion Practice ............................................................................ 5

        4.    Expert Discovery ......................................................................... 6

        5.    Depositions .................................................................................. 7

    D.    Settlement Negotiations ............................................................................ 7

III.  OVERVIEW OF THE SETTLEMENT AGREEMENT ...................................... 8

    A.    The Settlement Class ................................................................................. 8

    B.    The Settlement Relief ................................................................................ 9

    C.    Released Claims ........................................................................................ 9

    D.    Case Contribution Award, Attorneys' Fees, and Costs ........................... 10

IV.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ................... 10

V.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ......... 11

    A.    Plaintiff and Class Counsel Diligently Prosecuted the Action and Negotiated the Settlement Agreement at Arm's Length ......................... 13

    B.    The Relief Provided by the Settlement is Adequate in Light of the Costs, Risks, and Delay of Litigation ............................................... 15

        1.    The Risk of Proving Liability ..................................................... 16

        2.    The Risk in Proving Damages .................................................... 18

        3.    Several Other Factors Favor the Settlement .............................. 19

C.    The Settlement Provides an Effective Means of Distributing the
      Settlement Fund to Class Members ...................................................... 20

D.    The Provisions of the Settlement Related to Attorneys' Fees are
      Reasonable ......................................................................................... 21

E.    The Settlement Treats Class Members Equitably Relative to Each Other ........... 22

VI.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN ...................... 23

VII.    PROPOSED SCHEDULE ............................................................................... 24

VIII.    CONCLUSION .............................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*ADESSO Homeowners' Ass'n v. Holder Props., Inc.*,
   No. 3:16-cv-710, 2017 WL 11272589 (D.S.C. May 23, 2017) ................................................ 23

*Alexander v. Brigham & Women's Physicians Org., Inc.*,
   513 F.3d 37 (1st Cir. 2008) ........................................................................ 3, 17, 20

*Belka v. Rowe Furniture Corp.*,
   571 F. Supp. 1249 (D. Md. 1983) ............................................................ 17

*Berry v. Wells Fargo & Co.*,
   2018 U.S. Dist. LEXIS 220095 (D.S.C. Oct. 9, 2018) ........................... 4

*Browe v. CTC Corp.*,
   331 F. Supp. 3d 263 (D. Vt. 2018) ......................................................... 17

*Callan v. Merrill Lynch & Co.*,
   No. 09-cv-566, 2010 WL 3452371 (S.D. Cal. Aug. 30, 2010) ........... 16, 20

*Chisolm v. TranSouth Fin. Corp.*,
   184 F.R.D. 556 (E.D. Va. 1999) ............................................................ 19

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ............................................................... 15

*Daft v. Advest, Inc.*,
   658 F.3d 583 (6th Cir. 2011) ................................................................. 20

*Deem v. Ames True Temper, Inc.*, No. 6:10-cv-01339,
   2013 U.S. Dist. LEXIS 72981 (S.D. W.Va. May 23, 2013) ................. 13

*Demery v. Extebank Deferred Comp. Plan (B)*,
   216 F.3d 283 (2d Cir. 2000) .................................................................. 17

*Duggan v. Hobbs*,
   99 F.3d 307 (9th Cir. 1996) ................................................................... 17

*Flinn v. FMC Corp.*,
   528 F.2d 1169 (4th Cir. 1975) ............................................................... 16

*Forte v. BNP Paribas*,
   No. 14-cv-8556, 2015 WL 3604317 (S.D.N.Y. 2015) ........................ 18

*Frommert v. Becker*,
   153 F.Supp. 3d 599 (S.D.N.Y. 2016) ................................................... 18

iii

*Guiragoss v. Khoury*,
　　444 F. Supp. 2d 649 (E.D. Va. 2006) ........................................................ 18

*Hahn v. Nat'l Bank, N.A.*,
　　99 F.Supp.2d 275 (E.D.N.Y. 2000) ......................................................... 18

*In re Jiffy Lube Sec. Litig.*,
　　927 F.2d 155 (4th Cir. 1991) ............................................................ 13, 14

*In re LandAmerica §1031 Exch. Servs., Inc. IRS §1031 Tax Deferred Exch. Litig.*, No. 2054,
　　2012 U.S. Dist. LEXIS 97933 (D.S.C. July 12, 2012) ........................................ 12

*Krueger v. Ameriprise Financial*,
　　No. 11-cv-2781, 2015 WL 4246879 (D. Minn. July 13, 2015) ............................... 15, 20

*Kruger v. Novant Health, Inc.*,
　　No. 1:14-cv-208, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) ................................. 21

*Kruger v. Novant Health*,
　　No. 1:14-cv-208, 2016 WL 6775855 (M.D.N.C. Sept. 29, 2016) ................................. 15

*Lomascolo v. Parsons Brinckerhoff, Inc.*,
　　No. 1:08-cv-1310, 2009 WL 3094955 (E.D. Va. 2009) ...................................... 15, 18

*McClaran v. Carolina Ale House Operating Co., LLC*,
　　No. 3:14-cv-03884-MBS, 2015 WL 5037836 (D.S.C. Aug. 26, 2015) ............................. 22

*McCurley v. Flowers Foods, Inc.*,
　　No. 5:16-CV-00194-JMC, 2018 WL 6650138 (D.S.C. Sept. 10, 2018) ........................... 22

*Montague v. Dixie Nat'l Life Ins. Co.*,
　　No. 3:09-cv-00687, 2011 WL 3626541 (D.S.C. Aug. 17, 2011) ................................. 21

*Mullane v. Cent. Hanover Bank Tr. Co.*,
　　339 U.S. 306 (1950) .................................................................. 23, 24

*Nolte v. CIGNA Corp.*,
　　No. 2:07-cv-2046, 2013 WL 12242015 (C.D. Ill. Oct. 15, 2013) ............................... 15

*Paul v. RBC Capital Mkts. LLC*,
　　No. C16-5616, 2018 WL 3630290 (W.D. Wa. July 31, 2018) ................................. 19, 20

*Pender v. Bank of Am. Corp.*,
　　736 Fed. App'x 359 (4th Cir. 2018) ..................................................... 18, 19

*Reed v. Big Water Resort, LLC*,
　　No. 2:14-cv- 01583-DCN, 2016 U.S. Dist. LEXIS 11227 (D.S.C. Feb. 1, 2016) ............. 11, 22

*Robinson v. Carolina First Bank NA*,
    No. 7:18-cv-02927-JDA, 2019 WL 2591153 (D.S.C. June 21, 2019) ..................................... 14

*Robinson*, *Carolina First Bank NA*,
    No. 7:18-cv-02927-JDA, 2019 WL 719031 (D.S.C. February 14, 2019) ................................ 15

*Savani v. URS Prof'l Sols. LLC*,
    121 F. Supp. 3d 564 (D.S.C. 2015) ........................................................................................... 22

*S.C. Nat'l Bank v. Stone*,
    749 F. Supp. 1419 (D.S.C. 1990) .............................................................................................. 12

*Sikora v. UPMC*,
    876 F.3d 110 (3d Cir. 2017) .............................................................................................. 17, 20

*Temp. Servs. v. Am. Int'l Grp., Inc.*, No. 3:08-cv-00271-JFA,
    2012 U.S. Dist. LEXIS 131201 (D.S.C. Sept. 14, 2012) .......................................................... 14

*Tolbert v. RBC Capital Markets et al.*,
    No. H-11-107, 2016 WL 3034497 (S.D. Tex. May 26, 2016) .................................................. 20

*Tolbert v. RBC Capital Markets*,
    2015 WL 2138200 (S.D. Tex. Apr. 28, 2015) ........................................................... 16, 17, 18

*Tolbert v. RBC Capital Mkts. Corp.*,
    758 F.3d 619 (5th Cir. 2014) ...................................................................................................... 3

*United States v. North Carolina*,
    180 F.3d 574 (4th Cir. 1999) .................................................................................................... 15

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .................................................................................................................. 12

*Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC*,
    859 F.3d 295 (4th Cir. 2017) .................................................................................................... 23

**Statutes**

ERISA § 203(a)(2)(B)(iii) 29 U.S.C 1053(a)(2)(B)(iii) ............................................................. 15

28 U.S.C. § 1715 .......................................................................................................................... 24

ERISA § 502(a)(3) 29 U.S.C. § 1132(a)(3) ................................................................................. 18

ERISA § 201 29 U.S.C. § 1051(2) ................................................................................................. 3

**Rules**

FED. R. CIV. P. 23 .................................................................................................. 10, 12, 25

FED. R. CIV. P. 23(a) ................................................................................................ 4, 10, 11

FED. R. CIV. P. 23(b) ....................................................................................................... 10

FED. R. CIV. P. 23(b)(1) ............................................................................................... 4, 11

FED. R. CIV. P. 23(b)(1)-(3) ............................................................................................. 11

Fed. R. Civ. P. 30(b)(6) ..................................................................................................... 4

FED. R. CIV. P. 23(e) ........................................................................................................ 12

FED. R. CIV. P. 23(e)(1) .................................................................................................... 23

FED. R. CIV. P. 23(e)(1)(B)(i) ........................................................................................... 12

FED. R. CIV. P. 23(e)(2) ............................................................................................... 12, 13

FED. R. CIV. P. 23(e)(2)(D) ............................................................................................... 22

FED. R. CIV. P. 23(e)(3) .................................................................................................... 13

FED. R. CIV. P. 23(h)(1) .................................................................................................... 22

**Other Authorities**

Newberg on Class Actions, §§ 8:15, 8:17, 13.1 ........................................................ 12, 24

Manual for Complex Litigation, Fourth, MCL § 21.632-21.634 (2019) ....................................... 12

Plaintiff Robert F. Berry ("Plaintiff" or "Class Representative"), on his own behalf and on behalf of the Class Members defined below (collectively, "Plaintiffs"), respectfully submits this Memorandum of Law in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement.[1]

## I.    INTRODUCTION

Plaintiff's central claim is that he should not have forfeited his deferred compensation in the Wells Fargo Advisors, LLC Performance Award Contribution & Deferral Plan (the "Deferral Plan") when he stopped working for Wells Fargo in 2014. More specifically, he challenges whether the Deferral Plan is a "top hat" plan under the Employee Retirement Income Security Act of 1974 ("ERISA") and exempt from ERISA's vesting and forfeiture provisions. Plaintiff contends that, if the Deferral Plan is not a "top hat" plan, then he and the other members of the Settlement Class are entitled under ERISA to recover the deferred compensation they forfeited. Defendants have consistently denied the allegations throughout the litigation.

The Settlement resolves Plaintiff's and the Settlement Class's claims for $79 million. The Settlement Amount of $79 million is a non-reversionary common fund (i.e., it is not a claims-made settlement) and is an outstanding recovery that is in the best interests of the Class Members. It is the result of extensive arm's-length negotiations between the parties after three years of hard-fought litigation and three mediation sessions with Hunter Hughes III, a mediator with substantial experience in resolving ERISA class actions.

---

[1]    The capitalized terms used herein have the same definitions as in the Settlement Agreement, which is attached as Exhibit A.  Although Defendants Wells Fargo & Company, Wells Fargo Clearing Services, LLC f/k/a Wells Fargo Advisors, LLC, and Wells Fargo Advisors Financial Network LLC (collectively, "Defendants" or "Wells Fargo") support the motion, this memorandum has been prepared solely by Plaintiff's counsel.

As more fully described below, the Settlement is fair, reasonable, adequate, and warrants this Court's preliminary approval, particularly given the risk that continued litigation, including summary judgment motions, trial, and appeal, may result in a smaller recovery—or no recovery at all. Plaintiff requests that this Court enter the Order Preliminarily Approving Settlement Class and Settlement and Providing for Notice, which: (1) preliminarily approves the Settlement and Settlement Class;[2] (2) approves the Parties' proposed form and method for giving notice of this Litigation and the Settlement to the Class; (3) directs that notice be given to Class Members as approved by the Court; and (4) schedules a hearing at which the Court will consider final approval of: (a) the Settlement and entry of the proposed Final Approval Order and Judgment; (b) the Plan of Allocation of settlement proceeds; and (c) Class Counsel's request for an award of attorneys' fees, expenses, and costs, and a Case Contribution Award to the Class Representative.

## II.     BACKGROUND

The proposed Settlement is a culmination of three years of litigation, which included: (1) Plaintiff's extensive investigation into potential claims against Defendants regarding his deferred compensation under the Deferral Plan; (2) the filing of two detailed complaints; (3) Defendants' motion to dismiss; (4) Plaintiff's motion for class certification; (5) Plaintiff's motion to compel and motion for protective order; (6) extensive fact and expert discovery; and (7) three mediation sessions with a highly experienced mediator.

### A.     Summary of Claims

The Deferral Plan provided certain deferred compensation benefits for financial advisors employed by Wells Fargo Clearing Services, LLC f/k/a Wells Fargo Advisors, LLC ("WFA").

---

[2] Although the Court previously granted class certification, the proposed Settlement Class amends the class definition to exclude a small number of individuals who previously released the claims being settled here.

2

Plaintiff worked as a WFA financial advisor from 1994 until 2014. *See* ECF No. 22, ¶ 4. From 2005 to 2014, Plaintiff participated in the Deferral Plan. *See id.* at ¶ 17. Section 5.05 of the Deferral Plan contains a "Forfeiture Clause" under which participants forfeited the unvested portions of their plan accounts when they left WFA. *Id.* at ¶ 44.

In 2014, Plaintiff left WFA after 20 years of service. *Id.* at ¶ 5. After he left WFA, the Deferral Plan's Administrator invoked the Forfeiture Clause, causing Plaintiff to lose nearly $200,000 in deferred compensation. *Id.* at ¶ 17.

Defendants claimed that the Deferral Plan's Forfeiture Provision was valid and enforceable because the Deferral Plan is a "top hat" plan offered to "a select group of management and other highly compensated individuals," as defined by ERISA. *Id.* at ¶¶ 15–16; *see also* ECF 26 at 2, n. 2. Under ERISA, a "top hat" plan is "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1051(2); *Tolbert v. RBC Capital Mkts. Corp.*, 758 F.3d 619, 626 (5th Cir. 2014). Top hat plans are not subject to ERISA's funding, vesting, and non-forfeitability requirements. *See, e.g.*, *Alexander v. Brigham & Women's Physicians Org., Inc.*, 513 F.3d 37, 46 (1st Cir. 2008). Plaintiff alleged that the Deferral Plan is not a "top hat" plan and, thus, Defendants violated ERISA by forfeiting his and the class members' awards under the Deferral Plan when they left WFA. ECF No. 22, ¶¶ 34-39, 64-69.

### B.     Procedural History

Plaintiff filed his Complaint (ECF No. 1) against Wells Fargo on February 1, 2017, and his First Amended Class Action Complaint ("Amended Complaint") (ECF No. 22) on May 1, 2017. On May 22, 2017, Wells Fargo moved to dismiss, in part, the Amended Complaint (ECF No. 26). After extensive briefing from both sides (*see*, *e.g.*, ECF Nos. 26, 30, 34, 44, and 45) and a hearing, the Court granted, in part, Defendants' motion to dismiss (ECF No. 47).

3

Discovery was bifurcated. *See* ECF No. 50. In the class certification stage, Plaintiff served requests for production and interrogatories, and deposed two Wells Fargo corporate representatives under Fed. R. Civ. P. 30(b)(6). Plaintiff's counsel also reviewed the thousands of pages of documents and information that Defendants produced related to class discovery.

Defendants served one set of requests for production and one set of interrogatories to Plaintiff during class discovery. In response, Plaintiff produced 213 pages of documents.

Plaintiff then moved for class certification (ECF No. 62) on March 1, 2018, which Wells Fargo opposed (ECF No. 66). The Court held a hearing on October 1, 2018. ECF No. 84. The Court issued a written opinion certifying the Class under Rules 23(a) and (b)(1) on October 10, 2018. *Berry v. Wells Fargo & Co.*, 2018 U.S. Dist. LEXIS 220095 (D.S.C. Oct. 9, 2018); ECF Nos. 85 & 86 (the "Class Certification Order"). The Court defined the Class as:

> All participants in the Wells Fargo Advisors Performance Award Contribution and Deferral Plan (the "Deferral Plan") since February 1, 2011, who earned deferred compensation under the Deferral Plan and were denied compensation under the Deferral Plan's Forfeiture Clause (§ 5.05).

2018 U.S. Dist. LEXIS 220095, at *37-38. The Court also appointed Plaintiff Robert F. Berry as Class representative and his counsel as Class counsel. *Id.* at *38. Because a class certified under Rule 23(b)(1) does not require notice to class members or permit class members to opt-out, the Court held that "no notice or deadline for Class members to opt-out will be necessary." *Id.*

## C.    Discovery

The Parties engaged in extensive fact and expert discovery, as described below.

### 1.    Discovery Requests and Documents

After the class was certified, Plaintiff engaged in extensive document discovery during the fact and expert stages. In total, Plaintiff served nine sets of requests for production ("RFPs") containing 128 RFPs, six sets of interrogatories containing 23 interrogatories, and four sets of

requests for admission ("RFAs") containing 77 RFAs. In response, Defendants produced over 275,000 pages of documents, including voluminous data sets, in 36 separate productions. Several documents were highly technical, requiring a detailed understanding of the Deferral Plan's unique terms, how Defendants operated the Deferral Plan, and deferred compensation plans in general. Other documents were Excel spreadsheets containing tens of thousands of rows of information, necessitating an in-depth understanding from Class Counsel about what the information meant and how it was relevant to the Plaintiff's claims.

### 2.     Third-Party Subpoenas

Plaintiff served a document subpoena on Dechert LLP on August 23, 2019. The subpoena sought documents related to an expert witness of Defendants. Dechert LLP objected to the subpoena but, after many rounds of negotiation, ultimately produced 582 pages of documents.

Defendants served document subpoenas on LPL Financial LLC, J.J.B. Hilliard, W.L. Lyons LLC, and Raymond James Financial Services, Inc. on September 30 and October 1, 2019. These subpoenas sought documents showing the compensation of certain Class Members. *See* ECF Nos. 104-1, 104-2 and 104-3. Plaintiff filed a motion for protective order and to quash these subpoenas (ECF No. 104) on October 10, 2019. To avoid unnecessary briefing, the parties requested and the Court ordered that Defendants' deadline to respond to this motion would be November 7, 2019—after the third mediation. *See* ECF No. 106. Because the Parties reached an agreement in principle to settle the case at their third mediation on October 30, 2019, Defendants did not respond to and the Court did not rule on Plaintiff's motion.

### 3.     Motion Practice

Plaintiff filed a motion to compel (ECF No. 77) on August 16, 2018. Plaintiff sought an order compelling Defendants to produce (1) salary and compensation data of non-participants in the Deferral Plan from 2011–2017; (2) all emails and other documents about whether the Deferral

Plan qualifies as a top-hat plan; and (3) documents identifying Defendants' other purported top-hat plans, the number of participants in them, and their compensation. Defendants responded that this information was not relevant. ECF No. 79.

The Court granted Plaintiff's motion to compel in part (ECF Nos. 87 & 88) on October 10, 2018. The Court ordered Defendants to produce all compensation data for all employees who did not receive awards in the Deferral Plan, and to produce documents identifying Defendants' other "top hat" plans, the number of participants in those plans, and the participants' compensation. *Id.* at 8 and 11. Based on Defendants' willingness to negotiate over the production of electronic documents, the Court deferred ruling on Plaintiff's request for Defendants to produce emails and other documents about whether Defendants treated the Deferral Plan as a top-hat plan. *Id.* at 9.

The parties met and conferred on many occasions to discuss various other discovery issues. These meet-and-confer sessions occurred primarily by email or phone. For example, the parties conferred by email or phone about discovery issues on multiple occasions, including in December 2017, January 2018, May 2018, July 2018, August 2018, October–December 2018, and January–October 2019. Issues discussed by email or phone included compensation of non-participants in the Deferral Plan; electronically stored information; native files; award, eligibility, and participation criteria; workforce, compensation, and forfeiture data; and depositions.

### 4.     Expert Discovery

The parties designated experts and produced expert reports. Plaintiff designated Saul Solomon as an expert witness on the selectivity of the Deferral Plan, the compensation of participants in the Deferral Plan, and damages to the Class. Mr. Solomon produced expert reports on August 30, 2018, July 2, 2019, and October 1, 2019. He was scheduled to be deposed in November 2019 when the parties agreed to settle the case.

Defendants designated three expert witnesses, each of whom was also scheduled to be deposed in November 2019. Defendants designated Laura Simmons as a rebuttal witness to Mr. Solomon. Ms. Simmons is a Senior Advisor with Cornerstone Research. She produced an expert report on August 19, 2019. Defendants designated Brian Dunn as a rebuttal expert to Mr. Solomon to opine about the general nature of deferred-compensation plans in the financial advisory industry. Mr. Dunn is a compensation consultant. He produced an expert report on August 19, 2019. Defendants designated Andrew L. Oringer as a rebuttal expert witness to Mr. Solomon to opine on certain aspects of ERISA's "top hat" exemption's statutory language. Mr. Oringer is an attorney and co-chair of the ERISA and Executive Compensation Group of Dechert LLP. He produced an expert report on August 19, 2019.

### 5. Depositions

The parties deposed multiple fact witnesses. Defendants deposed Plaintiff in January 2018 in Columbia, South Carolina. Plaintiff took ten depositions of Defendants' employees in St. Louis, Missouri, and Charlotte, North Carolina, between January 2018 and October 2019. As noted above, before agreeing to the Settlement, the parties were planning to depose the four expert witnesses in Houston, Texas, Washington, D.C., and New York, New York, in November 2019.

### D. Settlement Negotiations

The parties attended three mediation sessions with Hunter R. Hughes III. Mr. Hughes has a nationwide mediation practice that focuses on class actions, collective actions, and complex cases, primarily involving employment, securities, ERISA, and business disputes. He has mediated many class actions, including ones against Publix, Home Depot, and The Coca-Cola Company, and the Burlington Northern genetic testing litigation. He also mediated the class and collective actions against Boeing Aircraft Company, Abercrombie & Fitch, Xerox Corporation, and Cracker Barrel.

The first mediation session occurred on July 30, 2018, in Charlotte, North Carolina. The parties negotiated in good faith, but the case did not settle. The second mediation session occurred on August 26, 2019, in Charlotte, North Carolina. Although the case did not settle on this date, the parties agreed to mediate again. The third and final mediation session occurred on October 30, 2019, in Atlanta, Georgia. After nearly seven hours of hard-fought negotiations, the parties reached an agreement in principle to settle the case on October 30, 2019. At all times, the parties maintained their positions, with Plaintiff asserting his claims and Defendants consistently denying the allegations.

On November 4, 2019, the Parties filed a Joint Motion to Vacate Deadlines and Stay Proceedings to allow them additional time to finalize the terms of their agreement. ECF No. 107. The Court granted this motion on November 5, 2019, staying the case for 60 days and ordering the Parties to submit a motion for preliminary approval of settlement by December 30, 2019. This deadline was later extended until January 21, 2020, ECF No. 110, and then to January 31, 2020, ECF No. 112. During this time, the Parties negotiated the precise terms of the Settlement, signing it on January 31, 2020.

## III.     OVERVIEW OF THE SETTLEMENT AGREEMENT

### A.     The Settlement Class

The "Settlement Class" is defined as "all persons who participated in the Deferral Plan between February 1, 2011, and the Settlement Agreement Execution Date, earned deferred compensation under the Deferral Plan, were denied compensation under the Deferral Plan's Forfeiture Clause, and have not as of the Settlement Agreement Execution Date released, in writing, their right to recover unpaid deferred compensation under the Deferral Plan (i.e., a 'Prior Release')." Exhibit A, Settlement Agreement, § 2.34. The "Settlement Agreement Execution

Date" is defined as "that date on which the final signature is affixed to this Settlement Agreement." *Id*. at § 2.37.

The Settlement Class excludes only those members of the "Class" that the Court previously certified (ECF Nos. 85 and 86) who released their claims to deferred compensation under the Deferral Plan. To date, Defendants have identified nine individuals who expressly released the claims that are the subject of the Settlement.

### B.    The Settlement Relief

Under the Settlement Agreement, Defendants will contribute $79 million to the Settlement Fund. Exhibit A, Settlement Agreement, at §§ 5.4 and 5.5. The Settlement Fund will be used to compensate members of the Settlement Class, provide them with Notice, administer the Settlement, and pay any attorneys' fees, expenses, costs and Case Contribution Award that the Court may order. *Id*. at §§ 5.3, 6.6, 7.1, and 7.2.

After the payment of costs, expenses, and fees described above, the Settlement Fund will be distributed to members of the Settlement Class. *Id*. at § 6.4. Settlement Class Members will not have to make a claim. The amount each member will receive will be based on how much the person forfeited, the date of forfeiture and how many years of service the person had with Wells Fargo on the date of forfeiture. *See generally id*., Art. 6. Members of the Settlement Class will receive their share of the Settlement Fund by a check sent to their last known address. *Id*. at § 6.6.

### C.    Released Claims

In exchange for the relief described above, Plaintiff and the members of the Settlement Class will provide a release to Defendants covering their claims that were or could have been asserted in the Amended Complaint related to the Deferral Plan. *Id*. at § 2.34. The release also includes the calculation of each Settlement Class Member's share of the Settlement and tax liabilities made in accordance with the Plan of Allocation. *Id*.

### D.    Case Contribution Award, Attorneys' Fees, and Costs

Plaintiff intends to ask the Court for a Case Contribution Award in an amount not to exceed ten thousand dollars ($10,000.00) for his service to the Settlement Class. *Id.* at § 7.1. The Settlement is not contingent on the Court awarding Plaintiff a Case Contribution Award in that amount, or any amount. *Id.*

Class Counsel intends to submit a Fee and Expense Application, seeking an award of Attorneys' Fees not to exceed thirty percent (30%) of the Gross Settlement. *Id.* at § 7.2. Class Counsel also intends to ask the Court for an award of Expenses and Costs in an amount not to exceed five hundred thousand dollars ($500,000.00). *Id.* Any amounts awarded by the Court as Attorneys' Fees, Expenses and Costs shall be paid to Class Counsel out of the Qualified Settlement Fund. *Id.* The Settlement is not contingent on the Court granting Class Counsel's Fee and Expense Application, or awarding Class Counsel any amount of attorneys' fees, expenses or costs. *Id.*

## IV.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

In connection with preliminary approval, Plaintiff requests that the Court amend the previous Class Certification Order for settlement purposes only, to be the Settlement Class as defined in Section III.A above. Defendants consent to certification of the Settlement Class to effectuate the Settlement. Exhibit A, Settlement Agreement, at § 2.38. Class certification is appropriate here for settlement purposes because the requirements of both Rule 23(a) and Rule 23(b) are satisfied.

To qualify as a class action under Rule 23 of the Federal Rules of Civil Procedure, a plaintiff must satisfy the four requirements of Rule 23(a): (1) the class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) questions of law or fact common to the class must exist ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ("typicality"); and (4) the representative parties

must fairly and adequately protect the interests of the class ("adequacy of representation"). FED. R. CIV. P. 23(a). In addition to meeting the four prerequisites of Rule 23(a), the proposed class action must also be "maintainable" under one of the three categories found in Rule 23(b)(1)-(3). Plaintiffs seek to certify the proposed Settlement Class under Rule 23(b)(1).

The only differences between the Class definition in the Class Certification Order and the Settlement Class are that the latter ends the Class Period upon execution of the Settlement Agreement and excludes the approximately nine individuals who have previously released the claims at issue in this case. Below is a blackline comparison of the previous Class definition and the Settlement Class definition:

> All persons who ~~participants~~ participated in the Wells Fargo Advisors Performance Award Contribution and Deferral Plan (the "Deferral Plan") ~~since~~ between February 1, 2011, and the Settlement Agreement Execution Date, ~~who~~ earned deferred compensation under the Deferral Plan, ~~and~~ were denied compensation under the Deferral Plan's Forfeiture Clause (§ 5.05), and have not as of the Settlement Agreement Execution Date released, in writing, their right to recover unpaid deferred compensation under the Deferral Plan.

Thus, for the same reasons set forth in the Class Certification Order, both Rule 23(a) and Rule 23(b)(1) are satisfied with respect to the Settlement Class, and the Court should certify the Settlement Class and appoint Ajamie LLP, Motley Rice LLC, and Izard, Kindall & Raabe, LLP as Class Counsel for the Settlement Class.

## V.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g.*, *Reed v. Big Water Resort, LLC*, No. 2:14-cv- 01583-DCN, 2016 U.S. Dist. LEXIS 11227, at *9 (D.S.C. Feb. 1, 2016) ("There is a 'strong judicial policy in favor of settlements, particularly in the class action

context." (internal quotation marks omitted)). "'The voluntary resolution of litigation through settlement is strongly favored by the courts' and is 'particularly appropriate' in class actions." *In re LandAmerica §1031 Exch. Servs., Inc. IRS §1031 Tax Deferred Exch. Litig.*, No. 2054, 2012 U.S. Dist. LEXIS 97933, at *13-14 (D.S.C. July 12, 2012) (quoting *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990)).

Under Rule 23, courts considering approval of class action settlements follow a three-step procedure. *See* Manual for Complex Litigation, Fourth ("MCL"), §§ 21.632-21.634 (2019); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). First, a court must preliminarily approve the proposed settlement. *See* MCL § 21.632. Second, notice of the settlement is sent to all affected class members. *Id*. § 21.633. Third, the court holds hearing at which class members may be heard regarding the settlement, and at which evidence and argument concerning the settlement's fairness, adequacy, and reasonableness may be presented. *Id*. § 21.634. This procedure safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests. *See* William B. Rubenstein, Newberg on Class Actions § 13.1 (5th ed. updated 2019).

Preliminary approval of the proposed Settlement is appropriate because it is both procedurally and substantively fair, adequate, and reasonable. *See* FED. R. CIV. P. 23(e). Rule 23 provides that preliminary approval should be granted, and notice to the class authorized, if "the court will likely be able to . . . approve the proposal under Rule 23(e)(2)." FED. R. CIV. P. 23(e)(1)(B)(i). Rule 23(e)(2), in turn, lists factors to consider in determining whether a settlement merits final approval:

> (A)    the class representatives and class counsel have adequately represented the class;
>
> (B)    the proposal was negotiated at arm's length;
>
> (C)    the relief provided for the class is adequate, taking into account:

       (i)      the costs, risks, and delay of trial and appeal;

       (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

       (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

       (iv)    any agreement required to be identified under Rule 23(e)(3); and

    (D)     the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2). This standard is easily met here.

### A. Plaintiff and Class Counsel Diligently Prosecuted the Action and Negotiated the Settlement Agreement at Arm's Length

"The parties must have engaged 'in sufficient investigation of the facts to enable the court to intelligibly make an appraisal' of the fairness of a proposed class settlement." *Deem v. Ames True Temper, Inc.*, No. 6:10-cv-01339, 2013 U.S. Dist. LEXIS 72981, at *4 (S.D. W.Va. May 23, 2013) (citation omitted). Courts are instructed to consider the extent of discovery conducted to ensure that a plaintiff had access to sufficient material to evaluate his, her, or its case on an informed basis and to assess the adequacy of the settlement in light of the strengths and weaknesses of his, her, or its position. *See In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991). Here, Plaintiff and Class Counsel diligently prosecuted this action, and after an extensive examination of the documents and legal framework, and reached a stage where they could intelligently evaluate the litigation and the propriety of the Settlement.

    Before filing the Complaint, Class Counsel engaged in extensive fact and legal research related to the claims, which ultimately resulted in a 24-page Complaint (ECF No. 1) and a 31-page Amended Complaint. ECF No. 22. Plaintiff opposed Defendants' motion to dismiss and succeeded in overcoming it in substantial part. ECF No. 47. Further, Class Counsel propounded written

discovery requests, reviewed hundreds of thousands of pages of documents, and retained an expert to analyze data on the Deferral Plan's selectivity, participants' compensation, and Class Members' damages. Class Counsel successfully litigated a motion for class certification (ECF No. 62) and a motion to compel (ECF No. 77), and filed a motion for protective order (ECF No. 104) to quash Defendants' subpoenas to third parties. These efforts, totaling thousands of hours of work, gave Class Counsel adequate documents and information to assess the strengths and weaknesses of the case before reaching the Settlement.

The process by which the Parties reached the Settlement is also evidence of its fairness. *See In re Jiffy Lube*, 927 F.2d at 159 (courts should consider if a settlement "was reached as a result of good-faith bargaining at arm's length, without collusion."). Here, the Parties reached an agreement in principle in their third mediation session, and they negotiated the precise terms of the Settlement for several months thereafter. These arms'-length negotiations were informed by three years of litigation and the exchange of mediation statements, which allowed the Parties to fully evaluate the strengths and weaknesses of their respective positions. Further, Plaintiffs were represented attorneys who are experienced in ERISA class action litigation and the case's unique legal and factual issues. *See Robinson v. Carolina First Bank NA*, No. 7:18-cv-02927-JDA, 2019 WL 2591153, at *8 (D.S.C. June 21, 2019) ("In a class action settlement, there is a presumption of fairness, reasonableness, and adequacy when it is achieved through arm's length negotiations between experienced and capable counsel after meaningful discovery.").

Moreover, the fact that the Parties reached the Settlement with the assistance of a mediator, Mr. Hunter Hughes, further supports its fairness. *See Temp. Servs. v. Am. Int'l Grp., Inc.*, No. 3:08-cv-00271-JFA, 2012 U.S. Dist. LEXIS 131201, at *31 (D.S.C. Sept. 14, 2012) ("supervision by a mediator lends an air of fairness to agreements that are ultimately reached"). Mr. Hughes is a

highly skilled and respected mediator, who has mediated several of largest ERISA class action settlements over the past decade, including *Kruger v. Novant Health*, No. 1:14-cv-208, 2016 WL 6775855 (M.D.N.C. Sept. 29, 2016) ($32 million settlement); *Nolte v. CIGNA Corp.*, No. 2:07-cv-2046, 2013 WL 12242015 (C.D. Ill. Oct. 15, 2013) ($35 million settlement); and *Krueger v. Ameriprise Financial*, No. 11-cv-2781, 2015 WL 4246879 (D. Minn. July 13, 2015) ($27.5 million settlement). His involvement supports the Settlement's fairness.

### B.    The Relief Provided by the Settlement is Adequate in Light of the Costs, Risks, and Delay of Litigation

To grant final approval, a court must determine that a "settlement is fundamentally fair, adequate, and reasonable." *Robinson*, 2019 WL 719031, at *7 (citing *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999)). An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount of the settlement. In balancing, however, a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a final judgment. *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08-cv-1310, 2009 WL 3094955, at *10 (E.D. Va. 2009) (citing *Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977)).

The Settlement Agreement requires Defendants to pay $79 million. Based on Class Counsel's review of documents and information obtained in discovery and analyses by Plaintiff's damages expert, the total amount of forfeitures by members of the Settlement Class was approximately $265 million.[3] Thus, the Settlement represents a recovery of approximately 30%.

---

[3] This is Plaintiff's best estimate based on the total amount of forfeitures as of August 30, 2019, under the graduated vesting schedule in ERISA § 203(a)(2)(B)(iii) that Defendants produced in discovery. Based on Defendants' representations and Plaintiff's knowledge of the financial industry's hiring cycle, Plaintiff does not believe the total forfeitures have increased significantly since then. Moreover, any recent forfeitures have been offset, in whole or in part, by the definition of Settlement Class, which excludes individuals who already released their claims.

Accordingly, the Settlement Amount is an excellent recovery and supports the fairness, adequacy, and reasonableness of the Settlement. *Cf. Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975) (holding that even a cash settlement that "only amount[s] to a fraction of the potential recovery will not per se render the settlement inadequate or unfair" (internal quotations omitted)).

The adequacy of the Settlement is even more evident when the cost, risk, and delay of continued litigation are considered. Despite Plaintiff's confidence in his case, he faced significant hurdles in proving his claims. Defendants also consistently and vigorously denied the allegations throughout the litigation. The central issue in this case is whether the Deferral Plan is a "top hat" plan under ERISA. If Defendants were to prevail on their argument that the Deferral Plan is a "top hat" plan, then the forfeitures would be valid and Plaintiff and the other Class Members would have no claim. *See*, *e.g.*, *Callan v. Merrill Lynch & Co.*, No. 09-cv-566, 2010 WL 3452371, at **9-11 (S.D. Cal. Aug. 30, 2010) (granting summary judgment in Merrill Lynch's favor, holding that its deferred-compensation plan for financial advisors was a "top hat" plan).

### 1.    The Risk of Proving Liability

The test for whether a plan qualifies as a "top hat" plan has quantitative and qualitative elements. The key quantitative test measures "the percentage of the total workforce *eligible* to participate in the plan…" *Tolbert v. RBC Capital Markets*, 2015 WL 2138200, at *9 (S.D. Tex. Apr. 28, 2015) (emphasis added). While it is a simple calculation—the number of plan participants (numerator) divided by the number of the company's employees (denominator), the Parties dispute what the denominator should be. Plaintiff asserted the denominator should be only employees of WFA, or approximately 25,000, while Defendants assert the denominator should be all employees of Wells Fargo & Company and its affiliates, or approximately 275,000. *See*, *e.g.*, ECF No. 66 at 6

(Wells Fargo asserting that the proper denominator should be "Wells Fargo's workforce of approximately 269,100 as of December 31, 2016.").

There is case law that supports both parties' position, which illustrates the unsettled case law on this issue. *See Browe v. CTC Corp.*, 331 F. Supp. 3d 263 (D. Vt. 2018) (discussing whether affiliates should be taken into account in determining whether a group of employees is a "select group"); *Alexander*, 513 F.3d at 40-41, 46 (comparing plan participants to "overall employee population"); *Duggan v. Hobbs*, 99 F.3d 307, 312 (9th Cir. 1996) (evaluating "employer's entire work force"); and *Sikora v. UPMC*, 876 F.3d 110, 113 (3d Cir. 2017) (evaluating "entire workforce"). While Plaintiff believes that cases such as *Alexander*, *Duggan* and *Sikora* support his position about the proper scope of the denominator, the unsettled case law on this issue supports approval of the Settlement.

Moreover, even if the Court decided in the Plaintiff's favor on the denominator, proving that the Deferral Plan was not a "top hat" plan would still not be a given. Courts use a multi-factor test to determine whether a plan qualifies for "top hat" status. *See, e.g.*, *Tolbert*, 2015 WL 2138200, at *9. While Plaintiff believes the Deferral Plan's selectivity is the most important factor, he cannot discount that courts also consider other statistics, including the compensation disparity between participants and non-participants, measured as a ratio. *Id*. Here, while the Parties disagreed on how to properly measure the ratio, Defendants were likely to argue that, even under Plaintiff's expert's calculations, the compensation ratio supported their position under several instructive cases. *See Belka v. Rowe Furniture Corp.*, 571 F. Supp. 1249, 1252-53 (D. Md. 1983); *Demery v. Extebank Deferred Comp. Plan (B)*, 216 F.3d 283, 288-89 (2d Cir. 2000). Accordingly, the Court could conclude that the Deferral Plan was limited to highly compensated employees and that Defendants should prevail.

17

Last, another factor in determining whether a plan qualifies as a "top hat" plan is "the actual language of the plan agreement." *Tolbert*, 2015 WL 2138200, at *9. Here, the plan document states that the Deferral Plan "shall function solely as a so-called 'top hat' plan of deferred compensation…" ECF Nos. 22-2 at § 1.02. While some courts have held that this language is not dispositive on the Deferral Plan's legal status, *see*, *e.g.*, *Guiragoss v. Khoury*, 444 F. Supp. 2d 649, 658 (E.D. Va. 2006) ("merely inserting the ERISA definition of a top hat plan into a document is insufficient if the actual plan does not satisfy the top hat requirements"), others have held that a plan's "express statement of purpose…is entitled to weight when determining the nature of the plan." *Hahn v. Nat'l Bank, N.A.*, 99 F.Supp.2d 275, 279 (E.D.N.Y. 2000); *see also Forte v. BNP Paribas*, No. 14-cv-8556, 2015 WL 3604317, at *3 (S.D.N.Y. 2015) (finding the plaintiff's argument "meritless" in light of the plan's language regarding its legal status).

### 2.    The Risk in Proving Damages

Even if Plaintiff proved the Deferral Plan was not a "top hat" plan, Plaintiff and the Settlement Class faced challenges in proving they were entitled to recover any damages. Thus, in evaluating the fairness of the Settlement, the Court should consider the relief that the Class could reasonably obtain after trial. *Lomascolo*, 2009 WL 3094955, at *10.

Here, Plaintiff seeks "appropriate equitable relief" under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including "reformation of the Deferral Plan and payment of benefits under the Deferral Plan, as reformed." ECF No. 85 at 8-9. Courts determine whether equitable relief is "appropriate" under ERISA on a case-by-case basis. *Pender v. Bank of Am. Corp.*, 736 Fed. App'x 359, 367 (4th Cir. 2018). In fashioning an equitable remedy, courts balance the equites with fundamental fairness to both sides. *Frommert v. Becker*, 153 F.Supp. 3d 599, 612 (S.D.N.Y. 2016). Moreover, courts do not award equitable relief that would be a windfall for the plaintiffs or that

18

would penalize a defendant. *Pender*, 736 Fed. App'x at 371. Equity is thus concerned with a fair apportionment. *Id.*

For example, in *Pender*, the Fourth Circuit upheld the denial of equitable relief because the plaintiffs lost no money, so any recovery would be "a windfall to Plaintiffs, and inappropriately penalize the [defendant]." *Id.* Similarly, in *Paul v. RBC Capital Mkts. LLC*, No. C16-5616, 2018 WL 3630290 (W.D. Wa. July 31, 2018), the plaintiffs were financial advisors that challenged whether RBC's deferred compensation plan was a "top hat" plan, much like Plaintiff alleges here. While the Court denied RBC summary judgment, it questioned whether it would ultimately award the plaintiffs any equitable relief—even if they prevailed on liability—because it might not be "equitable to permit participants who were in fact highly compensated and who took advantage of the [plan] for years to now complain about its forfeiture provisions. But that is not a summary judgment argument." *Paul*, 2018 WL 3630290, at *7. It is, however, an issue for the Court to consider in evaluating the fairness of the Settlement.

Based on the foregoing, even if the Deferral Plan is not a "top hat" plan, the Court could have concluded that appropriate equitable relief would not be the return of all forfeited amounts. Indeed, this reduction could have been substantial.

### 3. Several Other Factors Favor the Settlement

Finally, although Plaintiff obtained class certification, an order certifying a class may always be revisited. *See Chisolm v. TranSouth Fin. Corp.*, 184 F.R.D. 556, 567 (E.D. Va. 1999) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."). Barring settlement, the case would have to proceed through summary judgment briefing before reaching trial, which could result in the dismissal of the remainder of Plaintiff's case.

Even if Plaintiff prevailed at trial, Defendants would likely appeal the decision to the Fourth Circuit as they consistently denied the allegations and claims. This continued litigation and subsequent appeals would be time consuming, expensive, and might lead to the reversal of any favorable verdict. Courts have repeatedly recognized that ERISA cases often lead to lengthy litigation. *Krueger*, 2015 WL 4246879, at *1. Thus, this factor supports approval of the proposed Settlement.

Finally, other litigants' poor track record in "top hat" cases demonstrates the risk of continued litigation. Courts have adjudicated most "top hat" cases, particularly those involving large plans, in favor of defendants. *See*, *e.g.*, *Alexander*, 513 F.3d at 46; *Callan*, 2010 WL 3452371, at **8-10; *Sikora*, 876 F.3d at 113. Moreover, even when the plaintiffs initially prevailed, those victories were limited and often reversed by subsequent orders. *Tolbert* and *Daft*, both of which involve financial advisors, are good examples. In *Tolbert*, the court denied plaintiffs' motion for class certification. *Tolbert v. RBC Capital Markets et al.*, No. H-11-107, 2016 WL 3034497, at *8 (S.D. Tex. May 26, 2016). The plaintiffs then resolved their claim on an individual basis, with other members of the absent class having to bring separate cases on their own behalf. *See*, *e.g.*, *Paul*, 2018 WL 3630290. In *Daft*, the plaintiff prevailed on liability, only to have the Sixth Circuit effectively reverse that victory by holding that the district court should have remanded the issue to the plan administrator. *Daft v. Advest, Inc.*, 658 F.3d 583, 596 (6th Cir. 2011). While Plaintiff believes in the merits of this case, the difficulty for financial advisor plaintiffs to prevail in "top hat" cases like this one supports the Settlement's adequacy.

## C.    The Settlement Provides an Effective Means of Distributing the Settlement Fund to Class Members

Rule 23(e)(2)(C)(ii) requires the Court to consider the adequacy of the relief provided by the Settlement, considering "the effectiveness of any proposed method of distributing relief to the

class, including the method of processing class-member claims." Distribution of the Settlement

Fund is simple and straightforward. Every Settlement Class Member will receive notice of the

Settlement. Exhibit A, Settlement Agreement, at § 3.5. Class Members will have funds sent to

them by mail. *Id.* at § 6.6. None of the Settlement Fund will revert to Defendants. *Id.* at § 6.7. Class

Members are not required to submit claims. *Id.* at § 6.6.

### D. The Provisions of the Settlement Related to Attorneys' Fees are Reasonable

Rule 23(e)(2)(C)(iii) requires the Court to consider the adequacy of the relief provided by

the Settlement, considering "the terms of any proposed award of attorney's fees, including timing

of payment." The provisions of the Settlement Agreement related to Attorneys' Fees are standard.

The Settlement Agreement provides that counsel will request an award of attorneys' fees not to

exceed 30% of the Settlement Fund, which this Court has found is "well within the range of what

is customarily awarded in settlement class actions." *Montague v. Dixie Nat'l Life Ins. Co.*,

No. 3:09-cv-00687, 2011 WL 3626541, at *2 (D.S.C. Aug. 17, 2011) ("An award of fees in the

range of 33% of the fund for work performed in the creation of a settlement fund has been held to

be reasonable by many federal courts."); *see also Kruger v. Novant Health, Inc.*, No. 1:14-cv-208,

2016 WL 6769066, at *4 (M.D.N.C. Sept. 29, 2016) ("courts in the Fourth Circuit approve of the

percentage-of-fund method for awarding fees in common fund cases").

Moreover, the Settlement is not contingent on the Court awarding the amount of attorneys'

fees that Plaintiff requests, or indeed, any amount. Exhibit A, Settlement Agreement, at § 7.2. The

Settlement provides that the award of attorneys' fees will be paid after entry of the Final Approval

Order. *Id.* at § 5.8. These provisions are common in class action settlements, and none question

the fairness or adequacy of the Settlement, particularly at this stage of the litigation. The Settlement

Class and the Court will have an opportunity to consider the reasonableness of the fee request more

fully at the Fairness Hearing. The Settlement Agreement provides that the application for

attorneys' fees and costs will be filed no later than forty-five (45) days before the Fairness Hearing, which will provide Settlement Class Members with ample time to review and object to the Settlement or the requested fees. *Id.*; *see* FED. R. CIV. P. 23(h)(1) (requiring notice of an attorney fee motion by class counsel to be "directed to class members in a reasonable manner").

### E.    The Settlement Treats Class Members Equitably Relative to Each Other

The Proposed Settlement treats class members equitably relative to each other, as required by Federal Rule 23(e)(2)(D). Class Members will receive a share of the Settlement Fund that is proportional to the amount of their forfeitures that would have vested under ERISA's graduated vesting schedules. Exhibit A, Settlement Agreement, at § 6.1.

Plaintiff intends to request a Case Contribution Award not to exceed $10,000 for his work prosecuting the case on behalf of the Class. *Id.* § 7.1. "The intent of 'incentive awards' (also known as 'case contribution payments') is to reimburse and compensate the Named Plaintiffs and/or Class Representatives for their time and efforts expended on behalf of the Class." *Savani v. URS Prof'l Sols. LLC*, 121 F. Supp. 3d 564, 576 (D.S.C. 2015). Incentive awards are routinely approved in class actions. *Reed*, 2016 WL 7438449, at *12; *see also McClaran v. Carolina Ale House Operating Co., LLC*, No. 3:14-cv-03884-MBS, 2015 WL 5037836, at *6 (D.S.C. Aug. 26, 2015) ("it is customary for lead plaintiffs and class representatives to receive incentive payments for their proportionate share of the recovery to compensate them for their additional hardships and efforts undertaken as representatives").

The proposed $10,000 award is reasonable under the circumstances and consistent with awards approved by federal courts in South Carolina and elsewhere. *See Savani*, 121 F. Supp. 3d at 577 (finding $15,000 award appropriate in "complex ERISA case given the benefits accruing to the entire class in part resulting from [plaintiff's] efforts"); *see also McCurley v. Flowers Foods, Inc.*, No. 5:16-CV-00194-JMC, 2018 WL 6650138, at *8 (D.S.C. Sept. 10, 2018) (approving

22

award of $25,000 and finding it to be "well within the range of reasonable incentive awards approved by the courts"). Further, as with the provision on Attorneys' Fees, the Settlement states that any Case Contribution Award will be solely at the Court's discretion, and the Settlement is not conditioned on the Court awarding a particular amount, or any amount at all. Exhibit A, Settlement Agreement, at § 7.1.

For these reasons, the proposed Settlement merits preliminary approval and full consideration by the Settlement Class.

## VI.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN.

Due process requires that notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank Tr. Co.*, 339 U.S. 306, 314 (1950) (citation omitted); *accord Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC*, 859 F.3d 295, 303 (4th Cir. 2017). Here, the proposed Settlement Notice describes the lawsuit in plain English, including the terms of the proposed Settlement, the factors that caused Plaintiff and Class Counsel to conclude that the Settlement is fair and adequate, the Attorneys' Fees and Costs and Case Contribution Award that are being sought, the procedure for objecting to the Settlement, and the date and place of the Fairness Hearing. Exhibit A, Settlement Agreement, at Exhibit 2. Accordingly, the proposed form of the Settlement Notice satisfies all due process requirements and Rule 23(e)(1). *See generally ADESSO Homeowners' Ass'n v. Holder Props., Inc.*, No. 3:16-cv-710, 2017 WL 11272589, at *10 (D.S.C. May 23, 2017) (approving notice that "accurately summarizes the settlement terms and advises the Class of its benefits, rights, and limitations," "covers all relevant topics," and "is written and formatted to communicate this information in a clear and concise manner that will be easily understood by members of the Class").

The method for distributing the Settlement Notice is designed to reach all Class members. *See Mullane*, 339 U.S. at 315 (holding that a "fundamental requirement of due process [is] . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" (citation omitted)). With the Court's approval, the Settlement Notice will be sent in paper form to each Settlement Class Member's last known address within 30 days of an entry of a Preliminary Approval Order. Exhibit A, Settlement Agreement, at § 3.5. The Notice Plan requires the Settlement Administrator to send follow-up mailings to any Class Members whose notice letters are returned. *Id*. The Settlement Agreement, Settlement Notice, the Amended Complaint, and various other case documents will be published on the Settlement Website. *Id*. Thus, the proposed notice plan will fairly apprise Class Members of the Settlement Agreement and their options with respect to it, and therefore fully satisfy due process requirements. *See supra*, Newberg on Class Actions, §§ 8:15, 8:17, and 8:28.

## VII.    PROPOSED SCHEDULE

The proposed schedule for final approval of the Settlement provides the Settlement Class with fair notice and opportunity to be heard, and provides notice to appropriate federal and state officials, as required by the Class Action Fairness Act, 28 U.S.C. § 1715.

The Settlement Agreement requires that notice be given to Class Members after the Court enters a Preliminary Approval Order. Exhibit A, Settlement Agreement, at § 3.5. Class members will have ninety (90) days following notice to decide whether to object to the Settlement, and the ability to review Plaintiff's Motion for Final Approval and supporting papers before then. Specifically, the Parties propose that the Fairness Hearing be scheduled at least one-hundred twenty (120) days after the issuance of the Preliminary Approval Order, with Plaintiff's Motion for Final Approval and Motion for Attorneys' Fees, Costs and Case Contribution Award due forty-five (45) days prior to the Fairness Hearing. Objections should be submitted no later than thirty

(30) days before the Fairness Hearing, which will allow Plaintiff time to respond. Below is the proposed schedule in chart form:

| Action | Date |
|---|---|
| Defendants to provide Settlement Administrator with Class Members' names and contact information | Ten (10) days after Preliminary Approval Order |
| Settlement Administrator creates Settlement Website | Within thirty (30) days after Preliminary Approval Order |
| Settlement Administrator sends Settlement Notice | Within thirty (30) days after Preliminary Approval Order |
| Plaintiff's Motions for (i) Final Approval, and (ii) Attorneys' Fees, Expenses, and a Case Contribution Award | No later than forty-five (45) days before the Fairness Hearing |
| Objections to the Settlement and notice of the intention to appear at Fairness Hearing | No later than thirty (30) days before the Fairness Hearing |
| Fairness Hearing | At least 120 days after Preliminary Approval Order |

## VIII.    CONCLUSION

For these reasons, the Settlement meets the standard for preliminary approval under Rule 23. Accordingly, Plaintiff respectfully requests an Order: (1) preliminarily approving the Settlement; (2) certifying the Settlement Class; (3) approving the form and manner of notifying the Settlement Class of the Settlement; and (4) setting a date for a Fairness Hearing.

Respectfully submitted,

By: */s/ William S. Norton*
    William S. Norton (D.S.C 11343)
    Erin C. Williams (D.S.C. 12282)
    MOTLEY RICE LLC
    28 Bridgeside Boulevard
    Mount Pleasant, SC 29464
    Telephone: (843) 216-9000
    Facsimile: (843) 216-9450

bnorton@motleyrice.com
ecwilliams@motleyrice.com

William H. Narwold (D.S.C 73977)
Mathew P. Jasinski (admitted *pro hac vice*)
MOTLEY RICE LLC
27 Church Street, 17th Floor
Hartford, CT 06103
Telephone: (860) 882-1681
Facsimile: (860) 882-1682
bnarwold@motleyrice.com
mjasinski@motleyrice.com

Thomas R. Ajamie (admitted *pro hac vice*)
David S. Siegel (admitted *pro hac vice*)
John S. "Jack" Edwards, Jr. (admitted *pro hac vice*)
AJAMIE LLP
Pennzoil Place - South Tower
711 Louisiana, Suite 2150
Houston, TX 77002
Telephone: (713) 860-1600
Facsimile: (713) 860-1699
tajamie@ajamie.com
dsiegel@ajamie.com
jedwards@ajamie.com

Mark P. Kindall (admitted *pro hac vice*)
Douglas P. Needham (admitted *pro hac vice*)
IZARD, KINDALL & RAABE, LLP
29 South Main Street, Suite 305
West Hartford, Connecticut 06107
Telephone: 860-493-6292
mkindall@ikrlaw.com
dneedham@ikrlaw.com

**ATTORNEYS FOR PLAINTIFF**

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on January 31, 2020, the foregoing was served through this Court's CM/ECF system. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

_/s/ William S. Norton_
William S. Norton
