# Exhibit A

## CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement ("Settlement Agreement") is entered into between and among Lead Plaintiff Robert F. Berry ("Berry" or "Class Representative"), on his own behalf and on behalf of the Class Members defined below (collectively, "Plaintiffs"), and Defendants Wells Fargo & Company, Wells Fargo Clearing Services, LLC LLC f/k/a Wells Fargo Advisors, LLC, and Wells Fargo Advisors Financial Network, LLC (collectively, "Defendants").

1. **Article 1 – Recitals**

   1.1    On February 1, 2017, Berry filed a Complaint (ECF No. 1) in *Berry v. Wells Fargo & Co*., No. 3:17-cv-00304, in the United States District Court for the District of South Carolina, Columbia Division, related to forfeited deferred compensation. On May 1, 2017, Berry filed a class-action Amended Complaint (ECF No. 22) on behalf of himself and all former participants in the Wells Fargo Advisors Performance Award Contribution and Deferral Plan (the "Deferral Plan") who earned deferred compensation under the Deferral Plan but were denied compensation under the Deferral Plan's forfeiture clause. The Amended Complaint is the operative complaint in the action (the "Class Action") and is referred to herein as the "Class Action Complaint." The Class Action was brought against Defendants and asserts various claims under the Employee Retirement Income Security Act of 1974 29 U.S.C. § 1001, *et seq.* ("ERISA").

   1.2    For over two and a half years, this case was extensively litigated with discovery and motion practice, including a motion to dismiss (ECF No. 26), motion for class certification (ECF No. 62), and discovery motions (ECF Nos. 77 and 104).

   1.3    On October 9, 2018, the Court certified the following Class:

   > All participants in the Wells Fargo Advisors Performance Award Contribution and Deferral Plan (the "Deferral Plan") since February 1, 2011, who earned deferred compensation under the Deferral Plan and were denied compensation under the Deferral Plan's Forfeiture Clause (§ 5.05)**.**

   Order (ECF No. 85 & 86), p. 27.  In its Order certifying the class, the Court appointed Robert Berry as the Class Representative and appointed the law firms of Ajamie LLP, Motley Rice LLC, and Izard, Kindall & Raabe, LLP as Class Counsel.  *Id.*

**1.4**   This case was set for summary judgment on December 20, 2019, and a trial term of March/April 2020.  *See* Sixth Amended Scheduling Order (ECF No. 103).

**1.5**   On July 30, 2018, Plaintiffs and the Defendants began settlement discussions through mediation with a nationally recognized mediator. The Parties did not settle the case in 2018, but continued discussions thereafter. The Parties attended two more mediation sessions on August 26, 2019, and October 30, 2019. The Parties reached agreement on the monetary terms of a potential settlement on October 30, 2019, and continued negotiating non-monetary relief and the terms of this Settlement Agreement. The terms of the Parties' settlement are memorialized in this Settlement Agreement only.

**1.6**   The Class Representative and Class Counsel consider it desirable and in the Class Members' best interests that the claims against Defendants be settled on the terms described below. The Class Representative and Class Counsel have concluded that such terms are fair, reasonable, and adequate and that this settlement will result in benefits to the Settlement Class.

**1.7**   Defendants deny all allegations of wrongdoing and deny all liability for the claims and allegations in the Class Action. Defendants maintain that they are without fault or liability. This Settlement Agreement, and the discussions between the Parties preceding it, shall in no event constitute, be construed as, or be deemed evidence of, an admission or concession of any wrongdoing, fault or liability of any kind by Defendants.

**1.8**   The Parties agree that it is desirable that the Class Action be finally settled on the terms and conditions in this Settlement Agreement.

**1.9**   Wells Fargo Advisors Financial Network, LLC is subject to dismissal because it does not sponsor the Deferral Plan, employ the Deferral Plan's participants, and is neither directly nor indirectly liable for paying benefits owed to the Deferral Plan's current or former participants.

**1.10**   Therefore, the Parties, in consideration of the promises, covenants, and agreements described herein, acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, do hereby mutually agree as follows.

## 2.   Article 2 – Definitions

As used in this Settlement Agreement and the Exhibits (as listed in Paragraph 13.18), unless otherwise defined, the following terms have the meanings specified below:

**2.1** "Administrative Expenses" means expenses incurred in the administration of this Settlement Agreement, including (a) all fees, expenses, and costs associated with providing the Settlement Notices to the Class and the notices required by the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711-1715; (b) all taxes and tax expenses as described in Paragraph 5.3; (c) all expenses and costs associated with the distribution of funds under the Plan of Allocation; and (d) all fees and expenses of the Settlement Administrator and Escrow Agent. Excluded from Administrative Expenses are internal expenses, including fees of the Deferral Plan's recordkeeper, and the Parties' respective legal expenses. Administrative Expenses shall be paid from the Gross Settlement Amount.

**2.2** "Alternate Payee" means a person other than a Participant or Beneficiary in the Deferral Plan who is entitled to a benefit under the Deferral Plan as a result of a Domestic Relations Order.

**2.3** "Attorneys' Fees and Costs" means the amount awarded by the Court pursuant to Federal Rule of Civil Procedure 23(h) as compensation for the services provided by Class Counsel and reimbursement for taxable costs and other expenses incurred by Class Counsel.

**2.4** "Beneficiary" means a person who currently is entitled to receive a benefit under the Deferral Plan upon the death of a Participant, other than as an Alternate Payee. A Beneficiary includes, but is not limited to, a surviving spouse, domestic partner, or child of a Participant who currently is entitled to a benefit.

**2.5** "CAFA" means the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1711–1715.

**2.6** "Class Action" means the action styled *Berry v. Wells Fargo & Company et al.*, No. 3:17-cv-00304, in the United States District Court for the District of South Carolina, Columbia Division.

**2.7** "Class Counsel" means the law firms of Ajamie LLP, Motley Rice LLC, and Izard, Kindall & Raabe, LLP.

**2.8** "Class Members" means all individuals in the Settlement Class.

**2.9** "Class Period" means the period from February 1, 2011, through the Settlement Agreement Execution Date.

**2.10** "Class Representative" means Lead Plaintiff Robert F. Berry.

**2.11**  "Case Contribution Award" means an amount to be determined by the Court, but not to exceed ten thousand dollars ($10,000.00), which shall be paid from the Gross Settlement Amount directly to the Class Representative for his service to the Class.

**2.12**  "Confidentiality Order" means the Protective Order (Doc. 52) entered on November 15, 2017.

**2.13**  "Corporate Plan" means the Wells Fargo & Company Deferred Compensation Plan sponsored by Wells Fargo & Company.

**2.14**  "Court" means the United States District Court for the District of South Carolina, Columbia Division.

**2.15**  "Defendants" means Wells Fargo & Company, Wells Fargo Clearing Services, LLC f/k/a Wells Fargo Advisors, LLC, and Wells Fargo Advisors Financial Network, LLC.

**2.16**  "Defense Counsel" means counsel for Defendants, Seyfarth Shaw LLP.

**2.17**  "Deferral Plan" or "Closed Plan" means the Wells Fargo Advisors Performance Award Contribution and Deferral Plan.

**2.18**  "Escrow Agent" means an independent contractor selected by the Parties to maintain the Qualified Settlement Fund, including the Settlement Administrator.

**2.19**  "Fairness Hearing" means the hearing scheduled by the Court to consider (a) any objections from Class Members to the Settlement Agreement, (b) Class Counsel's petition for Attorneys' Fees and Costs and Class Representatives' Compensation, and (c) whether to finally approve the Settlement under Fed. R. Civ. P. 23.

**2.20**  "Final Approval Order" means the order and final judgment approving the Settlement Agreement, implementing the terms of this Settlement Agreement, and dismissing the Class Action with prejudice, to be proposed by the Settling Parties for approval by the Court, in substantially the form attached as Exhibit 3.

**2.21**  "Final" means with respect to any judicial ruling, order, or judgment that the period for any motions for reconsideration, motions for rehearing, appeals, petitions for certiorari, or the like ("Review Proceeding") has expired without the initiation of a Review Proceeding, or, if a Review Proceeding has been timely initiated, that it has been fully and finally resolved, either by court action or by voluntary action of any Party, Plaintiff, or Defendant, without any

possibility of a reversal, vacatur, or modification of any judicial ruling, order, or judgment, including the exhaustion of all proceedings in any remand or subsequent appeal and remand. The Parties agree that absent an appeal or other attempted review proceeding, the period after which the Final Approval Order becomes Final is thirty-five (35) days after its entry by the Court.

**2.22**    "Gross Individual Payment" means the amount of the Net Settlement Amount allocated to each Class Member on a pro rata basis, before subtracting required tax withholdings, as described in Paragraph 6.4.

**2.23**    "Gross Settlement Amount" means the sum of seventy-nine million dollars ($79,000,000.00), paid to the Qualified Settlement Fund in accordance with Article 5 of the Settlement Agreement. The Gross Settlement Amount shall be the full and sole monetary payment to the Class Representative, Class Members, and Class Counsel made on behalf of Defendants related to the Settlement and this Settlement Agreement. Once the Final Approval Order is Final, no portion of the Gross Settlement Amount shall be returned to Defendants. Defendants liability under the Settlement Agreement is limited to the Gross Settlement Amount.

**2.24**    "Mediator" means Hunter R. Hughes, III, or a successor mutually agreed upon in writing by the Parties.

**2.25**    "Net Settlement Amount" means the Gross Settlement Amount minus: (a) all Attorneys' Fees and Costs paid to Class Counsel; (b) any Case Contribution Award authorized by the Court; (c) all Administrative Expenses; and (d) a contingency reserve not to exceed an amount to be mutually agreed upon by the Settling Parties that is set aside by the Settlement Administrator for: (1) Administrative Expenses incurred before the Settlement Effective Date but not yet paid, (2) Administrative Expenses estimated to be incurred after the Settlement Effective Date, and (3) an amount estimated for adjustments of data or calculation errors. The Net Settlement Amount does not include required tax withholdings, which will be withheld from each Class Member's Gross Individual Payment, as described in Paragraphs 6.4, 6.5, and 6.6.

**2.26**    "Net Individual Payment" means the amount of each Class Member's Gross Individual Payment, after subtracting required tax withholdings, as described in Paragraph 6.5.

**2.27**    "Participant" means a person who is or was entitled to receive compensation under the Deferral Plan based on their employment with Defendants.

**2.28**    "Parties" or "Party" means the Class Representative or Defendants.

**2.29**    "Plaintiffs" means the Class Representative and the Class Members.

**2.30** "Plan of Allocation" means the methodology for allocating and distributing the Net Settlement Amount in accordance with Article 6 of this Settlement Agreement.

**2.31** "Preliminary Approval Order" means the order proposed by the Parties and approved by the Court in connection with the Motion for Entry of the Preliminary Approval Order to be filed by the Class Representative through Class Counsel, as described in Paragraph 3.1 and in substantially the form attached as Exhibit 1.

**2.32** "Qualified Settlement Fund" or "Settlement Fund" means the interest-bearing, escrow account to be established and maintained by the Escrow Agent in accordance with Article 5 of this Settlement Agreement and referred to as the Qualified Settlement Fund (within the meaning of Treas. Reg. § 1.468B-1).

**2.33** "Released Parties" means (a) Defendants; (b) their insurers, co-insurers, and reinsurers, (c) their past, present, and future parent corporation(s), (d) their past, present, and future affiliates, subsidiaries, divisions, joint ventures, predecessors, successors, successors-in-interest, and assigns; and (e) with respect to (a) through (d) above their past, present and future members of their respective boards of directors, managers, partners, agents, members, shareholders (in their capacity as such), officers, employees, independent contractors, representatives, attorneys, administrators, fiduciaries, accountants, auditors, advisors, consultants, personal representatives, spouses, heirs, executors, administrators, associates, employee benefit plan fiduciaries, employee benefit plan administrators, and all other service providers to the Deferral Plan (including their owners and employees), members of their immediate families, consultants, subcontractors, and all persons acting under, by, through, or in concert with any of them.

**2.34** "Released Claims" means any and all actual or potential claims, actions, demands, rights, obligations, liabilities, damages, attorneys' fees, expenses, costs, and causes of action, whether arising under federal, state or local law, whether by statute, contract or equity, whether brought in an individual or representative capacity, whether known or unknown, suspected or unsuspected, foreseen or unforeseen for actions during the Class Period:

    a.   That were asserted in the Class Action Complaint or that arise out of, relate to, or are based on any of the allegations, acts, omissions, facts, matters, transactions, or occurrences related to the Deferral Plan that were alleged, asserted, or set forth in the Class Action Complaint or in any complaint previously filed in the Class Action;

    b.   That would be barred by *res judicata* or collateral estoppel had the claims asserted in the Class Action been fully litigated and resulted in a Final judgment;

    c.   That relate to the direction to calculate, the calculation of, the tax reporting of, and/or the method or manner of allocation of the Qualified Settlement Fund to the Deferral Plan or any Class Member in accordance with the Plan of Allocation; or

    d.   That relate to any tax liability, including penalties and interest, related in any way to payments under the Settlement Agreement.

**2.35**    "Settlement" or "Settlement Agreement" refers to this agreement and its exhibits.

**2.36**    "Settlement Administrator" means an independent contractor retained by the Settling Parties to administer the Settlement, including providing all notices approved by the Court to Class Members and allocating the Net Settlement Amount in accordance with the Plan of Allocation.

**2.37**    "Settlement Agreement Execution Date" means that date on which the final signature is affixed to this Settlement Agreement.

**2.38**    "Settlement Class" means all persons who participated in the Deferral Plan between February 1, 2011, and the Settlement Agreement Execution Date, earned deferred compensation under the Deferral Plan, were denied compensation under the Deferral Plan's Forfeiture Clause, and have not as of the Settlement Agreement Execution Date released, in writing, their right to recover unpaid deferred compensation under the Deferral Plan (a "Prior Release").

**2.39**    "Settlement Effective Date" means the date on which the Final Approval Order is Final, provided that by such date the Settlement has not been terminated in accordance with Article 11.

**2.40**    "Settlement Notice" means the Notices of Class Action Settlement and Fairness Hearing to be sent to Class Members following the Court's issuance of the Preliminary Approval Order, in substantially the form attached as Exhibit 2. The Settlement Notice shall also inform Class Members of a Fairness Hearing to be held before the Court, on a date to be determined by the Court, at which any Class Member satisfying the conditions in the Preliminary Order and the Settlement Notice may be heard regarding: (a) the terms of the Settlement Agreement; (b) the petition of Class Counsel for award of Attorneys' Fees and Costs; (c) payment of and reserve for Administrative Expenses; and (d) Class Representative's Compensation.

**2.41**    "Settlement Website" means the internet website established in accordance with Paragraph 3.1.4.

**2.42**    "Settling Parties" means Defendants and the Class Representative, on behalf of himself and each of the Class Members.

**3.**    **Article 3 –Preliminary Settlement Approval, and Notice to the Class**

**3.1**    Class Representative, through Class Counsel, shall file a motion seeking preliminary approval of this Settlement Agreement and for entry of the Preliminary Approval Order in substantially the form attached as Exhibit 1. The Preliminary Approval Order to be presented to the Court shall:

**3.1.1**    Approve the text of the Settlement Notice for mailing to Class Members identified by the Settlement Administrator to notify them (1) of the Fairness Hearing and (2) that notice of changes to the Settlement Agreement, future orders about the Settlement, modifications to the Class Notice, changes in the date or timing of the Fairness Hearing, or other modifications to the Settlement, including the Plan of Allocation, may be provided to the Class through the Settlement Website without requiring additional mailed notice;

**3.1.2**    Determine that under Rule 23(c)(2) of the Federal Rules of Civil Procedure, the Settlement Notices constitutes appropriate notice of the Fairness Hearing and of the rights of all Class Members;

**3.1.3**    Cause the Settlement Administrator to send the Settlement Notice by mail to each Class Member identified by the Settlement Administrator;

**3.1.4**    Cause the Settlement Administrator to establish a Settlement Website on which it will post the following documents or links to the following documents on or following the date of the Preliminary Approval Order: the Class Action Complaint, the Motion for Class Certification, the Settlement Agreement and its Exhibits, the Settlement Notice, Class Representative's Motion for Attorneys' Fees and Costs and Award of Compensation to Class Representative, any Court orders related to the Settlement, any amendments or revisions to these documents, and any other documents or information mutually agreed upon by the Settling Parties ("Settlement Website Information"). No other information or documents will be posted on the Settlement Website unless agreed to in advance by the Parties in writing and the Settlement Website will be shut down and deleted upon entry of the Final Judgment.

**3.1.5**    Provide that, pending final determination of whether the Settlement Agreement should be approved, every Class Member is prohibited and

enjoined from directly, through representatives, or in any other capacity, continuing or commencing any action or proceeding in any court or tribunal asserting any of the Released Claims against any Released Party or the Deferral Plan;

**3.1.6** Set the Fairness Hearing for no sooner than one hundred twenty (120) days after the date the the Preliminary Approval Order is entered, in order to determine whether (i) the Court should approve the Settlement as fair, reasonable, and adequate, (ii) the Court should enter the Final Approval Order, and (iii) the Court should approve the application for Attorneys' Fees and Costs, the Case Contribution Award, Administrative Expenses incurred to date, and a reserve for anticipated future Administrative Expenses;

**3.1.7** Provide that any objections to the Settlement Agreement shall be heard, and any papers submitted in support of such objections shall be considered, by the Court at the Fairness Hearing, if they have been filed validly with the Clerk of the Court and copies provided to Class Counsel and Defense Counsel. To be filed validly, the objection and any notice of intent to appear or supporting documents must be filed at least thirty (30) days prior to the scheduled Fairness Hearing. Any person wishing to speak at the Fairness Hearing shall file and serve a notice of intent to appear within the time limitation stated above;

**3.1.8** Provide that any Party may file a response to an objection by a Class Member;

**3.1.9** Provide that the Fairness Hearing may, without further direct notice to the Class Members, other than by notice to Class Counsel, be adjourned or continued by order of the Court; and

**3.1.10** Determine that the information to be provided to the Settlement Administrator in connection with the administration of the Settlement constitutes Confidential Information protected from public disclosure by the Confidentiality Order.

**3.2** Within ten (10) days after the Class Representative files the motion for preliminary approval under Article 3.1, Defendants shall provide notice of the Settlement Agreement to the appropriate federal and state officials as required by CAFA, in the form of Exhibit 4.

**3.3** Defendants and Defense Counsel shall use reasonable efforts to respond to written requests, including by email, from the Settlement Administrator for data that are reasonably necessary to determine the feasibility of administering the Plan of Allocation or to implement the Plan of Allocation.

**3.3.1** The Settlement Administrator shall be bound by the Confidentiality Order and any further non-disclosure or security protocol required by the Parties.

**3.3.2** The Settlement Administrator shall use the data provided by Defendants and the Deferral Plan's recordkeeper solely for the purpose of meeting its obligations as Settlement Administrator, and for no other purpose.

**3.3.3** The Parties shall have the right to approve a written protocol to be provided by the Settlement Administrator on how the Settlement Administrator will maintain and store information provided to it in order to ensure that reasonable and necessary precautions are taken to safeguard the privacy and security of such information.

**3.4** Within ten (10) days after the entry of the Preliminary Approval Order, or any other date ordered by the Court, Defendants shall provide the Settlement Administrator and Class Counsel with a list of Class Members. Defendants shall contemporaneously provide Class Counsel with (i) a list of all indivduals excluded from Defendants' list of Class Members based upon a Prior Release, as defined in Paragraph 2.38, and (ii) a copy of each such Prior Release. All disputes over Prior Releases shall be resolved in accordance with Paragraph 13.7.

**3.5** Within thirty (30) days after the entry of the Preliminary Approval Order, or any other date ordered by the Court, the Settlement Administrator shall cause to be provided to each Class Member a Settlement Notice in the form and manner to be approved by the Court, which shall be in substantially the form attached as Exhibit 2 or a form subsequently agreed to by the Parties and approved by the Court. The Settlement Notice shall be sent to the last known address of each Class Member provided by Defendants through Defense Counsel, unless an updated address is obtained by the Settlement Administrator through its efforts to verify the last known addresses provided by the Deferral Plan's recordkeeper (or its designee). The Settlement Administrator also shall post a copy of the Settlement Notice on the Settlement Website. The Settlement Administrator shall use commercially reasonable efforts to locate any Class Member whose Settlement Notice is returned and re-send such documents one additional time.

## 4. Article 4 – Final Settlement Approval

**4.1** No later than forty-five (45) days before the Fairness Hearing, Class Counsel shall submit to the Court a mutually agreed upon motion for entry of the Final Approval Order (Exhibit 3) in the form approved by Class Counsel and Defense Counsel, which shall request approval by the Court of the terms of this Settlement Agreement and entry of the Final Approval Order in accordance

with this Settlement Agreement. The Final Approval Order as proposed shall provide for the following in order to carry out the Settlement consistent with applicable law:

**4.1.1** Approval of the Settlement of the Released Claims covered by this Settlement Agreement adjudging the terms of the Settlement Agreement to be fair, reasonable, and adequate and directing the Settling Parties to take the necessary steps to effectuate the terms of the Settlement Agreement;

**4.1.2** A determination under Rule 23(c)(2) of the Federal Rules of Civil Procedure that the Settlement Notice constitutes appropriate notice of the Fairness Hearing and that Class Members have been provided with appropriate notice;

**4.1.3** Dismissal with prejudice of the Class Action and all Released Claims whether asserted by Class Representative on his own behalf or on behalf of the Class Members, without costs to any of the Parties other than as provided for in this Settlement Agreement;

**4.1.4** That each Class Member (and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns) shall be (i) conclusively deemed to have, and by operation of the Final Approval Order shall have, fully, finally, and forever settled, released, relinquished, waived, and discharged the Released Parties and the Deferral Plan from all Released Claims, and (ii) barred and enjoined from suing the Released Parties or the Deferral Plan in any action or proceeding alleging any of the Released Claims, even if any Class Member may thereafter discover facts in addition to or different from those which the Class Members or Class Counsel now know or believe to be true with respect to the Class Action and the Released Claims, whether or not such Class Members have filed an objection to the Settlement or to any application by Class Counsel for an award of Attorneys' Fees and Costs, and whether or not the objections of such Class Members have been sustained or overruled;

**4.1.5** That each Class Member shall release the Released Parties, Defense Counsel, Class Counsel, and the Deferral Plan for any claims, liabilities, and attorneys' fees and expenses arising from the allocation of the Gross Settlement Amount or Net Settlement Amount and for all tax liability and associated penalties and interest as well as related attorneys' fees and expenses;

**4.1.6** That all applicable CAFA requirements have been satisfied;

**4.1.7**    That the Settlement Administrator shall have final authority to determine the share of the Net Settlement Amount to be allocated to each Class Member in accordance with the Plan of Allocation approved by the Court; and

**4.1.8**    That within twenty-one (21) days following the issuance of all settlement payments to Class Members as provided by the Plan of Allocation approved by the Court, the Settlement Administrator shall prepare and provide to Class Counsel and Defense Counsel a list of each person who received a settlement payment or contribution from the Qualified Settlement Fund and the amount of such payment or contribution.

**4.2**    The Final Approval Order and judgment entered by the Court approving the Settlement Agreement shall provide that, upon its entry, all Parties, the Settlement Class, and the Deferral Plan shall be bound by the Settlement Agreement and by the Final Approval Order.

**5.    Article 5 – Establishment of Qualified Settlement Fund**

**5.1**    No later than seven (7) days after entry of the Preliminary Order, Defendants shall establish an escrow account with the Escrow Agent. The Settling Parties agree that the escrow account is intended to be, and will be, an interest-bearing Qualified Settlement Fund within the meaning of Treas. Reg. § 1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. The Escrow Agent shall prepare and deliver, in a timely and proper manner, the necessary documents for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

**5.2**    For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent, or the Settlement Administrator on its behalf, shall timely and properly cause to be filed all informational and other tax returns necessary or advisable with respect to the Gross Settlement Amount (including applying for a Taxpayer Identification Number for the Qualified Settlement Fund and filing the returns described in Treas. Reg. § 1.468B-2(k)). Such returns and the election described in Paragraph 5.1 shall be consistent with this Article 5 and, in all events, shall reflect that all taxes (as defined in Paragraph 5.3 below) (including any estimated taxes, interest, or penalties) on the income earned by the Gross Settlement Amount shall be deducted and paid from the Qualified Settlement Fund as provided in Paragraph 5.3 hereof.

**5.3**     Taxes and tax expenses that are Administrative Expenses to be deducted and paid from the Qualified Settlement Fund include the following: (1) all taxes (including any estimated taxes, interest, or penalties) related to the income earned on the Gross Settlement Amount, including any taxes or tax detriments that may be imposed upon Defendants or Defense Counsel related to any income earned by the Gross Settlement Amount for any period during which the Gross Settlement Amount does not qualify as a "qualified settlement fund" for federal or state income tax purposes, (2) all tax expenses and costs incurred related to the operation and implementation of this Article 5 (including expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Article 5). Such taxes and tax expenses shall be Administrative Expenses and shall be timely paid by the Escrow Agent out of the Gross Settlement Amount without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to any Class Member any funds necessary to pay such amounts, including the establishment of adequate reserves for any taxes and tax expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(1)(2)); neither the Released Parties, Defense Counsel, nor Class Counsel are responsible nor shall they have any liability therefor. The Settling Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Article 5; and (3) all withholdings for all applicable required taxes on each settlement check issued to a Class Member.

**5.4**     Within fifteen (15) days after the entry of the Preliminary Order, Wells Fargo Clearing Services, LLC, and/or its agents or insurers, will deposit fifty thousand ($50,000.00) into the Qualified Settlement Fund, as partial payment of the Gross Settlement Amount, for purposes of paying Administrative Expenses incurred before the Final Approval Order becomes Final. Before the Effective Date, without further approval from Defendants or further order of the Court, the Escrow Agency may expend up to fifty thousand ($50,000.00) from the Settlement Fund to pay such Administrative Expenses actually incurred.

**5.5**     Within fifteen (15) days after entry of the Final Approval Order, Wells Fargo Clearing Services, LLC, and/or its agents or insurers, will deposit the remaining portion of the Gross Settlement Amount, seventy-eight million nine hundred fifty thousand dollars ($78,950,000.00) into the Qualified Settlement Fund.

**5.6**     The Escrow Agent shall, at the written direction of Class Counsel, invest the Qualified Settlement Fund in short-term United States Agency or Treasury Securities or other instruments backed by the Full Faith and Credit of the

United States Government or an Agency thereof, or fully insured by the United States Government or an Agency thereof, and shall reinvest the proceeds of these investments as they mature in similar instruments at their then-current market rates.

5.7    The Escrow Agent shall not disburse the Qualified Settlement Fund or any portion except as provided in this Settlement Agreement, an order of the Court, or a subsequent written stipulation between Class Counsel and Defense Counsel. All funds held in the Qualified Settlement Fund, and all earnings thereon, shall be deemed to be in the custody of the Court (*in custodia legis*), and shall remain subject to the jurisdiction of the Court until such time as the funds shall have been disbursed pursuant to the terms of this Settlement Agreement and/or further order of the Court. Subject to the orders of the Court, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of this Settlement Agreement.

5.8    Attorneys' Fees and Costs awarded by the Court shall be payable from the Qualified Settlement Fund upon award and entry of the Final Approval Order, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof. Any payment of Attorneys' Fees and Costs shall be subject to Class Counsel's joint and several obligation to make refunds or repayments to the Settlement Fund of any paid amounts, plus accrued earnings at the same net rate as is earned by the Settlement Fund, within thirty (30) days after the Settlement is terminated pursuant to the terms of this Settlement Agreement or fails to become effective for any reason, or if, as a result of any appeal or further proceedings on remand or successful collateral attack, the award of Attorneys' Fees and Costs is reduced or reversed by final non-appealable court order.

5.9    After the Settlement Effective Date, the amount remaining in the the Qualified Settlement Fund will be distributed as follows: (a) all Administrative Expenses not paid previously shall be paid within eight (8) days; (b) any Case Contribution Award ordered by the Court shall be paid within eight (8) days; (c) a contingency reserve not to exceed an amount to be mutually agreed upon by the Settling Parties shall be set aside by the Settlement Administrator for (1) Administrative Expenses incurred before the Settlement Effective Date but not yet paid, (2) Administrative Expenses estimated to be incurred after the Settlement Effective Date, and (3) an amount estimated for adjustments of data or calculation errors; and (d) as soon as administratively feasible after the Settlement Effective date, the Net Settlement Amount will be distributed in accordance with the Plan of Allocation. Pending final distribution of the Net Settlement Amount in accordance with the Plan of Allocation, the Escrow Agent will maintain the Qualified Settlement Fund.

**5.10**    The Escrow Agent, or the Settlement Administrator on its behalf, shall be responsible for paying from the Qualified Settlement Fund all taxes and tax expenses, owed related to the Qualified Settlement Fund and for all tax reporting, remittance, or withholding obligations, if any, for amounts distributed from it. This includes making provisions for all withholdings for all applicable required taxes on each settlement check issued to a Class Member. Released Parties, Defense Counsel, and Class Counsel have no responsibility or any liability for any taxes or tax expenses owed by, or any tax reporting or withholding obligations, of the Qualified Settlement Fund.

## 6.    Article 6 – Plan of Allocation

**6.1**    Using information from Defendants or the Deferral Plan's recordkeeper, the Settlement Administrator will calculate the amount of money forfeited by each Class Member, by multiplying the benefit by a factor based on a Class Member's years of service (20% for three years, 40% for four years of service, 60% for five years of service, 80% for six years and service, and 100% for over six years of service)[1]. For each Class Member, this will be his or her "Original Forfeited Amount."

**6.2**    The Settlement Administrator will then apply interest of 3%, discretely compounded annually, to each Original Forfeited Amount, starting on the date of each forfeiture and ending on the date of Preliminary Approval Order.  For each Class Member, the result will be his or her "Current Forfeited Amount." The total of the Class's Current Forfeited Amounts shall be the "Class's Current Forfeitures."

**6.3**    The Settlement Administrator will obtain, in writing, an agreement between the Defendants and Class Counsel on the amount of the Net Settlement Amount, as defined in Article 2.

**6.4**    The Settlement Administrator will then allocate the Net Settlement Amount to each Class Member on a pro rata basis by dividing the Net Settlement Amount by the Class's Current Forfeitures and then multiplying that number by each Class Member's Current Forfeited Amount.  For each Class Member, this amount will be the "Gross Individual Payment."

**6.5**    From each Class Member's Gross Individual Payment, the Settlement Administrator will then estimate and subtract any required tax withholdings. This amount shall be the "Net Individual Payment" for each Class Member.

---

[1] For Class Member's classified as rehires, the Settlement Administrator will use the Rule of Parity definition to calculate years of service.

6.6     The Settlement Administrator will issue and mail checks to each Class Member in the amount of that Class Member's Net Individual Payment ("Net Settlement Check") along with a statement showing the foregoing calculations, including the amount and nature of all withholdings. Each Net Settlement Check will expire after one hundred and twenty (120) days. After ninety (90) days, the Settlement Administrator will attempt to contact any Class Member whose Net Settlement Check has not been cashed to remind them of the expiration date.

6.7     If, upon the expiration of all uncashed Net Settlement Checks issued under this Plan of Allocation and after all taxes and other expenses have been paid, any funds remain in the Escrow Account ("Remaining Settlement Money"), then the Remaining Settlement Money will be provided to a non-sectarian, non-profit 501(c)(3) charitable organization on which the Parties jointly agree. In no event shall any part of the Settlement Fund be used to reimburse any Defendants or otherwise offset costs, including settlement related costs, incurred by any Defendants.

## 7.     Article 7 – Case Contribution Award and Attorneys' Fees and Costs

7.1     The Class Representative intends to seek a Case Contribution Award in an amount not to exceed ten thousand dollars ($10,000.00), which shall be subject to Court approval. Defendants will not oppose a Case Contribution Award up to that amount. Any Case Contribution Award approved by the Court will be paid by the Settlement Administrator out of the Qualified Settlement Fund in accordance with Article 5.9. The amount, if any, of the Case Contribution Award that the Court approves will not affect the amount that the Class Representative is entitled to receive as a Class Member calculated under the Plan of Allocation. If the Court determines not to award a Case Contribution Award or for any reason awards less than ten thousand dollars ($10,000.00) to the Class Representative, the rest of the Settlement will not be affected and will remain in full force and effect.

7.2     Class Counsel will apply to the Court for an award of Attorneys' Fees in an amount not to exceed thirty percent (30%) of the Gross Settlement Amount. Defendants will not oppose an Attorneys' Fees award up to this amount. Class Counsel will also apply to the Court for an award of Costs in an amount not to exceed five hundred thousand dollars ($500,000.00). Defendants will not oppose a Costs award up to this amount. Any amounts awarded by the Court as Class Counsel's Attorneys' Fees and Costs shall be paid by the Settlement Administrator out of the Qualified Settlement Fund to Class Counsel in accordance with Paragraph 5.8. If the Court disallows any part of Class Counsel's application for Attorneys' Fees and Costs, or if the Court for any reason awards less than the amount of Attorneys' Fees and Costs sought by

Class Counsel, any such disallowance or reduction will not operate to terminate or cancel this Settlement Agreement, which will remain in full force and effect. Class Counsel will file their application for Attorneys' Fees and Costs not later than forty-five (45) days before the Fairness Hearing.

**8.      Article 8 – Release and Covenant Not to Sue**

8.1      As of the Settlement Effective Date, Class Representative and Class Members (and their respective heirs, beneficiaries, executors, administrators, estates, successors, assigns, agents, and attorneys), on their own behalves, shall be deemed to have fully, finally, and forever settled, released, relinquished, waived, and discharged all Released Parties and the Deferral Plan from the Released Claims, regardless of whether such Class Members have filed an objection to the Settlement or to any application by Class Counsel for an award of Attorneys' Fees and Costs, and whether the objections of such Class Members have been sustained or overruled.

8.2      As of the Settlement Effective Date, Class Representatives and Class Members expressly agree that they shall not sue or seek to institute, maintain, prosecute, argue, or assert in any action or proceeding (including an IRS determination letter proceeding, a Department of Labor proceeding, an arbitration, or a proceeding before any state insurance or other department or commission), any cause of action, demand, or claim related to the Released Claims. Nothing in this Settlement Agreement shall preclude any action to enforce the terms of this Settlement Agreement in accordance with the procedures stated in this Settlement Agreement.

8.3      Class Counsel, Class Representative, or Class Members may hereafter discover facts in addition to or different from those that they know or believe to be true with respect to the Released Claims. Such facts, if known by them, might have affected the decision to settle with the Released Parties, or the decision to release, relinquish, waive, and discharge the Released Claims, or the decision of a Class Member not to object to the Settlement. Notwithstanding the foregoing, the Class Representative and each Class Member shall expressly, upon the entry of the Final Approval Order, be deemed to have, and, by operation of the Final Approval Order, shall have fully, finally, and forever settled, released, relinquished, waived, and discharged any and all Released Claims. Class Representative and Class Members acknowledge and shall be deemed by operation of the Final Approval Order to have acknowledged that the foregoing waiver was bargained for separately and is a key element of the Settlement embodied in this Settlement Agreement of which this release is a part.

8.4      Class Representative and each Class Member stipulate and agree that all Released Claims that, upon entry of the Final Approval Order, shall be

conclusively deemed to, and by operation of the Final Approval Order shall, settle, release, relinquish, waive and discharge any and all rights or benefits they may now have, or in the future may have, under any law relating to the releases of unknown claims pertaining specifically to Section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

**8.5**    Also, the Class Representative and each Class Member, shall upon entry of the Final Approval Order with respect to the Released Claims, waive any and all provisions, rights, and benefits conferred by any law of any State or territory within the United States or any foreign country, or any principle of common law, which is similar, comparable, or equivalent in substance to Section 1542 of the California Civil Code. Class Representative and each Class Member shall hold the Released Parties, Defense Counsel, Class Counsel, and the Settlement Administrator harmless from the costs (including, for example, attorneys' fees and disbursements) of any proceedings (including, for example, investigation and suit) related to any tax liability.

**9.    Article 9 – Representations and Warranties**

**9.1**    The Parties represent that:

**9.1.1**    They are voluntarily entering into this Settlement Agreement as a result of arm's length negotiations among their counsel, and that in executing this Settlement Agreement they are relying solely upon their own judgment, belief, and knowledge, and upon the advice and recommendations of their own independently selected counsel, about the nature, extent, and duration of their rights and claims hereunder and about all matters that relate in any way to the subject matter hereof;

**9.1.2**    They assume the risk of mistake as to facts or law;

**9.1.3**    They recognize that additional evidence may have come to light, but nevertheless desire to avoid the expense and uncertainty of litigation by entering into the Settlement;

**9.1.4** They have carefully read the contents of this Settlement Agreement, and this Settlement Agreement is signed freely by each individual executing this Settlement Agreement on behalf of each of the Parties; and

**9.1.5** They have made such investigation of the facts related to the Settlement and all related matters, as they deem necessary.

**9.2** Each individual executing this Settlement Agreement on behalf of a Settling Party personally represents and warrants to the other Settling Parties that he or she has the authority to execute this Settlement Agreement on behalf of, and fully bind, each principal that each such individual represents or purports to represent.

## 10. Article 10 – Additional Terms

**10.1** The Deferral Plan will be amended. Post-amendment the Deferal Plan will be referred to as the "Closed Plan." Under these amendments:

**10.1.1** The Closed Plan will be closed to new awards.

**10.1.2** For existing Awards in the Closed Plan that vested under the provisions of the Closed Plan *prior* to the effective date of these amendments and are subject to an Extended Deferral Election ("Vested Deferred Awards"): To the extent the Participant is eligible to participate in the Corporate Plan, the Vested Deferred Award will be transferred into the Corporate Plan and will be subject to similar timing and distribution provisions as in the Closed Plan. To the extent the Participant is *not* eligible to participate in the Corporate Plan, the Vested Deferred Award, in Wells Fargo discretion, exercised on a reasonable and non-discriminatory basis, will remain in the Closed Plan subject to the Extended Deferral Election.

**10.1.3** For existing Awards in the Closed Plan that are not vested under the provisions of the Closed Plan *prior* to the effective date of these amendments ("Unvested Deferred Awards"): To the extent the Participant is eligible to participate in the Corporate Plan, the Unvested Deferred Award will be transferred into the Corporate Plan if and when an Extended Deferral Election becomes effective and the Extended Deferral Election will continue to apply in the Corporate Plan. To the extent the Participant is *not* eligible to participate in the Corporate Plan or no Extended Deferral Election applies, the Unvested Deferred Award, in Wells Fargo's discretion, exercised on a reasonable and non-discriminatory basis, will remain in the Closed Plan.

**10.2**    The Corporate Plan will be amended so that any awards subject to an Extended Deferral Election and transferred from the Closed Plan will be subject to similar timing and distribution provisions as applied to it in the Closed Plan. The Plan Administrator of the Corporate Plan retains authority to determine a Participant's eligibility for the Corporate Plan.

**10.3**    As the sponsor of the respective plans, Wells Fargo & Company is not limited in its actions by any provisions of this Settlement Agreement with respect to other awards under the Closed Plan, the Corporate Plan, and all other benefit plans maintained by Wells Fargo & Company or its affiliates that are not specifically addressed in this Article 10.  Nothing in this Settlement Agreement will limit the authority or discretion of the Plan Administrator under the Closed Plan, the Corporate Plan, or any other benefit plans maintained by Wells Fargo & Company or its affiliates, including with respect to the interpretation and administration of the respective plans, establishing such limits and rules as are permitted under the respective plan documents, and the selection of investment measuring funds.   Nothing in this Settlement Agreement will limit the authority or discretion of Wells Fargo & Company, as plan sponsor of the Closed Plan, the Corporate Plan, or any other benefit plans maintained by Wells Fargo & Company or its affiliates, to amend or terminate any such plan as it deems appropriate and consistent with the terms of such plan and applicable law.

**10.4**    Wells Fargo & Company reserves the right to make the plan amendments stated in Article 10, even if the Settlement Agreement is terminated, deemed null and void, or found to have no further force or effect.

**11.    Article 11 – Termination, Conditions of Settlement, and Effect of Disapproval, Cancellation, or Termination**

**11.1**    The Settlement Agreement shall automatically terminate, and thereby become null and void with no further force or effect if:

**11.1.1**    The Preliminary Approval Order or the Final Approval Order are not entered by the Court substantially in the form submitted by the Parties or in a form that is otherwise agreed to by the Parties;

**11.1.2**    This Settlement Agreement is disapproved by the Court or fails to become effective for any reason whatsoever; or

**11.1.3**    The Preliminary Approval Order or the Final Approval Order is reversed or modified on appeal, and the Parties do not mutually agree to any such modifications.

**11.2**  If the Settlement Agreement is terminated, deemed null and void, or has no further force or effect, the Class Action and the Released Claims asserted by Class Representatives shall for all purposes revert to their status as though the Parties never executed the Settlement Agreement and the statute of limitations will be deemed to have been tolled reverting the Parties back to the status of the litigation prior to execution of the Settlement Agreement. All funds remaining in the Qualified Settlement Fund, and any interest earned on such funds, shall be returned to Wells Fargo Clearing Services, LLC, within thirty (30) days after the Settlement Agreement is finally terminated or deemed null and void.

**11.3**  It shall not be deemed a failure to approve the Settlement Agreement if the Court denies, in whole or in part, Class Counsel's request for Attorneys' Fees and Costs, Class Representative's Case Contribution Award, or modifies any of the proposed orders insofar as they relate to Attorneys' Fees and Costs or Class Representative's Case Contribution Award.

**12.**  **Article 12 – Public Comments Regarding The Class Actions or Settlement Agreement**

**12.1**  All facts, communications, and positions disclosed in, exchanged during, or related to the negotiations and terms of the Settlement Agreement will remain strictly confidential and shall not be revealed to anyone other than the Settling Parties, their accountants, their attorneys, tax, legal, and regulatory advisors or insurers, the expert witnesses retained by the Settling Parties and who were consulted during the settlement negotiations, the Mediator or any other mediator or arbitrator agreed to by the Settling Parties, and the Class Members, provided in each case that they (a) secure written agreements with such persons or entities that such information shall not be further disclosed, and (b) comply with this Article 12 in all other respects. This information may also be revealed to the Judge presiding over the Class Action and upon request to any government regulators.

**12.2**  No Settling Party or their counsel will issue a press release regarding the Class Action or the Settlement Agreement.

**12.3**  Notwithstanding the provisions of section 12.1, the following also is permitted:

**12.3.1**  Defendants may disclose the terms of the Settlement Agreement in any filings they are required to make, including filings with the Securities Exchange Commission or the Department of Labor.

**12.3.2**  Class Counsel, Class Representatives, Defendants, and Defense Counsel may disclose the terms of this Agreement to the extent necessary to implement this Settlement Agreement in Court filings or to comply with a

court order, request from a regulatory agency, a validly served subpoena in the Class Action, or valid discovery request made in the course of any ongoing litigation or arbitration.

**12.3.3**  In the event of any inquiries about the case from the media, Class Counsel shall limit its statement regarding the Class Action and the Settlement Agreement to stating: a) there was no final adjudication of liability determined by a Court or jury; b) the Settlement is fair and reasonable; and c) that Defendants denied all allegations and admitted no wrongdoing.

**12.3.4**  In the event of any inquiries about the case from the media, Defendants and Defense Counsel shall limit their statement regarding the Class Action and the Settlement Agreement to stating: a) Defendants denied all allegations, admitted no wrongdoing and believe they have meritorious defenses to the claims; b) they believe that resolving the Class Action is in their best interests to avoid continued protracted and expensive litigation; and c) there was no final adjudication of liability determined by a Court or jury.

**12.3.5**  Defendants may discuss the Class Action, including the Settlement Agreement, with their current employees.

## 13.    Article 13 – General Provisions

**13.1**  The Parties agree to cooperate fully with each other in seeking Court approvals of the Preliminary Order and the Final Approval Order, and to do all things as may reasonably be required to effectuate preliminary and final approval and the implementation of this Settlement Agreement according to its terms. The Parties agree to provide each other with copies of any filings necessary to effectuate this Settlement at least five (5) days in advance of filing.

**13.2**  Within ninety (90) days after all funds have been disbursed from the Escrow Account in accordance with Article 6, the Parties shall either destroy or return to the producing parties all documents produced in discovery under a claim of privilege or confidentiality within the meaning of the Confidentiality Order (ECF No. 52). Each Party shall serve a written notice to each producing party certifying that the Party has carried out the obligations imposed by this Paragraph 13.2. The Parties agree that at all times they will honor the requirements of the Confidentiality Order, except that this Article 13.2 will control in the event of any conflict.

**13.3**  This Settlement Agreement, whether or not consummated, and any negotiations or proceedings hereunder are not, and shall not be construed as, deemed to be, or offered or received as evidence of an admission by or on the part of any Released Party of any wrongdoing, fault, or liability whatsoever by

any Released Party, or give rise to any inference of any wrongdoing, fault, or liability or admission of any wrongdoing, fault, or liability in the Class Action or any other proceeding, and Defendants admit no wrongdoing, fault or liability related to any of the allegations or claims in the Class Action. This Settlement Agreement, whether or not consummated, and any negotiations or proceedings hereunder, shall not constitute admissions of any liability of any kind, whether legal or factual. Defendant deny all of the claims and contentions alleged by the Class Representatives in the Class Action. Defendants contend that they have meritorious defenses to the claims. Nonetheless, Defendants have concluded that further conduct of the Class Action would be protracted and expensive, and that it is desirable that the Class Action be fully and finally settled in the manner and upon the terms and conditions in this Settlement Agreement. Defendants have also considered the uncertainty and risks inherent in any Class Action, especially in certified class actions like this Class Action. Defendants have therefore determined that it is desirable and beneficial to Defendants that the Class Action be settled in the manner and upon the terms and conditions in the Settlement Agreement. The Class Representatives and Class Counsel agree that this Settlement Agreement will not be deemed any admission of liability or wrongdoing on the part of Defendants, and that it may not be used in any proceeding to such an effect.

13.4    Neither the Parties, Class Counsel, nor Defense Counsel shall have any responsibility for or liability whatsoever related to: (i) any act, omission, or determination of the Settlement Administrator, or any of their respective designees or agents, related to the administration of the Gross Settlement Amount or otherwise; (ii) the management, investment, or distribution of the Qualified Settlement Fund; (iii) the Plan of Allocation as approved by the Court; (iv) the determination, administration, calculation, or payment of any claims asserted against the Qualified Settlement Fund; (v) any losses suffered by, or fluctuations in the value of, the Qualified Settlement Fund; or (vi) the payment or withholding of any taxes, expenses, and/or costs incurred related to the taxation of the Qualified Settlement Fund or tax reporting, or the filing of any returns. Further, neither Defendants nor Defense Counsel shall have any responsibility for, or liability whatsoever related to, any act, omission, or determination of Class Counsel related to the administration of the Gross Settlement Amount or otherwise.

13.5    Only Class Counsel shall have standing to seek enforcement of this Settlement Agreement on behalf of the Class Representative and Class Members. Any individual concerned about Defendants' compliance with this Settlement Agreement may so notify Class Counsel and direct any requests for enforcement to Class Counsel. Class Counsel shall have the full and sole discretion to take whatever action they deem appropriate, or to refrain from taking any action, in response to such request. Any action by Class Counsel to

monitor or enforce the Settlement Agreement shall be done without additional fee or reimbursement of expenses beyond the Attorneys' Fees and Costs determined by the Court.

**13.6** This Settlement Agreement shall be interpreted, construed, and enforced in accordance with applicable federal law and, to the extent that federal law does not govern, by South Carolina law.

**13.7** The Parties agree that any and all disputes concerning compliance with the Settlement Agreement, shall follow the process below:

**13.7.1** If a Party believes that a legitimate dispute exists concerning the Settlement Agreement, other than disputes concerning compliance with Article 8, the Party raising the dispute shall first promptly give written notice under the Settlement Agreement to the other Parties including in such notice: (a) a reference to all specific provisions of the Settlement Agreement that are involved; (b) a statement of the alleged non-compliance; (c) a statement of the remedial action sought; and (d) a brief statement of the specific facts, circumstances, and any other arguments supporting the position of the Party raising the dispute.

**13.7.2** Within twenty-one (21) days after receiving the notice described in Paragraph 13.7.1, the receiving Parties shall respond in writing with their position and the facts and arguments they rely on in support of their position.

**13.7.3** For a period of not more than twenty-one (21) days following mailing of the response described in Paragraph 13.7.2, the Parties shall undertake good-faith negotiations, which may include meeting in person or conferring by telephone, to attempt to resolve the dispute.

**13.7.4** If the dispute is not resolved during the period described in Paragraph 13.7.3, the Parties shall conduct a mediation of the dispute with Mediator on the earliest reasonably practicable date; provided, however, that the scope of such mediation shall be expressly limited to the dispute.

**13.7.5** In any mediation under this Paragraph 13.7, each Party shall bear its own fees and costs.

**13.7.6** If the dispute is not resolved through mediation, either Party may request that the Court resolve the dispute.

**13.8** The Settling Parties agree that the Court has personal jurisdiction over the Settlement Class and Defendants and shall maintain that jurisdiction for purposes of resolving any disputes between the Parties related to this

Settlement Agreement that are not resolved under Paragraph 13.7. Any motion or action to enforce this Settlement Agreement—including by way of injunction—may be filed in the United States District Court for the District of South Carolina, Columbia Division, or asserted by way of an affirmative defense or counterclaim in response to any action asserting a violation of the Settlement Agreement.

13.9    The Settlement Agreement may be executed by exchange of executed signature pages, and any signature transmitted by facsimile or email for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement. The Settlement Agreement may be executed in any number of counterparts, and each of such counterparts shall for all purposes be deemed an original, and all such counterparts shall together constitute the same instrument.

13.10   Each Party to this Settlement Agreement acknowledges that he, she, or it has consulted with and obtained the advice of counsel prior to executing this Settlement Agreement and that this Settlement Agreement has been explained to that party by his, her, or its counsel.

13.11   Any headings included in this Settlement Agreement are for convenience only and do not in any way limit, alter, or affect the matters contained in this Settlement Agreement or the Articles or Paragraphs they caption. References to a person are also to the person's permitted successors and assigns, except as otherwise provided herein.  As used in this Settlement Agreement, the words "include," "includes," or "including" shall not be limiting but shall be deemed to be followed by the words "but not limited to" or "without limitation."

13.12   Before entry of the Preliminary Approval Order, this Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Parties. Following entry of the Preliminary Approval Order, this Settlement Agreement may be modified or amended only by written agreement signed on behalf of all Parties, and only if the modification or amendment is approved by the Court.

13.13   This Settlement Agreement and its exhibits constitute the entire agreement among the Parties and no representations, warranties, or inducements have been made to any Party concerning the Settlement other than those contained in this Settlement Agreement and its exhibits.

13.14   The provisions of this Settlement Agreement may be waived only by an instrument in writing executed by the waiving party and specifically waiving such provisions. The waiver of any breach of this Settlement Agreement by any Party shall not be deemed or construed as a waiver of any other breach or

waiver by any other Party, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

13.15 Each of the Parties agrees, without further consideration, and as part of finalizing the Settlement hereunder, that it will in good faith execute and deliver such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter of this Settlement Agreement.

13.16 The provisions of this Settlement Agreement are not severable.

13.17 All covenants, representations, and warranties, express or implied, oral or written, concerning the subject matter of this Settlement Agreement are contained in this Settlement Agreement. No Party is relying on any oral representations or oral agreements. All such covenants, representations, and warranties in this Settlement Agreement shall be deemed continuing and shall survive the Effective Date of Settlement.

13.18 All exhibits attached to this Settlement Agreement are incorporated by reference. These exhibits shall be:

> Exhibit 1 – Preliminary Approval Order;
>
> Exhibit 2 – Notice of Class Action Settlement and Fairness Hearing;
>
> Exhibit 3 – Final Approval Order; and
>
> Exhibit 4 – Form of CAFA Notice.

13.19 No provision of the Settlement Agreement or its exhibits shall be construed against or interpreted to the disadvantage of any Party to the Settlement Agreement because that Party is deemed to have prepared, structured, drafted, or requested the provision.

13.20 Any notice, demand, or other communication under this Settlement Agreement (other than the Settlement Notice, or other notices given at the direction of the Court) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as shown below and personally delivered, sent by registered or certified mail postage prepaid, or delivered by reputable express overnight courier;

IF TO THE CLASS REPRESENTATIVES:

> William S. Norton
> Erin C. Williams
> MOTLEY RICE LLC

28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile:  (843) 216-9450
bnorton@motleyrice.com
ecwilliams@motleyrice.com

William H. Narwold
Mathew P. Jasinski
MOTLEY RICE LLC
20 Church Street, 17th Floor
Hartford, CT 06103
Telephone: (860) 882-1681
Facsimile:  (860) 882-1682
bnarwold@motleyrice.com
mjasinski@motleyrice.com

Thomas R. Ajamie
David S. Siegel
John S. "Jack" Edwards, Jr.
AJAMIE LLP
Pennzoil Place - South Tower
711 Louisiana, Suite 2150
Houston, TX 77002
Telephone: (713) 860-1600
Facsimile:  (713) 860-1699
tajamie@ajamie.com
dsiegel@ajamie.com
jedwards@ajamie.com

Robert A. Izard
Mark P. Kindall
Douglas P. Needham
IZARD, KINDALL & RAABE, LLP
29 South Main Street, Suite 305
West Hartford, CT  06107
Telephone: 860-493-6292
rizard@ikrlaw.com
mkindall@ikrlaw.com
dneedham@ikrlaw.com

IF TO DEFENDANTS:

Frederick T. Smith
SEYFARTH SHAW LLP
1075 Peachtree Street N.E., Suite 2500
Atlanta, GA 30309
Telephone: (404) 888-1021
Facsimile: (404) 892-7056
fsmith@seyfarth.com

Amanda A. Sonneborn
Samuel Schwartz-Fenwick
Megan E. Troy
SEYFARTH SHAW LLP
233 S. Wacker Drive, Suite 8000
Chicago, IL 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000
asonneborn@seyfarth.com
sschwartz-fenwick@seyfarth.com
mtroy@seyfarth.com

**13.21** The undersigned, being duly authorized, have caused this Agreement to be
executed on the dates shown below and agree that it shall take effect on that
date upon which it has been executed by all of the undersigned

ON BEHALF OF ROBERT BERRY Individually and as Representative of the Class:

Dated: 1/31/2020

Robert F. Berry

ON BEHALF OF DEFENDANTS:

Dated: _____

Wells Fargo & Company, Wells Fargo Clearing
Services, LLC, and Wells Fargo Financial Network,
LLC

_____
Janice Reznick

Amanda A. Sonneborn
Samuel Schwartz-Fenwick
Megan E. Troy
SEYFARTH SHAW LLP
233 S. Wacker Drive, Suite 8000
Chicago, IL 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000
asonneborn@seyfarth.com
sschwartz-fenwick@seyfarth.com
mtroy@seyfarth.com

**13.21** The undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on that date upon which it has been executed by all of the undersigned

ON BEHALF OF ROBERT BERRY Individually and as Representative of the Class:

Dated: _____

Robert F. Berry

_____

ON BEHALF OF DEFENDANTS:

Dated: _1/31/20_____

Wells Fargo & Company, Wells Fargo Clearing Services, LLC, and Wells Fargo Financial Network, LLC

_____
Janice Reznick
Deputy General Counsel

61521678v.2